**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

RYAN SCOVILLE,

               Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
STATE,

            Defendant.

Civil Action No. 2:22-cv-00091-NJ

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**<u>PARTIAL MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.    STATUTORY FRAMEWORK.........................................................................2

    II.   PROCEDURAL HISTORY ..............................................................................3

LEGAL STANDARD............................................................................................................7

ARGUMENT .......................................................................................................................8

    I.    ALLEGATIONS OF AN AGENCY'S DELAYS IN RESPONDING TO
          FOIA REQUESTS DO NOT, WITHOUT MORE, STATE A "POLICY OR
          PRACTICE" CLAIM.......................................................................................8

    II.   PLAINTIFF'S ALLEGATIONS DO NOT SET FORTH A PLAUSIBLE
          CLAIIM THAT STATE HAS A POLICY OR PRACTICE OF
          PURPOSEFUL DELAY ................................................................................13

CONCLUSION...................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*American Center for Law and Justice v. Federal Bureau of Investigation*,
    470 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................11, 12

*American Center for Law and Justice v. United States Department of State*,
    249 F. Supp. 3d 275 (D.D.C. 2017) ......................................................................9, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................7, 8

*Brice v. Resch*,
    No. 10-C-711, 2010 WL 4674031 (E.D. Wisc. Nov. 9, 2010) ...................................5

*Brocksopp Engineering, Inc. v. Bach-Simpson Ltd.*,
    136 F.R.D. 485 (E.D. Wisc. 1991) ............................................................................5

*Cause of Action Institute v. Eggleston*,
    224 F. Supp. 3d 63 (D.D.C. 2016) ......................................................................9, 11

*Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*,
    711 F.3d 180 (D.C. Cir. 2013) ......................................................................2, 3, 16

*Electronic Privacy Information Center v. Department of Justice*,
    15 F. Supp. 3d 32 (D.D.C. 2014) ..............................................................................3

*Evans v. United States Department of Interior*,
    135 F. Supp. 3d 799 (N.D. Ind. 2015) .....................................................................14

*Firestone Financial Corp. v. Meyer*,
    796 F.3d 822 (7th Cir. 2015) .....................................................................................7

*Gaylor v. United States Department of Justice*,
    No. 05-cv-414-PB, 2006 WL 1644681 (D.N.H. June 14, 2006) .................................9

*General Electric Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) ...................................................................................8

Case 2:22-cv-00091-NJ   Filed 04/08/22   Page 3 of 22   Document 13

*Gonzales and Gonzales Bonds and Insurance Agency Inc. v. United States Department of Homeland Security*,
  913 F. Supp. 2d 865 (N.D. Cal. 2012) ........................................................................9

*Hajro v. United States Citizenship and Immigration Services*,
  832 F. Supp. 2d 1095 (N.D. Cal. 2011), *rev'd in part, vacated in part*, 811 F.3d 1086
  (9th Cir. 2015).  ........................................................................................................12

*In re Scott*,
  709 F.2d 717 (D.C. Cir. 1983) ....................................................................................9

*Judicial Watch, Inc. v. United States Department of Homeland Security*,
  895 F.3d 770 (D.C. Cir. 2018) ........................................................................... *passim*

*LAF v. Department of Veterans Affairs*,
  No. 17 C 5035, 2018 WL 3148109 (N.D. Ill. June 27, 2018) .........................8, 9, 17

*Matlack, Inc. v. United States Environmental Protection Agency*,
  868 F. Supp. 627 (D. Del. 1994) ................................................................................9

*Nightingale v. United States Citizenship and Immigration Services*,
  507 F.Supp. 3d 1193 (N.D. Cal. 2020) .....................................................................12

*Open America v. Watergate Special Prosecution Force*,
  547 F.2d 605 (D.C. Cir. 1976) ..................................................................................16

*Our Children's Earth Foundation v. United States Environmental Protection Agency*,
  No. 08-1461 SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) ...............................9

*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ........................................................................... *passim*

*Rocky Mountain Wild, Inc. v. United States Forest Service*,
  No. 15-cv-0127-WJM-CBS, 2016 WL 362459 (D. Colo. Jan. 29, 2016) ................11

*Roseberry-Andrews v. Department of Homeland Security*,
  299 F. Supp. 3d 9 (D.D.C. 2018) ..............................................................................11

*Telematch, Inc. v. United States Department of Agriculture*,
  No. CV 19-2372 (TJK), 2020 WL 7014206 (D.D.C. Nov. 27, 2020), *appeal filed*,
  No. 20-5378 (D.C. Cir. Dec. 21, 2020) .....................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................8

*Thompson v. Illinois Department of Professional Regulation*,
   300 F.3d 750 (7th Cir. 2002) ...........................................................................8

*Walsh v. United States Department of Veterans Affairs*,
   400 F.3d 535 (7th Cir. 2005) ...........................................................................9

## STATUTES

1 U.S.C. § 112a ...................................................................................................6

5 U.S.C. § 552 ...............................................................................................2, 3, 6

22 U.S.C. § 2753 ....................................................................................... *passim*

22 U.S.C. § 3942 .................................................................................................6

22 U.S.C. § 3944 .................................................................................................6

## RULES

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1

## OTHER AUTHORITIES

5B Wright & Miller,
   Federal Practice & Procedure § 1346 (3d ed. 2004) ......................................5

Declaration of Susan C. Weetman,
   *America First Legal Foundation v. United States Department of State*, No. 1:21-cv-02253-
   JMC (D.D.C. filed Mar. 1, 2022) ................................................................14

United States Department of State, Freedom of Information Act Annual Report Fiscal Year
   2020,
   https://foia.state.gov/Learn/Reports/Annual/2020.pdf......................................14, 15

United States Department of State, Freedom of Information Act Annual Report Fiscal Year
   2021,
   https://foia.state.gov/Learn/Reports/Annual/2021.pdf...........................................14

United States Department of State, Information Access Guide (2020),
   https://foia.state.gov/Request/Guide.aspx#RequestingInformationunderthe
   FreedomofInformationActFOIAWhattoExpectNext ................................................15

# INTRODUCTION

Plaintiff Ryan Scoville raises three claims in this Freedom of Information Act ("FOIA") case. The first two claims are a challenge to Defendant United States Department of State's ("State's") handling of a particular FOIA request submitted by Plaintiff seeking certain "reports" related to "defense articles" referenced in 22 U.S.C. § 2753. Compl. ¶¶ 13, 43-46, ECF No. 1. These two claims are not at issue in this motion. Rather, this motion seeks dismissal of Plaintiff's Third Claim, which reaches more broadly and, in doing so, fails to state a claim upon which relief may be granted. In his Third Claim, Plaintiff alleges that State has adopted "an impermissible policy or practice of violating FOIA's timing requirements" and that he is therefore entitled to relief beyond the particular FOIA request at issue in this suit. *Id.* ¶¶ 47-50 & p.10 (Request for Relief No. 6). The allegations in Plaintiff's complaint, however, fall far short of stating a viable "policy or practice" claim.

Plaintiff alleges that, with regard to the current request as well as several prior unrelated FOIA requests he has submitted, State has failed to comply with time limits for response set out in the FOIA statute. *See* Compl. ¶ 27 (referencing State's allegedly "exceedingly long delays in violation of its statutory obligations" in responding to his prior requests). In addition, he points to statistics for average response times for all FOIA requests submitted to State. *Id.* ¶ 34 (alleging that "[l]ike" Plaintiff, "thousands of other FOIA requesters also face unlawful delays from the State Department"). But, by themselves, allegations of delay are insufficient to state a "policy or practice claim" under FOIA; case law and the requirements of Federal Rule of Civil Procedure 12(b)(6) demand more. Accordingly, Plaintiff's Third Claim should be dismissed.

## BACKGROUND

**I.      STATUTORY FRAMEWORK**

FOIA provides a means for the public to access federal government records, subject to certain exemptions.  *See* 5 U.S.C. § 552.  Upon receipt of a properly submitted request that "reasonably describes" the records sought, *id*. § 552(a)(3)(A), an agency generally must determine within twenty days "whether to comply with such request" and then immediately notify the requestor of its determination and the reasons therefor.  *Id*. § 552(a)(6)(A)(i).  In order to satisfy this requirement, "the agency need not actually produce the documents within the relevant time period [b]ut the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents*.*"  *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n* ("*CREW*"), 711 F.3d 180, 182–83 (D.C. Cir. 2013).  In "unusual circumstances," an agency can extend the twenty-day time limit for processing a FOIA request by written notice to the requester "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B)(i).  The FOIA defines "unusual circumstances" as (1) the need to search for and collect records "from field facilities or other establishments that are separate from the office processing the request"; (2) the need to search for, collect, and examine "a voluminous amount" of records "demanded in a single request"; and (3) the need to consult with another agency or two or more agency components.  *Id.* § 552(a)(6)(B)(iii).  If the required extension exceeds ten days, the agency must allow the requester an opportunity to modify his or her request, or to arrange for an alternative timeframe for completion of the agency's processing.  *Id.* § 552(a)(6)(B)(ii).

2

The statute provides that if an agency fails to make a determination within twenty days and to immediately notify the requestor, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request[.]" 5 U.S.C. § 552(a)(6)(C)(i). "If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *CREW*, 711 F.3d at 189. The statute does not suggest any other consequence for an agency's failure to comply with this timeframe. Rather, the twenty-day timeline—and an agency's failure to meet that timeline—sets forth a condition that must be met before a court may exercise or retain jurisdiction over an underlying FOIA claim. *See Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("[F]ar from . . . reading . . . FOIA to require an agency to immediately hand over all of the requested documents as a result of its failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20-day deadline relates only to the requester's ability to get into court."). In other words, once the deadline passes, the requester is free to file suit in federal court.

## II. PROCEDURAL HISTORY

Plaintiff submitted the FOIA request at issue in this case to State on March 4, 2020. Compl. ¶ 13; *see also id.*, Ex. A (a copy of the FOIA request). That request seeks the following records for a nineteen-year period, between January 20, 2001, and January 20, 2020, related to "defense articles" governed by the Arms Export Control Act (*see* Compl. ¶ 13 & Ex. A):

> a. *All reports submitted to Congress pursuant to 22 U.S.C. § 2753(a)(4)* ("the Statute").

The material after subsection (a)(4) of the Statute states that

> [t]he President shall promptly submit a report to the Speaker of the House of Representatives, the Committee on Foreign Affairs of the House of Representatives, and to the Committee on Foreign

3

Relations of the Senate on the implementation of each agreement
entered into pursuant to clause (2) of this subsection;

The referenced subsection (a)(2) of the Statute provides that

no defense article . . . shall be sold or leased by the United States
Government under this chapter to any country or international
organization . . . unless (2) the country or international
organization shall have agreed not to transfer title to, or possession
of, any defense article or related training . . . so furnished to it, . . .
to anyone not an officer, employee, or agent of that country or
international organization . . . and not to use or permit the use of
such article or related training . . . for purposes other than those for
which furnished unless the consent of the President has first been
obtained.

b.  *All reports submitted to Congress pursuant to 22 U.S.C. § 2753(c)(2).*

Subsection (c)(2) of the Statute provides that "[t]he President shall report to the Congress

promptly upon the receipt of information that a violation described in paragraph (1) of this

subsection may have occurred," where the violations described in paragraph (1) refer to various

types of violations of agreements entered into pursuant to the Arms Export Control Act.

c.  *All reports submitted to Congress pursuant to 22 U.S.C. § 2753(c)(3)(A).*

Subsection (c)(3)(A) of the Statute provides, with regard to the same violations addressed

in subsection b above, that:

A country shall be deemed to be ineligible under subparagraph (A)
of paragraph (1) of this subsection, or both subparagraphs (A) and
(B) of such paragraph in the case of a violation described in both
such paragraphs, if the President so determines and so reports in
writing to the Congress, or if the Congress so determines by joint
resolution.

d.  *All reports submitted to Congress pursuant to 22 U.S.C. § 2753(e).*

Subsection (e) provides that:

If the President receives any information that a transfer of any
defense article, or related training or other defense service, has
been made without his consent as required under this section or

4

under section 2314 of this title, he shall report such information immediately to the Speaker of the House of Representatives, the Committee on Foreign Affairs of the House of Representatives, and the Committee on Foreign Relations of the Senate.

State acknowledged receipt of the request by email dated March 24, 2020. Compl. ¶ 15 & Ex. B. In that email, State explained that it assigned the request tracking number F-2020-04794 and placed it in State's "complex processing track." *Id.* Ex. B. State further explained that it "will not be able to respond within the 20 days provided by the statute due to 'unusual circumstances,'" including "the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id.* After subsequent follow-up contact by Plaintiff, State advised Plaintiff on March 3, 2021, that the request has a March 8, 2023, estimated date of completion. *Id.* ¶¶ 19-21 & Ex. C. State confirmed the March 8, 2023, estimated date of completion on March 23, 2021. *Id.,* Ex. C. Plaintiff attempted to appeal at this point but was advised by State's Appeals Officer that the request was not subject to appeal at that time "since no specific material has been denied in response to the request." *Id.* ¶ 24 & Ex. E.

On January 25, 2022, Plaintiff filed the instant suit. ECF No. 1. The First and Second Claims of the Complaint allege that State is violating FOIA by failing to provide a timely response to Request No. F-2020-04794 and by failing to make records available in response to that request. Compl. ¶¶ 43-46. Those claims are not at issue in this motion.[1] The claim that is at

---

[1] However, the partial motion to dismiss Plaintiff's Third Claim stays State's obligation to answer the first two claims. *See Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486 (E.D. Wisc. 1991) (agreeing that "service of a 12(b) motion, whether or not it goes to all the claims in a complaint, enlarges the time for answering the remaining portions of the pleading"); *see also Brice v. Resch*, No. 10-C-711, 2010 WL 4674031, at *1 (E.D. Wisc. Nov. 9, 2010) (citing 5B Wright & Miller, Federal Practice & Procedure § 1346 (3d ed. 2004) ("[T]he weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.")).

5

issue, the Third Claim, raises a "policy or practice" claim. Compl. ¶¶ 47-50. Specifically, Plaintiff alleges that State's "repeated, prolonged, and unexcused delays responding to Plaintiff's requests, as well as [State]'s long delays in its FOIA responses overall, demonstrate an impermissible policy or practice of violating FOIA's timing requirements set out in 5 U.S.C. §§ 552(a)(3)(A) and (a)(6)." *Id.* ¶ 48.

As support for this "policy or practice" claim, Plaintiff includes allegations about several other FOIA requests he submitted to State. The first was submitted around April 16, 2014, seeking "certificates of demonstrated competency," *see* 22 U.S.C. § 3944, and "any accompanying documents, "for all individuals nominated to the office of ambassador within the period of January 1, 1980 to April 16, 2014." Compl. ¶ 29 & Ex. F. Plaintiff eventually filed suit with regard to that request, and State produced all requested records by May 2018. *Id.* ¶ 29. Plaintiff also submitted additional requests to State on March 10, 2016, October 21, 2016, and February 17, 2018, seeking, respectively, reports on envoy appointments pursuant to 22 U.S.C. § 3942(a)(2)(B), Chief of Mission Leadership Surveys, and "all documentation pertaining to agreements withheld from publication under Section 112a(b)(2)(D)," *id.* ¶ 29 & Ex. G., which concerns international agreements the public disclosure of which "would, in the opinion of the President, be prejudicial to the national security of the United States." 1 U.S.C. § 112a(b)(2)(D). Plaintiff also eventually filed suit with regard to these requests, and that suit is still pending, although State has reported that all production of responsive documents is complete. Compl. ¶ 32. Finally, on August 16, 2021, Plaintiff submitted a request "seeking legal analysis or discussion related to congressional diplomatic communication" for the period from January 1, 1990, "onwards," setting forth two offices he wants searched and 23 search terms. *Id.* ¶ 40 & Ex. H. State has not yet produced any documents in response to this request. *Id.* ¶ 41.

As further support for his "policy or practice" claim, Plaintiff cites data from State's Freedom of Information Act Annual Reports, that show, *inter alia*, that State's average response time in Fiscal Year ("FY") 2020 was 86 days for "simple" requests, 399 days for "expedited" requests, and 350 days for "complex" requests, Compl. ¶¶ 36-37 (citing the FY 2020 report), and that, allegedly, "[a]t no time since State began reporting its FOIA response data, for the 1998 fiscal year, has the department fully complied with FOIA's timing requirements." *Id.* ¶ 38.  As relief for this claim, Plaintiff seeks a declaration that "Defendant has implemented an impermissible policy or practice of untimely and noncompliant responses to FOIA requests and . . . an Order enjoining Defendant from continuing to implement that policy or practice." *Id.,* p.10 (Request for Relief No. 6).

## LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation and internal alteration omitted).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint satisfies this plausibility standard when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).  Moreover, although courts are to presume the truth of all factual allegations in the

7

complaint, they need not and should not accept "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (brackets in original). Similarly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678.

In addition to the allegations in the complaint, courts may examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in evaluating a motion to dismiss under Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, (2007); *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 753 (7th Cir. 2002) (court may consider "the complaint [and] any exhibits attached thereto"). In particular, a court may take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

## ARGUMENT

### I.    ALLEGATIONS OF AN AGENCY'S DELAYS IN RESPONDING TO FOIA REQUESTS DO NOT, WITHOUT MORE, STATE A "POLICY OR PRACTICE" CLAIM

The allegations in Plaintiff's complaint fall far short of what is needed to state a FOIA "policy or practice" claim. Plaintiff complains about State's delay in responding to his FOIA requests over the years and cites statistics indicating that similar delays apply to State's responses to many of the FOIA requests it receives. But he does not allege, nor could he, that State's delays are the result of it having "purposefully instituted a policy that aims to ignore FOIA's deadlines." *LAF v. Dep't of Veterans Affs.*, No. 17 C 5035, 2018 WL 3148109, at *7 (N.D. Ill. June 27, 2018) (finding such a claim actionable, in contrast to one where the plaintiff "simply alleg[es] delays based on a lack of resources or adequate training"). As courts in the

8

D.C. Circuit have held,[2] "delay alone, even repeated delay, is not the type of illegal policy or practice that is actionable." *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 72 (D.D.C. 2016). Rather, "[d]elay-based claims must . . . rely on some identifiable set of agency actions that is 'done to delay.'" *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 283-84 (D.D.C. 2017) (quoting *Cause of Action Inst.*, 224 F. Supp. 3d at 71). A plaintiff must present allegations that establish more than the mere fact that agencies are understaffed or "well-meaning but inept." *Am. Ctr. for L. & J.*, 249 F. Supp. 3d at 283-84. Plaintiff has not met this burden here.

A "policy or practice" claim under FOIA, sometimes referred to as a "pattern and practice" claim, is a narrow exception to the principle that FOIA lawsuits must be litigated based on individual FOIA claims (and that such claims are moot once the requested documents are provided). *See Payne Enters.*, 837 F.2d at 490-91, 494; *LAF*, 2018 WL 3148109, at *4 & n.1 (citing cases); *see also Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535, 536 (7th Cir. 2005). The facts of *Payne Enterprises* illustrate the high bar a plaintiff must clear in establishing such a

---

[2] Policy or practice claims were first authoritatively recognized in FOIA cases by the D.C. Circuit in *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). This brief relies on cases from that circuit for this reason, as well as because courts in the D.C. Circuit are generally acknowledged to have "substantial expertise" in FOIA matters. *In re Scott,* 709 F.2d 717, 720 (D.C. Cir. 1983) (citing legislative history amending FOIA statute to add the District of Columbia to list of fora in which a FOIA complaint may be brought); *see also Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, 913 F. Supp. 2d 865, 873 n.9 (N.D. Cal. 2012) (citing D.C. case law and stating that "the federal courts in the District of Columbia have long been on the leading edge of interpreting the FOIA") (quoting *Our Children's Earth Found. v. U.S. EPA*, No. C 08-1461 SBA, 2008 WL 3181583, at *6 (N.D. Cal. Aug. 4, 2008)); *Gaylor v. U.S. Dep't of Just.*, No. 05-cv-414-PB, 2006 WL 1644681, at *1 (D.N.H. June 14, 2006) (citing *In re Scott*); *Matlack, Inc. v. U.S. EPA*, 868 F. Supp. 627, 630 (D. Del. 1994) (relying "primarily . . . on authority from that Circuit" because "[t]he United States Court of Appeals for the District of Columbia Circuit has long been on the leading edge of interpreting the parameters of what a federal agency must disclose and may withhold consistent with the terms of FOIA").

9

claim. There, for almost two years, officers at Air Force Logistics Command ("AFLC") bases intentionally "refused to fulfill Payne's requests for copies of bid abstracts," even though the Secretary of the Air Force had determined that "no FOIA exemption applied" and sent letters admonishing the officers for their refusals to grant Payne's request. *Payne Enters*., 837 F.2d at 494. However, no firm action was taken to end the officers' recalcitrance and Payne was required to repeatedly seek administrative review. *Id.* The court concluded that "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offer[ed] no justification, entitle[d] Payne to declaratory relief." *Id*.

The D.C. Circuit's more recent decision in *Judicial Watch, Inc. v. United States Department of Homeland Security*, 895 F.3d 770, 774 (D.C. Cir. 2018), similarly recognizes that a "policy or practice" claim is viable only if the plaintiff has alleged recurrent and intentional conduct that plausibly suggests "an agency's abuse of FOIA's statutory scheme." At issue in *Judicial Watch* were numerous FOIA requests submitted by Judicial Watch to the Secret Service for records on public funds expended on "VIP" travel for various trips taken by the VIPs. *See id*. at 773. Specifically, the complaint described nineteen travel-related FOIA requests submitted over a thirteen-month period, for which the Secret Service had not produced the requested records. *Id*. at 773-74. Judicial Watch filed suit concerning those nineteen requests after it had *already filed five earlier lawsuits seeking similar records* which the Secret Service eventually produced. *Id*. In concluding that Judicial Watch had plausibly alleged a policy or practice claim, the court emphasized that Judicial Watch alleged that, even after its previous lawsuits, the Secret Service repeatedly failed to make available in response to FOIA requests "'nearly identical' records, without explanation, for unreasonable periods of time." *Id*. at 779; *see also id*. at 780

10

("Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays by the same agency with regard to the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests until after it has filed a lawsuit."); *id*. at 785, 787-88 (Pillard, J., concurring) (describing the requests as "straightforward," "routine[]," "wholly mundane," and "seeking the very same kind of [travel expense] information"). On these facts, the court held that "a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id*. at 780.

As indicated by the cases cited *supra* on pages 8-9, courts "repeatedly" recognized before *Judicial Watch* that a FOIA plaintiff "'cannot rest on the mere fact of delay alone to establish a [policy or practice] claim.'" *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 21 (D.D.C. 2018) (quoting *Am. Ctr. L. & Just.,* 249 F. Supp. 3d at 283); *see also Cause of Action Inst.*, 224 F. Supp. 3d at 72; *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, No. 15-cv-0127-WJM-CBS, 2016 WL 362459, at *11 (D. Colo. Jan. 29, 2016) (A failure to make a determination within FOIA's statutory schedule, even a repeated failure, "is not properly comparable to . . . agencies [that] continually and intentionally invoked spurious reasons for nondisclosure."). *Judicial Watch* does not alter this basic principle. Although *Judicial Watch* arguably widened the standard for a policy-or-practice claim beyond *Payne*, the court emphasized that the delay claims there applied to "nearly identical" records responsive to straightforward FOIA requests. *Jud. Watch*, 895 F.3d at 779, 785*; see Am. Ctr. for L. & Just. v. Fed. Bureau of Investigation* ("*FBI*"), 470 F. Supp. 3d 1, 8 (D.D.C. 2020) (noting that, in *Judicial Watch*, "the majority and concurrence both emphasized that the records all concerned the same subject matter"). Thus, in

11

a subsequent case, a district court in the D.C. Circuit distinguished *Judicial Watch*, as well as *Payne* and one other case, on the ground that the latter group of cases "concerned repeated requests for a narrowly-defined class of documents," *Am. Ctr. for L. & Just. v. FBI*, 470 F. Supp. 3d at 6, and dismissed a policy or practice claim alleging agency delay where "there is little, if anything, beyond the delays themselves that 'could signal the agency has a policy or practice of ignoring FOIA's requirements.'" *Id.* at 8 (quoting *Jud. Watch*, 895 F.3d at 780). That court further noted that the *Judicial Watch* opinion in fact recognized that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Am. Ctr. for L. & Just. v. FBI*, 470 F. Supp. 3d at 6 (quoting *Jud. Watch*, 895 F.3d at 782).

Similarly, Ninth Circuit precedent is limited to the facts of the particular cases before the courts there. The Ninth Circuit has apparently endorsed the general principle that "a plaintiff may bring a claim alleging 'a pattern and practice of unreasonable delay in responding to FOIA requests.'" *Hajro v. U.S. Citizenship & Immigration Servs.*, 832 F. Supp. 2d 1095, 1107 (N.D. Cal. 2011), *rev'd in part, vacated in part*, 811 F.3d 1086 (9th Cir. 2015). But the Ninth Circuit's main line of case may be distinguished as, like the D.C. cases, they involved requests for similar types of records, specifically, noncitizen's immigration, or "A-Files," and, as well, those individuals needed the records in a timely manner in order to defend themselves in immigration proceedings. *See Nightingale v. U.S. Citizenship & Immigration Servs.*, 507 F. Supp. 3d 1193, 1198 (N.D. Cal. 2020) ("Timely access to A-Files is vital for noncitizens in removal proceedings."). Plaintiff, a professor seeking the records for academic research, has no such vital need for timely access here. Compl. ¶¶ 8, 12.

12

II.    **PLAINTIFF'S ALLEGATIONS DO NOT SET FORTH A PLAUSIBLE**
**CLAIM THAT STATE HAS A POLICY OR PRACTICE OF PURPOSEFUL**
**DELAY**

Plaintiff does not present sufficient allegations to state a plausible policy or practice claim as laid out in *Judicial Watch* or other similar cases.  Aside from delay, Plaintiff does not allege a single factor common to Plaintiff's requests.  Nor could he because the requests concern distinct and separate complex topics, each with different procedural histories, rendering implausible any claim that there is an impermissible "policy or practice" purposefully applied to all of his requests.  Plaintiff's current request is a multipart request seeking "reports" made to Congress pursuant to the Arms Export Control Act over a period of nineteen years.  On the other hand, Plaintiff's 2014 request sought documents relating to ambassadorial appointments, and in contrast with Plaintiff's current request, State made several releases of documents in response to the 2014 request, as well as engaged in frequent communications with Plaintiff, before Plaintiff filed suit.  *See* Compl. Ex. F, ¶¶ 17-18, 23.  Plaintiff's other requests similarly involved topics distinct from the present, multipart request.  To be sure, one recurring factor in all but one of Plaintiff's requests is the extensive timeframe for which he seeks records.  The request at issue here seeks 19 years' worth of records.  Plaintiff's 2014 request sought records from the period from January 1, 1980 to April 16, 2014 (34 years), his 2016 request relating to envoy appointments sought records from "the inception of the reporting requirement in 1980 to the date of this request" (36 years), his 2018 request sought records since April 1994 (24 years), and his 2021 request seeks records from 1990 "onward" (31 years).  These extended timeframes add to the complexity of the requests and the volume of documents involved, and therefore also tend to justify the length of time it should reasonably take State to respond.  Whether through actual

13

communications with Plaintiff or the nature of the FOIA requests, State's delays in responding to the FOIA requests in the complaint are simply not "unexplained." *Jud. Watch*, 895 F.3d at 780.

Moreover, State's annual FOIA reports, which Plaintiff himself cites and are therefore incorporated into the Complaint, also tell the story of delays that are the result of exceedingly high volumes of requests and not enough agency resources, not deliberative agency flouting of FOIA's requirements. As of the latest report cited by Plaintiff, State had received over 9000 requests in FY 2020, up from 8589 in FY 2019. U.S. Dep't of State, Freedom of Information Act Annual Report Fiscal Year 2020 ("FY 2020 Report"), at 40, https://foia.state.gov/Learn/ Reports/Annual/2020.pdf. State further reports that it had a backlog of 13,798 requests at the end of FY 2020, an increase over FY 2019's backlog.[3] *Id.* at 41. Declarations publicly filed by State in other FOIA cases, of which the Court may take judicial notice, also describe State's current backlog, its resource constraints, and the effect of the COVID-19 pandemic (notably, Plaintiff's current request was submitted on March 5, 2020, the eve of the pandemic). *See, e.g.,* Declaration of Susan C. Weetman, *Am. First Legal Found. v. U.S. Dep't of State*, No. 1:21-cv-02253-JMC (D.D.C. filed Mar. 1, 2022). In the present case, State cited the COVID-19 pandemic as a reason it would take longer to respond, *id.*, Ex. C, and further advised Plaintiff that "[t]he Department receives thousands of FOIA and Privacy Act requests each year and [Plaintiff's request] will be processed in turn." *Id.*, Ex. E. As another court in this circuit has written, "[a] large number of FOIA requests doesn't excuse an agency from complying with the statute's deadlines, but it lends some credence to the agency's claim that long delays flow from

---

[3] The FY 2021 report is now available on State's website. *See* https://foia.state.gov/Learn/ Reports/Annual/2021.pdf. The report shows that 10,683 requests were received in FY 2021 and that the backlog at the end of that fiscal year was 14,941. *Id.* at 16, 29. The average response time now ranges from 80 days for "simple" requests to 463 days for "expedited" requests. *Id.* at 22.

14

understaffing rather than malice." *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 816

(N.D. Ind. 2015).

Further, both the cited declaration and State's annual reports also explain the complexity

of the work involved in processing FOIA requests, which further contributes to understanding

the source of the delays as legitimate:

> Records are maintained domestically and throughout the world at
> posts, missions, embassies, and consulates. The Department also
> maintains records of applications from U.S. citizens for U.S.
> passports, visa requests from noncitizens, and records of its own
> employees, as well as other types of records. Because of the nature
> and scope of its records holdings, including classified and other
> sensitive material, the Department conducts a rigorous review to
> determine whether any information must be withheld under one of
> the nine FOIA exemptions. In implementing the Department's
> mission, the Department works closely with many other federal
> agencies and international partners. For this reason, the
> Department often must consult with other, and at times multiple,
> federal agencies and foreign governments that have an interest in
> the records, which adds time and complexity to the FOIA process.
> . . . In addition, the Department receives a large volume of FOIA
> referrals from other agencies, which also contributes to its FOIA
> processing workload.

FY 2020 Report, at 4; s*ee also* https://foia.state.gov/Request/Guide.aspx#Requesting

InformationundertheFreedomofInformationActFOIAWhattoExpectNext. Many of these issues

may be involved here. In responding to the request that is primarily at issue in this case, State

told Plaintiff that "'unusual circumstances,'" including "the need to search for and collect

requested records from other Department offices or Foreign Service posts," meant it could not

respond within the twenty-day statutory timeframe. Compl., Ex. B. In addition, review of the

multipart request itself, and the statute referencing the "reports" at issue, suggests that

responding to the request may involve "classified and other sensitive material" and may also

entail the need to consult with other governmental entities, including potentially the Executive

15

Office of the President, which is ultimately responsible for the "reports" at issue. *See* 22 U.S.C. § 2753. Thus, the delays Plaintiff has experienced are not "unexplained delays." *Jud. Watch*, 895 F.3d at 779-80.

Allowing Plaintiff's delay-premised "policy or practice" claim to proceed also would be inconsistent with FOIA's statutory scheme. Courts have recognized that, in the absence of any plausible claim of a purposeful agency policy of delay, "exercising jurisdiction over [a delay] claim would turn the judicially-created FOIA policy-or-practice claim—intended to bypass mootness—into a mechanism to micromanage agency FOIA offices." *Telematch, Inc. v. U.S. Dep't of Agric.*, No. 19-2372 (TJK), 2020 WL 7014206, at *12 (D.D.C. Nov. 27, 2020), *appeal filed*, No. 20-5378 (D.C. Cir. Dec. 21, 2020). The unfortunate reality is that, in most cases, it is a "practical impossibility for agencies to process all [FOIA] requests completely within twenty days." *CREW*, 711 F.3d at 189; *see also Payne Enters.*, 837 F.2d at 491 (exempting "isolated mistakes by agency officials"). But the penalty for failure to adhere to the timelines is set forth in the statute itself, providing that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court, which "scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *CREW*, 711 F.3d at 189. "[I]f the speed of replying to requests in any agency is not satisfactory to Congress [or FOIA requesters], and the obvious cause is a lack of available resources . . . the equally obvious remedy is for Congress to supply the necessary resources and to designate their use for FOIA purposes." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615 n.17 (D.C. Cir. 1976).

Plaintiff has not plausibly alleged that State has a specific, unlawful policy or practice of delaying its responses to FOIA requests without justification. Although he alleges that, on

16

average, State does not complete responding to FOIA requests within the twenty-day time limit established by the statute and has similarly delayed in responding to the broad, complex, and dissimilar requests he has submitted since 2014, he fails to allege that State's conduct is pursuant to a purposeful policy or practice of delay.  Plaintiff's allegations of delay in the processing of his FOIA request are therefore insufficient to state a plausible policy or practice claim.  *See LAF*, 2018 WL 3148109, at *7 (N.D. Ill. 2018) (expressing skepticism that a policy or practice claim lies where the plaintiff "simply alleg[es] delays based on a lack of resources or adequate training").  Accordingly, Plaintiff's Third Claim must be dismissed.

### **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Third Claim of Plaintiff's Complaint.


 Dated:  April 8, 2022                                   Respectfully submitted,

                                                         BRIAN M. BOYNTON
                                                         Principal Deputy Assistant Attorney General
                                                         Civil Division

                                                         MARCIA BERMAN
                                                         Assistant Director, Federal Programs Branch

                                                         */s/ Carol Federighi*
                                                         CAROL FEDERIGHI
                                                         Senior Trial Counsel
                                                         United States Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         P.O. Box 883, Washington, DC 20044
                                                         Phone: (202) 514-1903
                                                         Email: carol.federighi@usdoj.gov

                                                         *Counsel for Defendant*


17