# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RYAN SCOVILLE,**

    Plaintiff,

  v.                                                Case No. 22-CV-91

**U.S. DEPARTMENT OF STATE,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

Ryan Scoville, a professor of law at Marquette University Law School, sues the United States Department of State (the "State") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* Scoville alleges that he submitted a FOIA request on March 4, 2020 to which the State has failed to timely provide a substantive response (Claim One) and failed to promptly make the records available (Claim Two). Scoville also alleges that the State's repeated, prolonged, and unexcused delays in responding to his previous FOIA requests demonstrates an impermissible policy or practice of violating FOIA (Claim Three). Presently before me is the State's partial motion to dismiss Scoville's third claim for relief on the grounds that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For the reasons below, the defendant's partial motion to dismiss is denied.

## BACKGROUND

Scoville teaches and writes about U.S. foreign relations law and international law at Marquette University Law School. (Compl. ¶ 8, Docket # 1.) His research focuses on the various ways in which domestic law regulates U.S. diplomatic activities and on comparative

international law. (*Id.*) Much of his published writing addresses the separation of powers with respect to U.S. diplomatic activities. (*Id.*) In the course of his research, Scoville has made and continues to make requests under FOIA for government records, particularly those related to the government's practices and conduct in the fields of diplomacy and international law. (*Id.* ¶ 12.)

Scoville alleges that on April 16, 2014, he submitted a FOIA request to the State regarding documents related to ambassadorial nominees. (*Id.* ¶ 29.) Scoville alleges that after waiting more than a year, the State produced a small portion of the responsive records. (*Id.*) By 2017, most of the record remained unproduced, prompting Scoville to file suit against the State on May 19, 2017 in the District Court of the District of Columbia, *Scoville v. United States Department of State*, 17-CV-951 (D.D.C.). (*Id.*, Ex. F.) The State finally produced all of the requested records by May 2018, nearly 49 months after his initial request. (*Id.* ¶ 30.)

Scoville further alleges that he submitted additional FOIA requests with the State on March 10, 2016, October 21, 2016, and February 17, 2018. (*Id.* ¶ 31.) Scoville alleges that after receiving no responsive documents over a year after the February 2018 request, he again filed suit against the State seeking documents responsive to all three requests. *See Scoville v. United States Department of State*, 19-CV-1987 (D.D.C.) (July 3, 2019); (Compl. ¶ 31, Ex. G.) After filing suit, the State produced a limited number of documents responsive to the March 2016 and February 2018 requests, but stated it was withholding all responsive documents to the October 2016 request. (*Id.* ¶ 32.) To date, the State has still not completed its response to the March 2016 request, some 70 months later. (*Id.* ¶ 33.)

On March 4, 2020, Scoville submitted a FOIA request to the State seeking certain reports submitted to Congress regarding "defense articles"—a term defined by State regulations to include various military equipment. (*Id.* ¶ 13.) This request sought the following documents for the time period between January 20, 2001 and January 20, 2020:

    a.    All reports submitted to Congress pursuant to 22 U.S.C. 2753(a)(4). These reports concern agreements for use and transfer restrictions pertaining to defense articles.

    b.    All reports submitted to Congress pursuant to 22 U.S.C. 2753(c)(2). These reports concern violations of agreements for use, safeguard, or transfer restrictions pertaining to defense articles.

    c.    All reports submitted to Congress pursuant to 22 U.S.C. 2753(c)(3)(A). These reports concern presidential determinations that a country is ineligible for defense articles due to violations of use, safeguard, or transfer restrictions.

    d.    All reports submitted to Congress pursuant to 22 U.S.C. 2753(e). These reports concern defense article transfers made without the President's consent.

(*Id.*) On March 24, 2020, Scoville received an email from the State acknowledging receipt of his request and assigning it reference number F-2020-04794. (*Id.* ¶ 15.) The email stated that the Office of Information Programs and Services would "not be able to respond within the 20 [business] days provided by the statute due to 'unusual circumstances' . . . includ[ing] the need to search for and collect requested records from other Department offices or Foreign Service posts." (*Id.* ¶¶ 15–16, Ex. B.)

Scoville received no further communication from the State. (*Id.* ¶ 18.) On February 22, 2021, Scoville's counsel contacted the State requesting a status update on the March 2020 request. (*Id.* ¶ 19, Ex. C.) Scoville's counsel subsequently called on February 28, 2021 and emailed on March 2, 2021. (*Id.* ¶ 20, Ex. C.) On March 3, 2021, Scoville's counsel received a response from the State saying that the March 2020 request was in process and has a March 8, 2023 estimated date of completion. (*Id.* ¶ 21, Ex. C.)

Finally, Scoville submitted a FOIA request to the State on August 16, 2021 seeking legal analysis or discussion related to congressional diplomatic communications (*id.* ¶ 40, Ex. H); however, despite the expiration of FOIA's response deadline, the State has not produced responsive documents (*id.* ¶ 41).

## APPLICABLE RULE

The State moves to dismiss Scoville's FOIA policy or practice claim (Claim Three) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A short and plain statement "'gives[s] the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the

court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

In Claims One and Two of the Complaint, Scoville sues the State under FOIA regarding its handling of his March 4, 2020 FOIA request for "defense articles." In Claim Three, Scoville alleges that the State has engaged in a policy or practice of violating FOIA, based on the State's history of addressing Scoville's past FOIA requests, as well as the State's alleged general tardiness in responding to FOIA requests. For purposes of this motion, the State does not challenge Claims One and Two. (Docket # 13 at 6.) Rather, the State argues that Scoville's complaint fails to state a viable "policy or practice" claim under FOIA. (*Id.*)

1. *Legal Framework of FOIA*

The Supreme Court has stated that the "basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire*

& *Rubber Co.*, 437 U.S. 214, 242 (1978). As such, "[n]on-exempt records are to be made 'promptly available' for little more than payment of copying costs." *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018) (citing 5 U.S.C. § 552(a)(3)(A)). FOIA specifically provides that, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The statute further provides that for record requests made under the subsection, each agency must "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I). FOIA also provides that in certain statutorily defined "unusual circumstances," the 20-day time limit may be extended. *Id.* § 552(a)(6)(B).

2. *FOIA "Policy or Practice" Claims*

Generally, when an aggrieved FOIA requester receives the information she seeks from the agency, "however fitful or delayed the release of information under the FOIA may be," the requester's claim becomes moot. *See Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) ("For specific FOIA request claims, after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied."). The Ninth and the D.C. Circuits, however, invoking the "broad equitable authority" found in § 552(a)(4)(B), have "generally endorsed a district court's equitable power to enforce FOIA's terms." *Am. Ctr. for L. & Just. v. Fed. Bureau of*

*Investigation*, 470 F. Supp. 3d 1, 4 (D.D.C. 2020) (internal quotation and citation omitted); *see also Hajro*, 811 F.3d at 1103–04. "In practice, this means a plaintiff can bring, in conjunction with her specific information request, a claim that an agency policy or practice will impair the party's lawful access to information in the future." *Am. Ctr. for L. & Just.*, 470 F. Supp. 3d at 4 (internal quotation and citation omitted). Under these "policy or practice" claims, "even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at 491.

While only the Ninth and D.C. Circuits have explicitly recognized a cause of action for a policy or practice of FOIA violation, *see Rocky Mountain Wild, Inc. v. United States Forest Serv.*, No. 15-CV-0127-WJM-CBS, 2016 WL 362459, at *11 (D. Colo. Jan. 29, 2016), several district courts in this circuit have acknowledged the viability of such claims under the court's broad equitable power to enforce FOIA, *see, e.g.*, *LAF v. Dep't of Veterans Affs.*, No. 17 C 5035, 2018 WL 3148109 (N.D. Ill. June 27, 2018); *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 833 (N.D. Ind. 2015).

Given the lack of binding legal authority on the availability of a FOIA "policy or practice" claim, I will assume, without deciding, that such a claim exists. Unfortunately, there is also a dearth of binding legal authority on what facts sufficiently state a FOIA "policy or practice" claim. As such, I look to the district and circuit courts who have addressed this issue for guidance.

I begin with *Payne*, the D.C. Circuit's seminal case recognizing these claims. In *Payne*, Payne Enterprises sought the release of bid abstracts from the Air Force under FOIA. 837 F.2d at 487. The base officers, invoking several FOIA exemptions, denied Payne's

request. *Id.* Payne appealed these denials to the Secretary of the Air Force, who found the FOIA exemptions did not apply and ordered disclosure of the materials to Payne. *Id.* Nevertheless, the officers continued to refuse Payne's FOIA requests thereby necessitating further administrative appeals. *Id.* Payne sued the Air Force under FOIA, challenging its "practice of unjustified delay and seeking declaratory and injunctive relief to compel the defendants to release abstracts of negotiated acquisitions." *Id.* The district court dismissed Payne's suit on the ground that it had received all of the materials it had requested and thus the claim was moot. *Id.* at 488. The D.C. Circuit reversed, finding that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491 (emphasis in original). The *Payne* court found that whether the practice at issue is informal is irrelevant in determining a "policy or practice" claim. *Id.* "So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit." *Id.*

The D.C. Circuit more recently considered this issue in *Judicial Watch*. For years, Judicial Watch has monitored expenditures of U.S. Government funds on "VIP" travel by submitting requests for records pursuant to FOIA to the Secret Service. 895 F.3d at 773. Between 2012 and 2014, when the Secret Service failed to make requested records available in a timely manner, Judicial Watch was forced to file a lawsuit on five separate occasions in order to obtain the records. *Id.* Upon such filing, the Secret Service produced non-exempt records, mooting the litigation. *Id.* In November 2015, Judicial Watch again filed suit when

the Secret Service failed to make available records in response to nineteen travel-related FOIA requests over a thirteen-month period. *Id.* at 773–74. In this suit, Judicial Watch brought a "policy or practice" claim against the Secret Service alleging that "the Secret Service 'has a policy and practice of violating FOIA's procedural requirements,' by 'regularly failing' to either produce requested records or make a determination regarding their availability in accord with FOIA's timetables, 5 U.S.C. § 552(a)(6)(A), or within a reasonable time." *Id.* at 774. Again, the Secret Service produced the records four months after the lawsuit was filed. *Id.*

The district court dismissed Judicial Watch's "policy or practice claim," finding that the complaint failed to adequately plead sufficiently egregious facts to state a claim. *Id.* The D.C. Circuit reversed. In so doing, the court stated that "[i]n this circuit it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Id.* at 777–78. The court explained:

> Therefore, a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements. As in *Payne*, the plaintiff must allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future.
>
> ***
> The history of the Secret Service's conduct in response to Judicial Watch's FOIA requests, as alleged in the complaint, wherein Judicial Watch has been forced to file six lawsuits to obtain requested non-exempt records — all relating to the same subject matter — sufficed to state a plausible claim that the agency's practice was to utilize delay to flaunt FOIA's procedural requirements, and that filing a lawsuit to obtain requested records was an empty gesture in terms of preventing future prolonged delays, much less obtaining future relief, because the agency would moot the litigation and escape judicial review of its compliance with FOIA. The Secret Service's

alleged practice of prolonged, repeated, and unexplained delay, if allowed to continue, would harm Judicial Watch's mission to inform the public about the costs of VIP travel by unlawfully interfering with its statutory right to "promptly" obtain non-exempt records upon request.

*Id.* at 780–82.

Following *Judicial Watch*, in *American Center for Law & Justice*, the D.C. District Court was tasked with determining whether a FOIA "policy or practice" claim passed muster under Rule 12(b)(6). In this case, the American Center for Law and Justice ("ACLJ") sued the FBI claiming the agency violated FOIA by failing to respond to particular records requests within the statutory timeframe and claiming this particular violation suggested a wider policy, pattern, or practice of noncompliance by the agency with FOIA. 470 F. Supp. 3d at 2. In its complaint, the ACLJ alleged that "[t]he FBI has adopted and is engaged in a policy and practice of violating FOIA's procedural requirements when processing FOIA requests by intentionally refusing to produce all non-exempt documents in the manner required under 5 U.S.C.§ 552(a)(6) and unless and until Plaintiff files suit." *Id.* at 3. The complaint further alleged that: "In this case, just as in the two other FOIA cases Plaintiff has filed against the FBI, Plaintiff's FOIA request went unanswered, and the FBI refused to respond in the manner required by FOIA and within the deadline(s) mandated by FOIA until Plaintiff sought legal action." *Id.*

The FBI filed a motion to dismiss the ACLJ's "policy or practice" claim. *Id.* at 4. In granting the motion, the court began by noting that the D.C. Circuit has "endorsed this kind of 'policy-or-practice' claim on three occasions"—in *Payne*, in *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160 (D.C. Cir. 2012), and in *Judicial Watch*. *Id.* at 4. Utilizing the principles gleaned from these cases, the court considered whether the ACLJ's complaint alleged sufficient facts to "allow the reasonable inference that the FBI has adopted—

formally or informally—a practice of delay, or whether the complaint alleges merely isolated mistakes by agency officials." *Id.* at 6 (internal quotations and citations omitted).

The ACLJ alleged the FBI's three lapses in responding to requests established a practice of delay by the agency. *Id.* The court disagreed. It found that the ACLJ's three prior examples "each implicate requests of strikingly different subject matter and scope (roughly, records of a meeting between a former President and the Attorney General, records relating to possible criminal charges against a former Secretary of State, and all the emails of a former FBI director within a particular period)." *Id.* The court found that this contrasted "markedly" with *Payne*, *Newport*, and *Judicial Watch*, "each of which concerned repeated requests for a narrowly-defined class of documents (bid abstracts, technical information concerning military equipment, and VIP travel expenses)." *Id.* While the court stated that the Circuit had not articulated a "single subject" or "single type of request" requirement for a "policy or practice" claim, it found that the "similarity of the underlying requests is a factor courts take into consideration, as it suggests that the agency's behavior stems from a considered decision (for example, the applicability of a particular exemption to a particular category of documents) rather than isolated mistakes." *Id.* The court continued that: "[E]ven in *Judicial Watch*, which arguably widened the standard for a policy-or-practice claim beyond *Payne* and *Newport*, the majority and concurrence both emphasized that the records all concerned the same subject matter." *Id.* at 7.

The court further considered the fact that the FBI's alleged behavior across the three episodes was not uniform. *Id.* Specifically, while the complaint suggested that the FBI does not respond to a request (aside from acknowledgement of receipt and assignment of a control number) unless and until a plaintiff initiates a lawsuit, the complaint also alleged

that the filing of a lawsuit was an empty gesture because the FBI will moot the litigation and escape judicial review by complying with the FOIA in the final hours of the parties' briefing in the case. *Id.* The court found that while "an agency's behavior need not be entirely consistent to support a policy-or-practice claim," in this case, "particularly in light of the small sample size, the variation in the three cases cuts against an inference that the FBI is acting pursuant to an informal or formal policy and, by definition, undermines the contention that the FBI is engaged in a persistent practice." *Id.*

The Court noted that the ACLJ's "most plausible argument" rests on "the idea that *Judicial Watch* makes persistent or prolonged delay itself actionable, regardless of the kind of request or reason for the delay." *Id.* at 8. The court found, however, that while the complaint alleged a "modest pattern of delays across the three episodes," and "notwithstanding some of its language, *Judicial Watch* did not rely on missed deadlines alone." *Id.* at 8. Rather, the court noted that *Judicial Watch* "conducted a fact- and context-sensitive analysis that focused on the similar and straightforward nature of the requests and the sheer number of times that they were ignored . . . [m]oreover, it recognized that 'not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief.'" *Id.* (quoting *Judicial Watch*, 895 F.3d at 782). The court concluded that "here, there is little, if anything, beyond the delays themselves that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id.*

3. *Application to this Case*

In his complaint, Scoville alleges that the State's "repeated, prolonged, and unexcused delays" in responding to Scoville's requests, as well as the State's general long

delays in responding to FOIA requests overall, demonstrates a policy or practice of violating FOIA's timing requirements. (Compl. ¶ 48.) In its motion to dismiss, the State argues that the *Payne* and *Judicial Watch* courts recognized that a "policy or practice" claim under FOIA is only viable if the plaintiff alleges recurrent and intentional conduct that plausibly suggests an agency's abuse of FOIA's statutory scheme and that the relevant legal authority has found that delay, in and of itself, is insufficient to state a claim. (Docket # 13 at 15–17.) The State argues that Scoville's complaint alleges nothing more than delay—his multiple requests involved distinct topics spanning different timeframes. (*Id.* at 19–20.) As such, the State asserts that Scoville's complaint fails to state a "policy or practice" claim. Scoville counters that allegations of prolonged delay alone are sufficient to state a FOIA "policy or practice" claim. (Docket # 17 at 13.) He argues that he is not required to allege intentional conduct, the cause of the delay, or the existence of a specific, formal policy. (*Id.* at 15–17.)

The courts that have considered such claims seem to agree that an agency's behavior need not be "egregious" to state a claim, *Judicial Watch*, 895 F.3d at 781, nor do the alleged requests have to address a "single subject" matter or be a "single type of request," *Am. Ctr. for L. & Just.*, 470 F. Supp. 3d at 6, nor does the policy need to be a formal policy, *Payne*, 837 F.2d at 491. And I agree with Scoville that courts have generally not required a plaintiff to allege the specific cause of the delay. *See Judicial Watch*, 895 F.3d at 782, 784 ("The Secret Service will have the opportunity on remand to explain its delays and to confirm how it intends in the future to conform to FOIA's mandate to make requested non-exempt records 'promptly available.'"). This is a far cry, however, from asserting that a plaintiff need only allege backlog or delay, without any intent, to sufficiently state a "policy or practice" claim.

While Scoville argues that the *Judicial Watch* court recognized injunctive relief may be appropriate in "policy or practice" cases "even when delays are caused by such unintended conditions as 'staffing shortages and work overload'" (Docket # 17 at 16), Scoville takes the court's statement out of context. What the *Judicial Watch* court speaks of is finding a remedy for "an agency's repeated flaunting of FOIA's . . . requirements." *See* 895 F.3d at 780. The court specifically stated that it was *not* addressing whether a lack of resources could ever suffice to excuse repeated, prolonged, and as yet unexplained delay. *Id.* at 782 ("Pretermitting whether a lack of resources could ever suffice to excuse repeated, prolonged, and as yet unexplained delay, as the district court interjected, FOIA's text and structure require that the agency 'at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.'") (internal citation omitted). In fact, the *Judicial Watch* court went on to state that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Id.* This comports with the *Payne* court's statement that an agency's refusal to supply information must evidence "a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA," and not "merely isolated mistakes by agency officials." 837 F.2d at 491. *See also Am. Ctr. for L. & Just. v. United States Dep't of State*, 249 F. Supp. 3d 275, 284 (D.D.C. 2017) ("A theory that officials are well-meaning but inept would be quite unlike a narrative in which State's concerted objective is to be tardy or the agency hamstrings officers' FOIA capabilities."). Thus, while an extreme backlog or repeated delays may evidence a "policy or practice," it cannot be that the delay or backlog, in and of itself, is sufficient to state a "policy or practice" claim.

Again, Scoville alleges that the State has not complied with FOIA every year since at least 1998. If one could state a "policy or practice" claim merely because an agency has a general backlog, then each FOIA requester to that agency would arguably always have a "policy or practice" claim in addition to his or her specific request claim based solely on the agency's backlog. This would make the "policy or practice" claim redundant to the individual request claim and would hardly demonstrate that the individual has standing to bring a "policy or practice" claim.

As such, a plaintiff must plead *some* specific facts that indicate that the agency's FOIA violation was not an isolated event but indicates a "pattern or practice" of violating FOIA. In *Hajro*, the Ninth Circuit found that plaintiffs have "a number of ways to prove that the agency's FOIA violation was not an isolated event. For example, a plaintiff can provide evidence that he has been subjected to a FOIA violation more than once. Or a plaintiff can provide the court with affidavits of people similarly situated to the plaintiff who were also harmed by the pattern or practice." 811 F.3d at 1104. In *American Center for Law & Justice*, the court stated that a plaintiff could "make a 'plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements.'" 470 F. Supp. 3d at 5–6 (quoting *Judicial Watch*, 895 F.3d at 780).

Thus, had Scoville merely alleged, as he does in paragraphs 34 through 39 of the complaint, that the State has a backlog of FOIA requests, this would be insufficient to state a plausible "policy or practice" claim. But Scoville's complaint alleges more. Specifically, he alleges that he submitted FOIA requests to the State in April 2014, March 2016, October 2016, February 2018, March 2020, and August 2021, and the State has failed to comply

with FOIA for each request without proper excuse. (Compl. ¶¶ 13–33, 40–42, 48.) In other words, he alleges a non-isolated practice of delay as to his requests. As such, Scoville alleges that he reasonably expects that he will continue to experience unreasonable, unexcused delays with future FOIA requests. (*Id.* ¶ 42.) On these allegations, I find that Scoville's complaint alleges sufficient facts to state a plausible "policy or practice" claim. The State's partial motion to dismiss Claim Three is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant's partial motion to dismiss claim three of the complaint (Docket # 12) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk's office will contact the parties to schedule a hearing regarding further scheduling in this case.

Dated at Milwaukee, Wisconsin this 23rd day of August, 2022.

BY THE COURT

*/s/ Nancy Joseph*
_____
NANCY JOSEPH
United States Magistrate Judge