**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

RYAN SCOVILLE

                Plaintiff,

    v.

U.S. DEPARTMENT OF STATE,

             Defendant.

Case No. 2:22-cv-00091-NJ

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT ON CLAIM THREE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

SUMMARY OF UNDISPUTED MATERIAL FACTS ...................................................... 2

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.  THIS COURT HAS BROAD EQUITABLE POWER TO ENFORCE FOIA'S MANDATE
    FOR TIMELY DISCLOSURE OF REQUESTED RECORDS ........................................... 3

    A.  FOIA Imposes Specific, Enforceable Time Constraints on an Agency's Obligation
        to Respond to Records Requests ..................................................................................... 3

    B.  This Court Has the Equitable Power to Enforce FOIA's Time Constraints by
        Enjoining a Demonstrated Pattern or Practice of Noncompliance ................................. 5

II. STATE'S PROLONGED, PERSISTENT, AND PERVASIVE FOIA DELAYS
    ESTABLISH A PATTERN OR PRACTICE OF FOIA NONCOMPLIANCE .................... 8

    A.  Indisputable Facts Establish Prolonged Delays in State's FOIA Responses .............. 10

    B.  Indisputable Facts Establish State's Persistent Pattern of Delayed Responses .......... 14

    C.  Indisputable Facts Establish Pervasive Delays in State's FOIA Responses ............... 16

III. INJUNCTIVE RELIEF TO CORRECT STATE'S PROLONGED, PERSISTENT,
     AND PERVASIVE FOIA DELAY IS NECESSARY AND PROPER .............................. 18

    A.  State's Routine Violation of FOIA's Timing Requirements Will Continue Absent
        Relief from This Court .................................................................................................. 19

    B.  Injunctive Relief Requiring State to Come into Compliance with FOIA's Stated Time
        Constraints Should Be Entered ..................................................................................... 29

CONCLUSION ................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*ACLU v. Dep't of Defense,*
    339 F. Supp. 2d 501 (S.D.N.Y. 2004) ................................................................... 4

*Am. Ctr for L. & Just. v. FBI,*
    470 F. Supp. 3d 1 (D.D.C. 2020) .......................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .............................................................................................. 3

*Animal Legal Def. Fund v. U.S. Dep't of Agric.,*
    935 F.3d 858 (9th Cir. 2019) ...................................................................... 5, 6, 29

*Biodiversity Legal Found. v. Badgley,*
    309 F.3d 1166 (9th Cir. 2002) ............................................................................. 19

*Calderon v. Ashmus,*
    523 U.S. 740 (1998) ............................................................................................ 29

*Citizens for Resp. & Ethics in Wash. v. FEC,*
    711 F.3d 180 (D.C. Cir. 2013) ................................................................... 4, 5, 12

*Donham v. U.S. Dep't of Energy,*
    192 F. Supp. 2d 877 (S.D. Ill. 2002) .................................................................. 27

*Duncan v. Walker,*
    533 U.S. 167 (2001) ............................................................................................ 26

*Electronic Privacy Info. Ctr. v. DOJ,*
    416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................ 4

*Evans v. U.S. Dep't of Interior,*
    135 F. Supp. 3d 799 (N.D. Ind. 2015) ............................................................. 7, 9

*Fiduccia v. DOJ,*
    185 F.3d 1035 (9th Cir. 1999) ....................................................................... 25, 26

*Gilmore v. U.S. Dep't of Energy,*
    33 F. Supp. 2d 1184 (N.D. Cal. 1998) ............................................................ 4, 25

*Gonzalez Rosario v. U.S. Citizenship & Immigr. Servs.,*
    365 F. Supp. 3d 1156 (W.D. Wash. 2018) .................................................... 19, 29

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
   811 F.3d 1086 (9th Cir. 2016) ........................................................*passim*

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
   832 F. Supp. 2d 1095 (N.D. Cal. 2012) ...........................................*passim*

*Int'l Refugee Assistance Proj., Inc. v. U.S. Citizenship & Immigr. Servs.*,
   551 F. Supp. 3d 136 (S.D.N.Y. 2021) ....................................................... 6

*Judicial Watch, Inc. v. DHS*,
   895 F.3d 770 (D.C. Cir. 2018) .........................................................*passim*

*LAF v. Dep't of Veterans Affs.*,
   2018 WL 3148109 (N.D. Ill. June 27, 2018) ................................... 6, 7, 16

*Liverman v. Off. of Inspector Gen.*,
   139 F. App'x 942 (10th Cir. 2005) ............................................................ 6

*Long v. U.S. Internal Revenue Serv.*,
   693 F.2d 907 (9th Cir. 1982) ..................................................... 12, 19, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................. 3

*Miller v. Bell*,
   661 F.2d 623 (7th Cir. 1981) .................................................................... 5

*Muckrock, LLC v. Cent. Intel. Agency*,
   300 F. Supp. 3d 108 (D.D.C. 2018) ..................................................... 7, 30

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ............................................................................ 1, 28

*Navigators Ins. Co. v. DOJ*,
   155 F. Supp. 3d 157 (D. Conn. 2016) ...................................................... 6

*Nightingale v. U.S. Citizenship and Immigr. Servs.*,
   507 F. Supp. 3d 1193 (N.D. Cal. 2020).............................................*passim*

*Nkihtaqmikon v. Bureau of Indian Affs.*,
   493 F. Supp. 2d 91 (D. Me. 2007) ........................................................... 6

*Open Am. v. Watergate Special Prosecution Force*,
   547 F.2d 605 (D.C. Cir. 1976)........................................................... 27, 30

*Or. Natural Desert Ass'n v. Gutierrez*,
   409 F. Supp. 2d 1237 (D. Or. 2006) ........................................................ 4

iii

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
2015 WL 6331268 (N.D. Cal. Oct. 21, 2015) .................................................... 9, 12, 17, 19

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*,
2015 WL 4452136 (N.D. Cal. Jul. 20, 2015) ............................................................ 7, 14

*Payne Enter., Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ................................................................................ *passim*

*Ray v. DOJ*,
770 F. Supp. 1544 (S.D. Fla. 1990) .................................................................. 18, 20, 29

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
415 U.S. 1 (1974) .......................................................................................................... 5, 6

*Rocky Mountain Wild, Inc. v. United States Forest Service*,
2016 WL 362459 (D. Colo. 2016) ...................................................................................... 6

*S. Env't L. Ctr. v. Bernhardt*,
432 F. Supp. 3d 626 (W.D. Va. 2020) ............................................................................... 6

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
2008 WL 2523819 (E.D. Cal. June 20, 2008) ................................................... 21, 25, 29

*Swan View Coal. v. Dep't of Agric.*,
39 F. Supp. 2d 42 (D.D.C. 1999) .................................................................................... 15

*Telematch, Inc. v. U.S. Dep't of Agric.*,
2020 WL 7014206 (D.D.C. Nov. 27, 2020) .................................................................... 13

*Thompson v. DOJ*,
2023 WL 5493591 (W.D.N.C. Aug. 4, 2023) ................................................................. 16

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) ........................................................................................................ 19

**Statutes**

5 U.S.C. § 552(a)(3)(A) .................................................................................................... 4

5 U.S.C. § 552(a)(4)(B) .................................................................................................... 5

5 U.S.C. § 552 (a)(4)(B), (E), (F) ..................................................................................... 3

5 U.S.C. § 552(a)(6)(A) .................................................................................................... 4

5 U.S.C. § 552(a)(6)(B) .................................................................................................... 4

5 U.S.C. § 552(a)(6)(C) .................................................................................................. 27

iv

***Other Authorities***

H.Rep. No. 876, 93d Cong., 2d Sess. (1974)........................................................................ 3, 4

Case 2:22-cv-00091-NJ    Filed 02/18/25    Page 6 of 37    Document 61

# PRELIMINARY STATEMENT

The Freedom of Information Act ("FOIA") embodies the nation's commitment to an open government necessary for a democratic society, one which requires an informed citizenry "needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). After repeatedly experiencing years-long delays in obtaining responses to the Freedom of Information Act ("FOIA") requests he submitted to the Department of State ("State"), Plaintiff Ryan Scoville, a law professor at Marquette University, filed this action to end the ongoing harm to transparency caused by State's failure to make records promptly available. The undisputed record before the Court establishes State's pattern or practice of routinely violating FOIA's timing requirements.

State's FOIA processing practices have resulted in an immense backlog of unprocessed requests—with more than 23,000 backlogged requests, some pending since 2007. Though the FOIA statute allows no more than 30 days for agencies to respond to requests, the vast majority of the requests State receives wait over a year for processing, and many wait much longer than that. Rather than make the reforms needed to comply with FOIA, however, State has pursued a patchwork of unrealistic and inadequate "fixes," none of which has eliminated its FOIA backlog or put State on a path to compliance with the law.

State's extreme delays inflict substantial harm on the public and individuals like Professor Scoville, who rely on FOIA requests for their research, investigative journalism, and crucial oversight work concerning one of the most consequential departments in the federal government. These widespread harms will continue absent judicial intervention. Injunctive relief is necessary and proper to address State's pervasive and persistent practice of prolonged FOIA delays.

1

## SUMMARY OF UNDISPUTED MATERIAL FACTS

The full record of indisputable facts supporting partial summary judgment is set forth in Professor Scoville's Statement of Undisputed Material Facts ("SUMF"). Those facts establish that Professor Scoville has suffered from State's pattern or practice of FOIA noncompliance. Six FOIA requests he submitted to State since 2014—including the request that underlies Claims One and Two in this action[1]—all experienced extreme delay. SUMF ¶¶ 15-68. State took up to five years to complete processing them; two remain pending after four and five years. *Id.* ¶¶ 27, 57, 68.

State's egregious FOIA noncompliance is not limited to Professor Scoville. As State did with each of Professor Scoville's requests, State assigns most requests it receives to the "complex" processing track. *Id.* ¶¶ 12, 75. Requests in that track remain pending around ***623 days*** on average. *Id.* ¶ 75. In 2014, the average was 510 days, showing that State has maintained a practice of delay for over a decade. *Id.* ¶ 91. Buried within the averages is the harm inflicted on thousands of requesters who depend on State for access to records that are unavailable elsewhere. *Id.* ¶ 4. Some requesters assume they will need to sue State to receive records in any reasonable time, but even then, State's responses are far outside what the law requires. *Id.* ¶ 102. State's practices have resulted in a backlog of unprocessed requests[2] that is now at the highest level in a decade. *Id.* ¶ 95.

State's prior attempts to change course were built on unsound assumptions, *id.* ¶¶ 126-28, or were quickly abandoned, *id.* ¶¶ 135-39, and have failed to remedy its FOIA violations. State has consistently failed to staff its FOIA operations adequately and has not requested the necessary resources despite its repeated inability to process requests within the time required. *Id.* ¶¶ 141-44.

---

[1] At this time, Plaintiff moves for summary judgment on his third claim only. His first and second claims are specific to the March 4, 2020 FOIA request, which remains pending.

[2] The "backlog" is "the number of perfected requests or administrative appeals that are pending at an agency at the end of the fiscal year that are beyond the statutory time period for a response." *See* SUMF ¶¶ 8, 10. For definitions of "perfected" and "processed" requests, see SUMF ¶¶ 6-7.

## LEGAL STANDARD

A moving party is entitled to summary judgment if they can "show that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a summary judgment motion, the non-moving party must set forth specific facts establishing a genuine dispute over a material fact, not the "mere existence of some alleged factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment must do more than show "some metaphysical doubt as to the material facts" but rather must provide "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

## ARGUMENT

## I.    THIS COURT HAS BROAD EQUITABLE POWER TO ENFORCE FOIA'S MANDATE FOR TIMELY DISCLOSURE OF REQUESTED RECORDS

Professor Scoville's third claim seeks to enjoin State's "pattern or practice" of non-compliance with FOIA's mandate for prompt disclosure of records upon request. This court has broad equitable power to grant such relief.

### A.    FOIA Imposes Specific, Enforceable Time Constraints on an Agency's Obligation to Respond to Records Requests

From its inception, FOIA has imposed deadlines on agencies to disclose records they are asked to make public. The purpose of FOIA is to provide not only a check against corruption and to hold government accountable, "but also to dispel misconceptions and fallacies that secrecy feeds." *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 790 (D.C. Cir. 2018) (Pillard, J., concurring). Congress understood from the start that "information is often useful only if it is timely." H. Rep. No. 93-876, at 126 (1974). FOIA thus imposes specific deadlines on the time within which agencies must process requests and produce records, and it enforces these deadlines by providing legal recourse and sanctions when agencies fail to comply. *See* 5 U.S.C. § 552 (a)(4)(B), (E), (F).

3

FOIA imposes two time limits. First, it requires an agency to determine within 20 business days after receipt of the request whether it will comply with the request and "immediately notify" the requester of the determination. § 552(a)(6)(A)(i).[3] The determination must "inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Resp. & Ethics in Wash. v. FEC* (*CREW*), 711 F.3d 180, 186 (D.C. Cir. 2013). In certain enumerated "unusual circumstances," the agency may extend the determination deadline by up to ten working days. § 552(a)(6)(B)(i).[4] This extension of "only ten additional days" was added in 1974 to address "agencies' concerns about the high volume of requests and lack of resources." *Judicial Watch*, 895 F.3d at 781. Congress reaffirmed the importance of "FOIA's timetables and its overarching mandate of prompt availability" by rejecting a proposed 30-day extension and deliberately drafting the 10-day amendment "to *force increased expedition* in the handling of FOIA requests." *Id.*

Second, FOIA requires agencies to "make the records promptly available" after the determination to produce. § 552(a)(3)(A). Through this provision, Congress "plainly intended production of records to follow close on the heels of the determination." *Judicial Watch*, 895 F.3d at 785 (Pillard, J., concurring).[5] The agency may take no more time than needed "to physically

---

[3] The agency may toll the determination period once "while seeking further information from the requester on the scope of the information sought." *Judicial Watch*, 895 F.3d at 774 (citing § 552(a)(6)(A)). If additional time is required, the agency must provide the requestor "an opportunity to limit the scope of the request . . . or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." § 552(a)(6)(B)(ii).

[4] "Unusual circumstances" apply when the processing office must collect records from other offices, when the request requires the agency to review "a voluminous amount of separate and distinct records," or when the agency must consult with other agencies. § 552(a)(6)(B)(i), (iii).

[5] Courts have regularly treated an agency's twenty-day deadline to make a determination on a request as its deadline to produce responsive documents. *See, e.g., Electronic Privacy Info. Ctr. v.*

redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce." *CREW*, 711 F.3d at 189. As then-Judge Kavanaugh observed in *CREW*, the requirement to make records promptly available "typically would mean within days or a few weeks of a 'determination,' not months or years." *Id.* at 188-89; *see also Judicial Watch*, 895 F.3d at 784 (taking "hundreds of days to process requests" is not permissible under FOIA). FOIA does not condone agencies taking "many months or years" to respond to requests because Congress understood that "excessive delay" in an agency's FOIA response "is often tantamount to denial." *Judicial Watch*, 895 F.3d at 781 (citation omitted).

**B.    This Court Has the Equitable Power to Enforce FOIA's Time Constraints by Enjoining a Demonstrated Pattern or Practice of Noncompliance**

FOIA grants district courts the power "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." § 552(a)(4)(B). As FOIA's "enforcement arm," district courts may exercise this equitable power broadly to enforce the law's requirement that agencies provide records promptly to the public. *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19 (1974); *accord Miller v. Bell*, 661 F.2d 623, 625 (7th Cir. 1981) (FOIA "vests the district court with all the powers of an equity court to issue injunctive relief"); *Animal Legal Def. Fund v. U.S. Dep't of Agric.* (*ALDF*), 935 F.3d 858, 870-71 (9th Cir. 2019) (FOIA authorizes courts to order agency compliance). Congress prioritized prompt FOIA responses by authorizing judicial intervention "if an agency fails to meet statutory timetables for disclosure." *Judicial Watch*, 895 F.3d at 775-76. Indeed, "FOIA imposes no limits on courts'

---

*DOJ*, 416 F. Supp. 2d 30, 36-40 (D.D.C. 2006); *Or. Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503-504 (S.D.N.Y. 2004); *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1186-88 (N.D. Cal. 1998). This interpretation of FOIA's deadline provisions comports with the law's purpose "to contribute to the fuller and faster release of information." H.Rep. No. 876, 93d Cong., 2d Sess. (1974).

equitable powers in enforcing its terms." *Payne Enter., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *accord Bannercraft*, 415 U.S. at 19-20 (finding nothing in FOIA suggesting "Congress sought to limit the inherent powers of an equity court").

Courts have both "the responsibility of ensuring the fullest responsible disclosure" under FOIA and the power to order equitable relief "to bar future FOIA violations." *ALDF*, 935 F.3d at 873. As has been widely recognized, courts may exercise this power by enjoining a demonstrated "policy or practice of delayed disclosure." *Payne*, 837 F.2d at 491; *see, e.g.*, *Judicial Watch*, 895 F.3d at 777-78; *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016); *Liverman v. Off. of Inspector Gen.*, 139 F. App'x 942, 945 (10th Cir. 2005).[6] Such "policy or practice claims stem from an agency's policy of violating FOIA rather than from the results of a particular request." *ALDF*, 935 F.3d at 874. Even when the production of records moots a claim to enforce a specific FOIA request, "this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at 491.

Courts have found an actionable pattern of FOIA violation where "an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Id.*; *see also Hajro*, 811 F.3d at 1103 (equitable relief appropriate where "agency *policy or practice* will impair the party's lawful access to information in the future"). FOIA violations need not be

---

[6] District courts in this circuit and elsewhere have acknowledged the viability of pattern or practice claims under the court's broad equitable power to enforce FOIA. *See, e.g.*, Order on Mot. to Dismiss, at 7, ECF No. 21 (the "MTD Order"); *Int'l Refugee Assistance Proj., Inc. v. U.S. Citizenship & Immigr. Servs.*, 551 F. Supp. 3d 136, 165 (S.D.N.Y. 2021); *S. Env't L. Ctr. v. Bernhardt*, 432 F. Supp. 3d 626 (W.D. Va. 2020); *LAF v. Dep't of Veterans Affs.*, No. 17 C 5035, 2018 WL 3148109, at *4 (N.D. Ill. June 27, 2018); *Navigators Ins. Co. v. DOJ*, 155 F. Supp. 3d 157, 168 (D. Conn. 2016); *Rocky Mountain Wild, Inc. v. United States Forest Service*, 2016 WL 362459, at *10-11 (D. Colo. 2016); *Nkihtaqmikon v. Bureau of Indian Affs.*, 493 F. Supp. 2d 91, 114 (D. Me. 2007).

egregious to establish a pattern or practice claim for equitable relief. As this Court has recognized, even informal, unofficial policies may warrant such relief. MTD Order 8, 13 (citing cases). Courts have recognized a pattern or practice to exist, for example, where an agency repeatedly invoked an inapplicable exemption, *Payne*, 837 F.2d at 480-90; demanded search information before processing email requests, *Muckrock, LLC v. Cent. Intel. Agency*, 300 F. Supp. 3d 108, 136 (D.D.C. 2018); or routed requests through the Privacy Act, *LAF*, 2018 WL 3148109, at *6.

Notably, the D.C. and Ninth Circuits have held that a pattern or practice claim may be based upon "informal agency conduct resulting in long delays in making requested non-exempt records available." *See Judicial Watch*, 895 F.3d at 777-78; *see also Hajro*, 811 F.3d at 1093 (allowing a pattern or practice claim "for unreasonable delay in responding to FOIA requests"). District courts in this circuit and others have followed suit. *See, e.g.*, *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 833 (N.D. Ind. 2015) (recognizing the existence of delay-based pattern or practice claims); *Nightingale v. U.S. Citizenship and Immigr. Servs.*, 507 F. Supp. 3d 1193, 1207 (N.D. Cal. 2020) (granting summary judgment on a delay-based pattern or practice claim); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.* (*OCE I*), No. 14-1130, 2015 WL 4452136, at *8 (N.D. Cal. Jul. 20, 2015) (noting lack of agency resources does not grant "carte blanche to repeatedly violate congressionally mandated deadlines"). Courts have repeatedly found a pattern or practice of FOIA non-compliance based upon repeated violations of FOIA's timing requirements less severe than the delays established here by Professor Scoville. *See infra*, Part II.

A delay-based pattern or practice violation can arise from repeated violations of FOIA's requirement to make a determination on a request within 20 business days or of its requirement to "make the records promptly available." § 552(a)(6)(A)(i), (a)(3)(A); *see, e.g.*, *Judicial Watch*, 895 F.3d at 776 (policy and practice claim for agency's failure to make records promptly available).

7

Prolonged delays in "disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Judicial Watch*, 895 F.3d at 778. After all, "[i]t would be ironic if a policy or practice claim could be based on misapplication of a FOIA exemption . . . , but not on an agency's total disregard of the obligations mandated by Congress and failure to take advantage of provisions allowing additional time to respond." *Id.* at 782. Refusing to acknowledge delay-based claims would "render FOIA's mandate of 'prompt' response superfluous, *i.e.*, a dead letter" and conflict with "Congress's remedial purpose in enacting FOIA to enhance government transparency subject to limited statutory exemptions." *Id.* at 780.

## II. STATE'S PROLONGED, PERSISTENT, AND PERVASIVE FOIA DELAYS ESTABLISH A PATTERN OR PRACTICE OF FOIA NONCOMPLIANCE

A delay-based pattern or practice of FOIA non-compliance is established by showing "a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with [the plaintiff's] right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch*, 895 F.3d at 780 (citing *Payne*, 837 F.2d at 486).[7] To prevail on a pattern or practice claim, a plaintiff must show that the timing violations affecting their requests are part of a larger pattern or practice of delay that warrants judicial attention, rather than the result of an agency's isolated mistakes. MTD Order 14, 15.

---

[7] Pattern or practice claims are interchangeably referred to as "policy or practice" claims. At the pleading stage, plaintiffs sometimes rely on the "unexplained" nature of an agency's delays to allege a pattern or practice claim. *See, e.g.*, *Judicial Watch*, 895 F.3d at 780 (plaintiffs state a plausible claim "by alleging prolonged, unexplained delays in producing non-exempt records that *could* signal the agency has a policy or practice of ignoring FOIA's requirements") (emphasis added). But an agency's violations need not be "unexplained" to constitute a pattern or practice. That policy, pattern, or practice may be informal, one that a plaintiff cannot explain without the benefit of discovery into internal decision making at the agency, or it can be formal, one that provides an express (albeit unlawful) explanation for the delay. *Id.* at 782; MTD Order 13.

8

There are "a number of ways to prove" that an agency's timing violations amount to an unlawful pattern or practice. *Hajro*, 811 F.3d at 1104. One consideration is whether the agency has a pattern of delays that are prolonged, such that they fall outside the bounds of FOIA's timing requirements. *See Judicial Watch*, 895 F.3d, at 776-78 (noting length of delays in the record); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.* (*OCE II*), No. 14-1130 SC, 2015 WL 6331268 (N.D. Cal. Oct. 21, 2015); *Nightingale*, 507 F. Supp. 3d at 1201 (same); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 832 F. Supp. 2d 1095, 1107-08 (N.D. Cal. 2012) (same), *rev'd on other grounds*, 811 F.3d 1086 (9th Cir. 2016).

Second, courts consider whether delays are persistent, meaning that they are not a fluke or temporary circumstance but are, rather, part of an established track record of timing violations. *See Judicial Watch*, 895 F.3d at 780; *Nightingale*, 507 F. Supp. 3d at 1200-01 (noting the agency's "persistent failures" to follow FOIA's mandates); *OCE II*, 2015 WL 6331268, at *8.

Third, plaintiffs may offer evidence that the violations are pervasive, which is to say that they are common across multiple requesters. *See Hajro*, 811 F.3d at 1104 ("affidavits of people similarly situated to the plaintiff who were also harmed by the pattern or practice" can establish a claim); *Nightingale*, 507 F. Supp. 3d at 1203-04 (unlawful pattern or practice based in part on testimony from other requesters); *cf. Evans*, 135 F. Supp. 3d at 833 (rejecting pattern or practice claim where plaintiff didn't show that other requesters "have experienced unreasonable delays").

This Court previously found that Professor Scoville's allegations were consistent with a finding of standing and held that he plausibly alleged a pattern or practice claim. MTD Order 15-16. The record now establishes the existence of a pattern or practice of FOIA non-compliance by State. State's systemic violation of FOIA's timing obligations is not the result of isolated mistakes. Rather, State's disposition of FOIA requests is routinely prolonged, with extreme delays from

9

submission to disposition; these delays are persistent, having affected incoming requests for many years; and State's practice of routine non-compliance has been pervasive across all categories of requesters and all types of requests.

A.    **Indisputable Facts Establish Prolonged Delays in State's FOIA Responses**

There is no genuine dispute that State exceeds FOIA's permitted response times by months and years. SUMF ¶¶ 20, 27, 33, 36, 57, 68, 74-86 (documenting State's routine, lengthy delays with Professor Scoville's requests and others). State's processing delays far exceed those that have formed the basis of successful policy-or-practice claims. This is true under any measure of State's FOIA processing: the consistent delay Professor Scoville has experienced, State's own timing data, and accounts of other requesters all reflect State's pattern of prolonged delay.

1.    **State subjected Professor Scoville's requests to prolonged delays.**

State cannot dispute that it has subjected Professor Scoville's requests to egregious and prolonged delays. SUMF ¶¶ 15-68. For example, Professor Scoville's March 4, 2020 FOIA request, which is the basis for Claims One and Two of this lawsuit, is still pending nearly five years after he submitted it and more than three years into this litigation. SUMF ¶¶ 37-40, 54-57.

State's extreme delays in processing Professor Scoville's FOIA requests are well beyond the statute's deadlines and establish the harm he suffered from State's practice of FOIA non-compliance. State took 49 months to process Professor Scoville's April 16, 2014 FOIA request, SUMF ¶ 20; nearly 65 months to process his March 10, 2016 request, SUMF ¶¶ 25, 27; and 39 months to process his October 21, 2016 request, SUMF ¶ 33; and it produced just one record in response to his February 17, 2018 request after a nearly two-year delay, SUMF ¶ 36.

This pattern of prolonged delay has forced Professor Scoville to take legal action against State in order to have any hope of accessing records while they still have some relevance to his research. *See* SUMF ¶¶ 1, 2, 19, 26, 31, 35, 52. But even in litigation, getting State to take any

action toward acknowledging or processing the requests often requires repeated inquiries from Professor Scoville or his counsel. SUMF ¶ 73. Professor Scoville's March 4, 2020 FOIA request has languished for nearly five years without the production of a single responsive page, despite being the subject of two claims in this lawsuit. SUMF ¶¶ 37-57. In the nearly three-and-a-half years since Professor Scoville submitted his August 16, 2021 FOIA request, he has only received a partial response, and the request remains pending. SUMF ¶¶ 65-68.

State took weeks, months, and, in one case, nearly a year to even provide an estimated date of completion ("EDC") on Professor Scoville's requests and often failed to make any determination on the requests—steps that are normally to be completed within 20 days.[8] *See* SUMF ¶¶ 16, 22, 29, 34-36, 42, 47-49, 53, 58-68, 71-72. The initial EDCs State provided set dates months or years after the requests had been perfected, confirming the agency's pattern or practice of ignoring FOIA's requirement for prompt production. *See* SUMF ¶¶ 16, 22, 47. Worse, State often extended those initial EDCs by many additional months, sometimes notifying Professor Scoville of a new EDC long *after* missing the original EDC. SUMF ¶¶ 16, 22-24, 47-49, 53, 72. In other cases, EDCs passed without comment from State. SUMF ¶¶ 30, 32, 47-53, 72. Throughout its processing, State also provided incorrect and inconsistent information about the nature, location, and processing of records, further exacerbating its delays. SUMF ¶¶ 16-17, 29-30, 53-54, 59-64.

---

[8] *See* § 552(a)(6)(A)(i). FOIA also provides that "[e]ach agency shall establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number, including an estimated date on which the agency will complete action on the request." § 552(a)(7)(B)(ii).

The incontrovertible record establishes that State failed to comply with FOIA's timing requirements for each of Professor Scoville's requests, without any statutory justification.[9] And the length of State's delays far surpasses those held by courts to demonstrate an agency pattern or practice of delay. In *Nightingale*, the district court granted plaintiffs summary judgment on their pattern or practice claim where the agency delayed processing their requests by just over seven months. 507 F. Supp. 3d at 1200-03, 07. In *Hajro*, the district court explained that "[a] reasonable jury could only conclude that Plaintiffs have met their burden as to a policy or practice of timing violations" based upon a three-month delay in processing the plaintiffs' requests. 832 F. Supp. 2d at 1107-08; *see also Long v. U.S. Internal Revenue Serv.*, 693 F.2d 907, 910 (9th Cir. 1982) (finding injunctive relief appropriate "to prevent the prolonged delays and repeated litigation" given agency's 17-month delay in providing requested documents); *OCE II*, 2015 WL 6331268, at *8 (finding pattern or practice of delay based on "a history of late responses, ranging but not limited to 4 days, 18 days, 51 days, 9 months, 10 months, and ongoing").

### 2. State routinely subjects other FOIA requesters to prolonged delay.

State's own statistics demonstrate its routine, prolonged delay in processing FOIA requests. Prior cases have not prescribed a minimum amount of time before an agency's average FOIA delay becomes unreasonable, but the difference between days and months is significant. *See CREW*, 711 F.3d at 188 (noting that timely production of documents "typically would mean within days or a few weeks of a 'determination,' not months or years"); *compare Nightingale*, 507 F.

---

[9] Although State frequently claims "unusual circumstances" when it receives FOIA requests, it fails to complete the other steps required to secure a ten-day extension, instead "simply assign[ing] a tracking number and provid[ing] no additional communication," in many cases, until the requesters sue. SUMF ¶¶ 41-47; 77, 79; *see Judicial Watch*, 895 F.3d at 785-87 (Pillard, J., concurring) (stressing DHS's poor communication and failure to take advantage of "unusual circumstances" provision and noting equitable relief would be appropriate if agency failed to provide a "statutorily adequate explanation" for its "persistent practice of alleged delays).

Supp. 3d at 1200-03, 1207 (finding a pattern of unreasonable delay when average processing time for complex requests had been "between 55 and 90 days" and was currently 71 days), *with Telematch, Inc. v. U.S. Dep't of Agric.*, No. CV 19-2372 (TJK), 2020 WL 7014206, at *12 (D.D.C. Nov. 27, 2020) (finding insufficient evidence of a pattern or practice of delayed disclosure when agency processed simple requests "on average in 4.25 days, with a median response time of one day, . . . [and] complex requests on average in 28.57 days, with a median of eleven days"), *aff'd*, 45 F.4th 343 (D.C. Cir. 2022).

There is no genuine dispute that State's department-wide delay in processing FOIA requests is significantly prolonged. As of the end of Fiscal Year 2024, the 21,302 requests that remained pending in State's complex track had languished for an average of 622.79 days, and requests in the simple track had been pending for 377.91 days on average:

**VII.D. PENDING REQUESTS — ALL PENDING PERFECTED REQUESTS**

| Agency / Component | SIMPLE | | | COMPLEX | | | EXPEDITED PROCESSING | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days | Number Pending | Median Number of Days | Average Number of Days |
| DOS – Main | 2,491 | 433 | 451.81 | 21,253 | 473 | 775.58 | 338 | 332 | 633.23 |
| OIG | 100 | 175 | 304 | 49 | 313 | 470 | 0 | N/A | N/A |
| AGENCY OVERALL | 2,591 | 300 | 377.91 | 21,302 | 393 | 622.79 | 338 | 332 | 633.23 |

SUMF ¶¶ 75; 91 (633.23 days for "expedited" requests). The median numbers tell a similar story. SUMF ¶ 75. Nor does State fare any better when assessing the average processing times for requests *completed* in Fiscal Year 2024.[10] The complex requests that were processed in FY 2024

---

[10] Although the "requests processed" statistics offer a snapshot of State's processing times for a particular fiscal year, they fail to capture the full picture, because they reflect only the requests State has chosen to close out. For instance, State recently "processed" a large number of requests by requiring responses to "still interested" letters within 30 days, SUMF ¶¶ 109-11, and marking over 3,500 requests as duplicate in FY2024. SUMF ¶ 90. The numbers do not reflect any

had an average response time of 564 days. SUMF ¶ 93 (530 days for "expedited" requests). The experiences of several specific requesters identified from State's discovery responses reflect the very same experience of prolonged delay, SUMF ¶ 81 (detailing more than 100 requests delayed for more than 5 years and dozens delayed for over a decade), which often persists even after requesters have sued to enforce State's FOIA obligations, SUMF ¶ 83; *see also* SUMF ¶¶ 52-57, and sometimes State never completes a production at all. SUMF ¶¶ 83-84. State's delayed processing is often so extreme, requesters will withdraw their requests because the records would no longer be useful by the time they were disclosed. SUMF ¶ 85.

### B.     Indisputable Facts Establish State's Persistent Pattern of Delayed Responses

Egregious violations of FOIA's timing requirements have been a feature of State's FOIA program for at least a decade. SUMF ¶ 87. There is no genuine dispute that for the past ten years State has persistently reported increasingly high backlogs and response times that reflect a chronic failure to comply with FOIA's timing requirements. This persistent practice has injured Professor Scoville. SUMF ¶¶ 69-73. This history of delay further evidences a pattern or practice of FOIA timing violations and missed deadlines that are not "isolated mistakes." MTD Order 8 (citing *Payne*, 837 F.2d at 491). State's long-running violations of FOIA's prompt response requirement warrant judicial intervention. *See Nightingale*, 507 F. Supp. 3d at 1201-02; *OCE I*, 2015 WL 4452136 at 8; *Hajro*, 832 F. Supp. 2d at 1108.

State's persistently high FOIA backlogs are a symptom of State's pattern or practice of non-compliance. *OCE I*, 2015 WL 4452136, at *8. A high backlog of FOIA requests is "a red flag indicating the potential for FOIA compliance issues." *Id.* (finding that a backlog of more than 100

---

requests—including extremely-long-pending requests—that State has not prioritized and completed. The timelines for pending requests, on the other hand, capture the full universe of requests at State and therefore provide a more accurate measure of State's delays.

requests suggested a pattern or practice of FOIA violation). In *Nightingale*, the court found that an agency's FOIA backlog that persisted for eight years, "increased in recent years," and was not projected to be eliminated for at least a year established an "unmistakable history" of violating FOIA's timing requirements which warranted relief. 507 F. Supp. 3d at 1201-02. There, the fact that the agency's "average processing time" far exceeded FOIA's deadlines, and testimony from FOIA requesters affirming the agency's failure to respond "within the statutory timeframe" supported the conclusion that the agency had a practice of "unreasonable delay" in processing requests. *Id.* at 1203; *see also Hajro*, 832 F. Supp. 2d at 1104.

State, too, has an "unmistakable history" of "unreasonable delay" in processing FOIA requests, as documented by its persistent failure to reduce the number of pending requests to a manageable level. Over the past decade, State has never managed to reduce its backlog below 10,000 requests, SUMF ¶ 95, and in only two of the past 11 years has it processed more requests than it received. SUMF ¶ 88. As a result, State's backlog has consistently grown since its 11-year-low of 10,400 requests in 2017. SUMF ¶ 95. Between 2018 and 2023, State's backlog increased by a staggering 11,219 requests—an increase that far exceeds those in *Nightingale* and *Our Children's Earth*.

State's current backlog stands at 23,095 requests, its highest point in the past 11 years. SUMF ¶ 95. These egregious, year-over-year increases do not reflect a temporary spike in new requests that State can wait out. Rather, they reflect the agency's persistent failure to process requests within the statutory timeframe—a long-term failure that indicates systemic flaws in State's processing practices. *Cf. Swan View Coal. v. Dep't of Agric.*, 39 F. Supp. 2d 42, 47 (D.D.C. 1999) (no pattern or practice claim where noncompliance represented only a discrete, 7-month period and agency complied with FOIA before and after that period). Indeed, State acknowledges

that its persistently high backlog contributes to the agency's extreme processing delays by causing it to divert FOIA staff from processing contemporary requests. SUMF ¶¶ 100, 101, 118. The number of days requests remain pending, and State's consistently lengthy processing times reflect a systemic failure to abide by FOIA's deadlines. *See Nightingale*, 507 F. Supp. 3d at 1202-03; *see also Thompson v. DOJ*, 2023 WL 5493591, at *4 (W.D.N.C. Aug. 4, 2023) (finding allegations of pattern or practice of delay sufficient where agency provided timely responses to less than half of requests processed over five-year span).

State has historically left FOIA requests pending for hundreds of days on average. SUMF ¶ 91. Assessing the average number of days requests were pending in each fiscal year between 2014 and 2024, pending simple requests remained unprocessed between 260 and 697 days, complex requests between 510 and 991 days, and expedited requests between 169 and 791 days, on average. SUMF ¶ 91; *see also* SUMF ¶¶ 11-13. Similarly, over the past decade State's average processing time for requests in the complex and expedited tracks has always exceeded statutory time constraints. Its average processing time for complex track requests ranged from 115 to 650 days—nearly six times the statutory limit in the best year. SUMF ¶ 93; *see also id.* (average processing times for expedited requests between 102 and 530 days). In *Nightingale*, the court found a pattern or practice of FOIA violation based upon an agency's far shorter average processing time—between 55 and 90 days. 507 F. Supp. 3d at 1202-03.

### C.    Indisputable Facts Establish Pervasive Delays in State's FOIA Responses

Professor Scoville has likewise shown that State's delays are not "isolated mistakes by agency officials" but rather are the result of a pervasive pattern affecting myriad requesters. *Payne*, 837 F.2d at 471; MTD Order 14-15. An agency's pattern or practice of FOIA non-compliance can be demonstrated by consistent FOIA violations. *See, e.g.*, *Payne*, 837 F.2d at 494 (repeatedly invoking an incorrect exemption); *LAF*, 2018 WL 3148109, at *1 (routinely channeling certain

requests through the Privacy Act process). Professor Scoville's experience, that of other requesters, and State's own statistics demonstrate that timing violations are consistent across State's FOIA program, affecting all categories of requests and types of requesters.

Evidence of widespread delay indicates that the delays experienced by Professor Scoville were not the result of any aberration but the result of a delay-based pattern or practice. *OCE II*, 2015 WL 6331268, at *8. *Judicial Watch* highlighted repeated delays experienced by the same plaintiff, requiring them to sue six separate times to compel production. 895 F.3d at 782. *Nightingale* relied on testimony from "[n]amed plaintiffs and numerous other immigration attorneys" reporting failures to respond for months. 507 F. Supp. 3d at 1201 (citing five non-party declarations). The district court in *Hajro* cited testimony from twenty-six non-parties "encountering the same delays in the same context as" the two plaintiffs. 832 F. Supp. 2d at 1108; *see also Hajro*, 811 F.3d at 1104 (holding that, for standing purposes, these declarations support allegations of a timing violation that is "not an isolated event"); *but cf. Am. Ctr for L. & Just. v. FBI*, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) (treating three very different requests by same requester as insufficient to show agency had pattern or practice of forcing requesters to sue before processing requests, as opposed to isolated mistakes by FOIA employees).

State's timing violations are similarly pervasive, as reflected in Professor Scoville's experience, the experiences of many other requesters, and State's data. Professor Scoville has experienced repeated delays ranging from a minimum of one year to as long as nearly five-and-a-half years across six different requests, establishing "that he has been subjected to a FOIA violation more than once." MTD Order 15; *see also* SUMF ¶¶ 3, 20, 27, 33, 36, 57, 68-69. And Professor Scoville's experience is no anomaly. Thirteen other requesters have testified to consistent, ongoing delays as long as eleven years. SUMF ¶¶ 81-84. These delays often lasted so long that the requested

records were no longer useful, leading the requesters to withdraw their requests or to abandon avenues of research that would require records from State. SUMF ¶¶ 82, 85, 108. State's prolonged delays occur across requests concerning varieties of subject matter, categories of requesters, and complexity and volume of requested records—delays even occur for "very targeted, narrower requests." SUMF ¶¶ 103-07.

Requesters to State are consistently harmed by FOIA delays that cannot be dismissed as individual mistakes. Pattern or practice claims need not involve requests on "a single subject matter" or involve "a single type of request." MTD Order 13 (cleaned up; citation omitted). Here, the undisputed facts demonstrate that State's delays are widespread and affect requests on an agency-wide scale. SUMF ¶¶ 87, 91, 103-07. State's extensive backlog of pending requests—currently over 23,000 requests—means each new requester joins a long line of requesters all but destined to wait well beyond FOIA's 20- or 30-day limits for a response. SUMF ¶¶ 89, 91-93, 95. State recognizes this fact, reporting to Professor Scoville and other requesters that its backlog will prevent them from receiving prompt productions. *See* SUMF ¶¶ 24, 100-01.

Far from isolated events, State's prolonged, persistent, and pervasive FOIA delays establish a pattern or practice of violating FOIA's time constraints.

## III. INJUNCTIVE RELIEF TO CORRECT STATE'S PROLONGED, PERSISTENT, AND PERVASIVE FOIA DELAY IS NECESSARY AND PROPER

Equitable relief is appropriate to address an agency's pattern or practice of violating FOIA where there exists "some cognizable danger of recurrent violation, something more than a mere possibility." *Judicial Watch*, 895 F.3d at 783. In such cases, "[o]rdering defendants to adhere to FOIA timing requirements and provide quarterly reports on their compliance" are forms of relief ordinarily granted. *Nightingale*, 507 F. Supp. 3d at 1211; *see also, e.g.*, *Hajro*, 832 F. Supp. 2d at 1120 (ordering agency to clear backlogged files and submit quarterly reports thereafter); *Ray v.*

*DOJ*, 770 F. Supp. 1544, 1552 (S.D. Fla. 1990) (ordering agency office to "comply with [FOIA] time requirements"); *cf. Gonzalez Rosario v. United States Citizenship & Immigration Servs.*, 365 F. Supp. 3d 1156, 1163 (W.D. Wash. 2018) (requiring agency to comply with 30-day statutory deadline for adjudicating employment authorization and submit status reports); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 (9th Cir. 2002) (mandating compliance with 12-month deadline to make Endangered Species Act determinations).

Such injunctive relief is necessary and appropriate here because the record establishes far more than a possibility of continuing FOIA violations given State's "decade-long systemic problem." *Nightingale*, 507 F. Supp. 3d at 1211; *see also Long*, 693 F.2d at 910 (finding injunctive relief is appropriate to prevent prolonged delays and repeated litigation over non-disclosure).

### A.     State's Routine Violation of FOIA's Timing Requirements Will Continue Absent Relief from This Court

State's flouting of FOIA's deadlines is certain to continue absent this Court's intervention. Equitable relief is appropriate where there is a "reasonable basis" to believe State's FOIA "infractions will be ongoing." *Nightingale*, 507 F. Supp. 3d at 1201 (citing *OCE II*, 2015 WL 6331268, at *8). While "not all agency delay or other failure to comply with FOIA's procedural requirements" warrants injunctive relief, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Nightingale*, 507 F. Supp. 3d at 1211 (citing *Judicial Watch*, 895 F.3d at 782; *Long*, 693 F.2d at 910); *accord* MTD Order 14.

Whether injunctive relief is appropriate turns on the (1) character of past violations, (2) *bona fides* of attempts to remedy the violation, and (3) public impact of the FOIA violations. *Judicial Watch*, 895 F.3d at 783 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *accord Nightingale*, 507 F. Supp. 3d at 1208-11. State's long history of extreme

noncompliance and repeated failure to develop a realistic plan to come into compliance confirm that State's failure to meet FOIA's timing requirements is not the result of "mere[] isolated mistakes," "will recur in the future," and will continue to harm the public interest absent "comprehensive injunctive relief." *See Nightingale*, 507 F. Supp. at 1207; *see also Payne*, 837 F.2d at 494 (finding that district court abused discretion in denying injunctive relief, given agency's "inability to deal" with FOIA noncompliance). State's "delinquent" and "recalcitrant" conduct warrants injunctive relief "because ordinary remedies, such as a production order . . . would be inadequate to overcome" State's pattern or practice of violating FOIA's timing requirements. *Judicial Watch*, 895 F.3d at 783.

### 1. Character of State's past FOIA violations shows need for injunctive relief.

State's routine violation of FOIA's mandate for prompt production has persisted for at least a decade. The persistent and pervasive character of State's practice of FOIA delay more than justifies the conclusion that its routine delays are likely to continue absent judicial intervention. Indeed, other courts have found sufficient grounds to justify injunctive relief on records of FOIA delay less severe or long-standing than State's. In *Nightingale*, for example, the failure to make timely determinations, long processing times of 55 to 90 days, a chronic backlog of requests, and the inevitable placement of future requests at the end of the line of backlogged requests warranted injunctive relief. 507 F. Supp. 3d at 1202-03, 1211; *see also Ray*, 770 F. Supp. at 1552 (granting injunctive relief where agency's repeated FOIA delays were caused by a predictable backlog of requests). Again, in *Hajro*, the district court found the agency's "history of past violations" resulting from delayed processing established a sufficiently "persistent character of the violations" to conclude that "the violations are likely to continue." 832 F. Supp. 2d at 1108.

State's history of FOIA violations is more troubling than those in *Nightingale* and *Hajro*. Over the past ten years State has consistently reported substantial backlogs: a reported backlog of

over 10,000 in FY2014 has grew to over 23,000 by the first quarter of FY2025. SUMF ¶¶ 87-89, 95, 97. State's response times also chronically fail to meet FOIA's requirements, with complex track requests pending an average of 623 days and simple track requests pending an average of 378 days in FY2024. SUMF ¶ 91. On this record, injunctive relief is fully warranted.

### 2. Absence of a *bona fide* plan to remedy States' FOIA violations shows need for injunctive relief.

An agency's "inadequate efforts" to solve systemic FOIA violations or its failure to show that it is on a "path towards substantial compliance with FOIA statutory deadlines" also warrant injunctive relief. *Nightingale*, 507 F. Supp. 3d at 1211; *accord Hajro*, 832 F. Supp. 2d at 1108. Even where an agency's FOIA delays do not "indicate an absence of good faith," the repeated occurrence of the delays and the absence of *bona fide* efforts to end the timing violations "weighs in favor of a permanent injunction." *Hajro*, 832 F. Supp. 2d at 1108; *see also Payne*, 837 F.2d at 494 (finding injunctive relief warranted given agency's "inability to deal with" its FOIA noncompliance); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIVS-06-2845, 2008 WL 2523819, at *17 (E.D. Cal. June 20, 2008) (finding injunctive relief warranted where agencies failed to show "effective voluntary attempts to conform to the law").

The record before the Court establishes State's inability to deal with its FOIA noncompliance and the repeated failure of its purported attempts to conform to the law. *See Payne*, 837 F.2d at 494. State has operated for years under a backlog reduction plan that was unrealistic from its inception and has never been updated despite a growing backlog. Years ago, State in fact abandoned efforts that were proving successful in improving its FOIA processing and reducing the backlog, but it now instead follows practices that exacerbate its FOIA delays and fails to pursue options that could help address its FOIA backlog.

### a. State implemented and continues to follow a purported backlog reduction plan it knows to be fundamentally flawed and insufficient.

State's lack of intention and superficial effort to comply with FOIA are apparent from the deficiencies of its current backlog reduction plan. When the plan was adopted in response to a Government Accountability Office request, in 2020, State claimed it would eliminate the backlog by 2027 and allow State to timely process new requests. SUMF ¶¶ 123-24. Instead, the backlog has grown from 13,798 in FY2020 to 23,095 as of first quarter 2025. SUMF ¶¶ 95, 97.

State's backlog plan was destined to fail because it was built around the faulty assumption that State would receive no more than 8,100 new FOIA requests every year for seven years. In other words, it assumed State would receive fewer requests than it was receiving *before* adopting the plan and that the number of requests would not grow for seven years—assumptions that were untethered to State's experience and that State knew were incorrect. SUMF ¶ 126-28. The average number of requests State received over the prior two years exceeded 8,100, and the number of incoming requests had been rising steadily for several years. SUMF ¶¶ 126-27. State knew from the outset that its static estimate of annual requests had wildly underestimated the number of requests it would receive over the life of the plan. As the head of its FOIA program acknowledged, by February 2020 State projected it would receive over 9,000 FOIA requests in 2020. SUMF ¶ 128.

The mistaken assumptions on which the backlog reduction plan was built received no formal assessment due to the "cost and time required" to do so. SUMF ¶ 125. The plan nevertheless became the basis for State's funding and staffing decisions. SUMF ¶ 131. State uses the plan to set case processing targets, which in turn are used in setting anticipated resource needs. SUMF ¶ 131. By underestimating the number of requests to be processed, State set artificially low targets for case processing, staffing, and other resource needs. SUMF ¶ 131; *see also* SUMF ¶¶ 132, 140. Given the plan's understatement of the work to be done, it is no surprise that even as State has met

and sometimes exceeded the plan's goals for processing requests, it has only been digging itself into a deeper hole. SUMF ¶ 132. But in every year since the plan was adopted, State has incorrectly represented to the public that the plan is intended to eliminate the backlog. SUMF ¶ 123.

Despite the fundamental flaw in the 2020 Backlog Reduction Plan, and notwithstanding State's immediate and continuing failure to meet the plan's backlog reduction goals, State has made no changes to the 2020 Backlog Reduction Plan. SUMF ¶ 129. The reasons it has given for failing to update the Plan—including State's decision to move its FOIA processing operations to Charleston and its failure to hire an IPS Director from November 2021 until March 2023—are largely within its own control. SUMF ¶ 130.

State acknowledges that an effective backlog reduction plan must reasonably reduce the number of pending and backlogged requests, SUMF ¶ 133, but instead of updating the 2020 Backlog Reduction Plan to meet these requirements, it has abandoned any aspiration to comply with FOIA's timing mandates. SUMF ¶ 134. Contrary to the Department's public statements, Tim Kootz, Deputy Assistant Secretary for Shared Knowledge Services at State, testified that clearing the backlog is not currently a goal for the Department, an admission that State has simply abandoned its pursuit of full FOIA compliance. SUMF ¶ 134.

As State acknowledges, the persistence of its large backlog contributes directly to the long time it takes to process new requests, given its policy of processing requests not subject to litigation on a "first-in, first-out" basis. *See* SUMF ¶ 14; SUMF ¶ 24 (informing Scoville delay was due to backlog); ¶¶ 100-01 (State citing backlog as justification for delay). Rather than being processed promptly, each new FOIA request joins the back of a long queue with requests dating back decades. *See* SUMF ¶ 98 (oldest pending request in State's backlog is approximately 17 years old). State

candidly informed one requester that its 2.5-year estimated date of completion was based on its FOIA backlog, "not the contents" of the request. *See* SUMF ¶ 101.

State publicly touts its backlog reduction plan's purported goal to eliminate its backlog, SUMF ¶ 123, but the backlog continues to grow while new requests sit pending for hundreds of days, SUMF ¶¶ 91, 95-97. As in *Nightingale*, State's "long and continuing history of backlogs, their admissions that even on average they continue to fail to comply with the statutory timelines, and the inadequate efforts they have made so far to solve the issue" necessitates injunctive relief. 507 F. Supp. 3d at 1211.

> *b. State knows the steps needed to address its backlog, but has chosen not to take them.*

Court intervention is warranted when an agency has a track record of inadequate, temporary attempts to address its FOIA violations but has failed to make the changes needed for long-term compliance. In *Nightingale*, the court granted injunctive relief where the agencies relied "on a patchwork of short-term fixes—overtime, staff detailed from other departments, and contract support—none of which has succeeded in the long-term." 507 F. Supp. 3d at 1206. A similar situation exists here.

In fall 2017, State launched a "FOIA Surge" initiative that sought to clear the backlog by December 2017. SUMF ¶ 135. In implementing the Surge, State acknowledged the importance of committing increased resources to FOIA processing, directing "hundreds of additional employees" to the FOIA workforce and allocating an additional $7.8 million to backlog-reduction efforts. SUMF ¶¶ 135-37. This effort proved successful, while it lasted. By the end of FY 2017, State was closing about 1,800 FOIA requests a month, and by April 30, 2018, State had achieved a 40% reduction in its backlog. SUMF ¶ 138. Rather than continuing this effort, however, State abandoned it in April 2018, before the backlog could be eliminated. SUMF ¶ 139.

The Surge demonstrates that State knows how to reduce its response times and backlog but has chosen not to allocate the funding or staffing needed to comply with its FOIA obligations. SUMF ¶ 138 (State noting that setting case closure targets has worked to reduce the backlog); *Cf. S. Yuba River Citizens League*, 2008 WL 2523819, at *13 ("An agency always has the manpower and power to do what it believes must be done."). Since State ended the Surge, it has repeatedly cited limited resources as the basis for its noncompliance, SUMF ¶¶ 141,144, but has not requested additional funding and has not undertaken any meaningful efforts to obtain additional resources to help resolve this issue. SUMF ¶¶ 142, 143; *see also* SUMF ¶ 140.

Instead, while the number of incoming requests has steadily increased, the number of full-time FOIA staff has decreased. SUMF ¶ 143 (FY2024 staffing levels were lower than they were in FY2017, when State received a third of the requests); *see also* SUMF ¶¶ 140-41. State only exacerbated the issue by moving its FOIA processing operations to Charleston, South Carolina—a move that caused it to lose the majority of its FOIA processing staff—and also increasing its reliance on contract employees who require additional supervision from State employees. SUMF ¶ 145. Injunctive relief is warranted because State has for years lacked sufficient staff to timely process its FOIA requests and has chosen instead to "disregard [] the obligations mandated by Congress." *See Judicial Watch*, 895 F.3d at 782.

Constrained resources cannot be an excuse for FOIA violations where the agency has not even attempted to secure the additional resources needed. "Though FOIA doubtless poses practical difficulties for federal agencies, federal agencies can educate Congress on the practical problems they have, and attempt to persuade Congress to change the law or provide additional funds to achieve compliance." *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999); *see also Gilmore*, 33 F. Supp. 2d at 1188 ("Agencies should inform Congress of the additional resources needed to fully

comply with the FOIA. In the absence of such information . . . the complaint by agencies that Congress has denied the resources necessary to comply with the statutory deadlines is unsupportable."). State has not even tried, despite its obligation to do so. SUMF ¶¶ 140, 142. As in *Fiduccia*, State's failure to seek adequate funding reveals its policy choice to delay FOIA responses instead. 185 F.3d at 1041; *see also Nightingale*, 507 F. Supp. at 1207 (citing agency's failure to seek additional funds as support for equitable relief).

     *c. State's prioritization of litigated FOIA requests underscores the need for injunctive relief.*

State has long blamed FOIA litigation for its failure to timely process new requests, asserting that court-ordered processing demand nearly all its review resources. SUMF ¶ 121. But FOIA lawsuits are filed against State primarily *because* it has failed to respond to requests within the statutory time periods. SUMF ¶ 115. State then prioritizes its review and production of records required by litigation, SUMF ¶ 117, creating a cycle in which resources are directed to litigation at the expense of routine requests, resulting in additional litigation. SUMF ¶ 118. State's "use [of] litigation as an organizing tool for responding to FOIA requests" further underscores that its practices "render[] FOIA's requirements 'insignificant, if not wholly superfluous.'" *Judicial Watch*, 895 F.3d at 781-83 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

While State likes to point to its litigation burden as an excuse for its swelling FOIA backlog, it fails to adjust its practices adequately to lessen that burden. *See* SUMF ¶ 120.[11] In adopting its 2020 Backlog Reduction Plan, State recognized that improving its FOIA operations would "mitigate against the need to shift FOIA resources to litigation cases," SUMF ¶¶ 120, 144, but over the past five years no meaningful improvements have been achieved in either the time

---

[11] State has faced a consistent number of new FOIA litigation cases each year since FY2016, SUMF ¶ 119, and it consistently dedicates nearly all of its FOIA resources to resolving those cases. SUMF ¶ 121.

FOIA requests remain pending, SUMF ¶¶ 75, 91-92, the backlog, SUMF ¶ 95, or the burden State faces from FOIA litigation, SUMF ¶ 121. State's timing violations continue to grow more egregious, keeping the agency in a backlog-litigation Catch-22. SUMF ¶¶ 87, 89, 93-94, 96-98. State's failure to adequately resource its FOIA operations amounts to a de-facto policy forcing FOIA requesters with pressing needs to sue to receive their records. SUMF ¶¶ 50-51, 102, 112-13. This is the practical experience of many seeking records from State today. SUMF ¶¶ 102, 114. Courts and Congress have made clear, however, that an agency may not prioritize litigated FOIA requests at the expense of others. *See, e.g.*, *Long*, 693 F.2d at 910 (upholding injunctive relief where agency waited for a FOIA requestor to sue before releasing documents).

State likewise has not taken advantage of the "exceptional circumstances" provision in 5 U.S.C. § 552(a)(6)(C)(ii) to stay pending FOIA cases to reduce the burden of litigation. SUMF ¶ 122 (explaining that State apparently has not sought a litigation stay pursuant to 5 U.S.C. § 552(a)(6)(C)(ii) in the past two decades); *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (interpreting "exceptional circumstances"). It is doubtful State could successfully demonstrate "exceptional circumstances" sufficient to justify a stay in any of its currently pending FOIA lawsuits. After all, Congress has made it clear that "'exceptional circumstances' does not include delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii); *see also Donham v. U.S. Dep't of Energy*, 192 F. Supp. 2d 877, 882 (S.D. Ill. 2002) (existence of a backlog cannot itself be an "exceptional circumstance[]" ). This only underscores the need for injunctive relief. By spurring State to make real progress in reducing its backlog, injunctive relief stands to have a prophylactic effect, allowing State to secure *Open America* stays in litigation, allowing more resources to be

dedicated to processing current requests, reducing the inflow of new litigation, and further improving its backlog-reduction efforts. SUMF ¶¶ 115-16, 118, 121.

### 3. Ongoing harm to the public interest from State's FOIA violations shows need for injunctive relief.

Delayed disclosures exert ongoing harm on both the FOIA requesters and the public they seek to inform. Mr. Scoville and others do not file FOIA requests for purposes of commercial gain or self-interest; their goal is to shed light on the activities of one of the most consequential agencies in the federal government. The records they seek are essential to scholarship, journalism, public advocacy, and oversight efforts across a vast array of matters of public concern. SUMF ¶¶ 4-5, 15, 21, 28, 34, 37, 58, 103, 105. Many of these records are available only from State. SUMF ¶¶ 4-5.

As the record established, State's delays have impeded the public's efforts to oversee government activities regarding matters ranging from war crimes committed in Afghanistan and Americans detained abroad to the assertion of soft power over the entertainment industry and processing of visa applications. SUMF ¶¶ 103-05. Without timely access to such information, journalists have scrapped news articles, scholars and advocacy organizations have abandoned avenues of research and investigation, and authors have had to postpone publications. SUMF ¶¶ 103, 108. These are just some of the tangible and apparent harms: without timely production of records an untold number of issues have not come to public attention, pieces have never been written, and national conversations have failed to occur. SUMF ¶¶ 103-04, 108; *see also* SUMF ¶¶ 95, 99, 109. These harms strike at the very heart of FOIA and its purpose to "ensure an informed citizenry," "check against corruption[,] and [] hold the governors accountable to the governed." *Robbins Tire*, 437 U.S. at 242; MTD Order 5.

**B.     Injunctive Relief Requiring State to Come into Compliance with FOIA's Stated Time Constraints Should Be Entered**

There is no genuine dispute that State has pursued a pattern or practice of violating FOIA's timing requirements that is likely to continue absent judicial relief. Professor Scoville is thus entitled to judgment in his favor as a matter of law on his Third Claim. In this situation, courts "ordinarily" exercise their "broad equitable powers" to order "defendants to adhere to FOIA timing requirements." *Nightingale*, 507 F. Supp. 3d at 1211-12 (citing *Hajro*, 832 F. Supp. 2d at 1120; *Gonzalez Rosario*, 365 F. Supp. 3d at 1163). In *Nightingale*, for example, the relief entered was a declaration that the agency had "engaged in a pattern or practice of violating FOIA's statutory deadlines," and an injunction requiring the agency to: (i) adhere to the statutory deadline for FOIA responses going forward; (ii) eliminate the entire backlog of certain FOIA requests within sixty days; (iii) and provide quarterly compliance reports. 507 F. Supp. 3d at 1213-14.

Similar relief is necessary and proper here. Declaratory relief is appropriate because State has plainly ignored deadlines imposed by statute, and resolution of the dispute would benefit from a "decree of a conclusive character." *Calderon v. Ashmus*, 523 U.S. 740, 746 (1998) (citation omitted); *see also, e.g.*, *S. Yuba River Citizens League*, 2008 WL 2523819, at *13 (granting declaratory relief). Injunctive relief is also warranted given the likelihood that State's decade-long violations will persist without such relief. *See ALDF*, 935 F.3d at 873 (embracing *Long*'s holding that injunctions are warranted where there is a probability that FOIA violations will recur in the future); *Ray*, 770 F. Supp. at 1552 ("[T]he court is not willing to sanction the government's non-compliance with the strict time limits imposed by the statute.").

In this case, appropriate injunctive relief should direct State to (1) develop and submit for court approval a plan with semi-annual targets that will (a) eliminate its backlog of delayed FOIA requests by no later than the end of fiscal year 2032, and (b) bring State into compliance with

FOIA's deadlines for its processing of new requests by no later than the end of fiscal year 2029; and (2) file semi-annual reports with the Court detailing its success in meeting the established targets and describing the steps being taken to eliminate the backlog and bring the processing of new requests into compliance with FOIA. If State misses a target by more than 10% in any reporting period, it should be required within 14 days to submit an explanation for the shortcoming and identify the steps it will take to come back into compliance with the plan.

Where Congress demands "performance by an agency subject to court review, the courts may not abandon their responsibility by acquiescing in a charade or a rubber stamping of nonperformance in agency trappings." *Open Am.*, 547 F.2d at 618 (Leventhal, J., concurring) (cleaned up). As then-Judge Jackson emphasized in *Muckrock*, courts are empowered to enjoin agencies from "abusing the FOIA by adopting a policy that unreasonably and improperly delays the disclosure of records." 300 F. Supp. 2d 108. Here, the indisputable record establishes that State has such a practice and injunctive relief is necessary to give effect to FOIA's guarantee of government transparency.

## **CONCLUSION**

For the foregoing reasons, summary judgment should be entered in Professor Scoville's favor on Claim Three, together with such other and further relief as the Court deems proper.

30

Dated: February 18, 2025

Respectfully submitted,

   */s/ Tobin Raju*

Tobin Raju
Morgan Baker*
Rick Da*
Andrea DenHoed*
Noah Kim*
Ben Menke*
Anna Selbrede*
MEDIA FREEDOM &
  INFORMATION ACCESS CLINIC
YALE LAW SCHOOL[†]
127 Wall Street
New Haven, CT 06520
(203) 436-5836
tobin.raju@ylsclinics.org

Hunter Van Asten
GODFREY & KAHN, S.C.
State Bar No. 1131631
833 E Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
(414) 273-3500
hvanasten@gklaw.com

*Counsel for Plaintiff*

---

[*] Law student authorized under Local Rule 84.

[†] This memorandum of law does not purport to offer the institutional views of Yale Law School, if any. Clinical Fellow Stacy Livingston was integral to the research, drafting, and editing of this memorandum of law.