# EXHIBIT 4

RYAN SCOVILLE,

               Plaintiff,

       v.

U.S. DEPARTMENT OF STATE,

               Defendant.

Civil Action No. 2:22-cv-91-NJ

## <u>DECLARATION OF A.JAY WAGNER</u>

I, A.Jay Wagner, declare under penalty of perjury that the following is true and correct:

1.      I am currently employed as an Associate Professor of Journalism and Media Studies at Marquette University, where my scholarly focus is access to government information, specifically the administration of freedom of information laws and requester experiences in submitting public records requests.

2.      I have been asked by the counsel representing the Plaintiff in this case to conduct analyses and provide my expert opinions on the State Department's administration of its Freedom of Information Act responsibilities.

3.      I have prepared a report containing my expert opinions, developed after review of pertinent facts and data in this case, on the State Department's administration of its Freedom of Information Act responsibilities. I affirm the opinions and analysis in my report. If called to testify, I will testify to the contents of the report and my testimony will be consistent with the report's conclusions and analysis.

4.      Attached as Exhibit 1 is a true and correct copy of my report, Appendix I to the report, which contains my CV, Appendix II to the report, which contains the sources I consulted

1

in making my report, and Appendix III to the report, which contains the data underlying graphs, table, and other calculations in the report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2025.
Milwaukee, Wisconsin

*s/ A.Jay Wagner*
A.Jay Wagner

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RYAN SCOVILLE

                Plaintiff,

      v.

U.S. DEPARTMENT OF STATE,

                Defendant.

Case No. 2:22-cv-00091-NJ

## <u>EXPERT REPORT OF A.JAY WAGNER</u>

# TABLE OF CONTENTS

I.   Introduction and Scope of Work ................................................................................. 1

II.  Summary of Opinions ............................................................................................... 1

III. Professional Qualifications ...................................................................................... 2

IV.  Methodology ............................................................................................................ 3

    A.  Annual FOIA Reports ....................................................................................... 3

    B.  Sample, Cabinet-Level Departments .............................................................. 3

    C.  Analysis ............................................................................................................ 4

V.   Evaluation ................................................................................................................ 5

    A.  Unprocessed Requests ...................................................................................... 5

    B.  Backlogged Requests ....................................................................................... 7

    C.  Disposition & Response Times ...................................................................... 10

    D.  Request Tracks ............................................................................................... 12

    E.  An Evaluation of State's 2020 FOIA Backlog Reduction Plan ..................... 13

# I.     Introduction and Scope of Work

My name is A.Jay Wagner, Ph.D., and I am an associate professor of journalism and media studies at Marquette University. My scholarly focus is access to government information, specifically the administration of freedom of information laws and requester experiences in submitting public records requests.

I have been asked by the counsel representing the plaintiff in this case to conduct analyses and provide my expert opinions on the State Department's administration of its Freedom of Information Act ("FOIA") responsibilities. I analyzed a dataset drawn from annual FOIA reports of the fifteen cabinet-level departments subject to the FOIA.[1] The data document the cabinet-level departments' yearly performance in administering the FOIA and allow for an assessment of the State Department's performance of these duties relative to cohort departments. The annual FOIA reports contain a broad range of data on FOIA administration. Among the categories are figures on aggregate requests processed and received, disposition on requests, response times, processing and litigation costs, appeals, and backlogged requests and appeals. I also reviewed documents produced during discovery for this case.

The list of materials considered in forming the opinions expressed in this report are listed in Appendix I. I reserve the right to supplement this report if additional relevant information comes to my attention.

# II.    Summary of Opinions

Analysis demonstrates the State Department to be an outlier among comparable departments in several areas of FOIA administration. In analyzing data drawn from annual FOIA reports, and considering several contextual factors also drawn from the annual reports, it becomes clear that the State Department has a history of prolonged delay in FOIA processing and has long been an outlier in unprocessed requests and backlogged requests (as well as appeals). Each year since 2008, the State Department has processed fewer requests than it has received, and done so at pace that has resulted in a significantly larger backlog than cohort departments. Further, the State Department backlogs an extremely high percentage of requests received. In each of the past five years, the State Department's backlog of requests has far exceeded the number of requests they received, and in 2022, the total backlog was almost twice the number of requests they received. The State Department is anomalous in several other areas, including percentage of full denials (annually denying three-times the percentage of requests as cohort departments) and classifying requests as complex.

The report concludes with an analysis of a FOIA Backlog Reduction Plan created by the State Department in 2020. The analysis shows the backlog reduction plan to have been poorly executed and, in particular, that it was set upon a foundation of estimates that do not comport with historical data. As a result, the backlog reduction plan, rather than representing a map to rectify the State Department's processing and backlog problems, documents how inaccurate

---

[1] Besides State, those cabinet-level departments are: The Departments of Agriculture; Commerce; Defense; Education; Energy; Health and Human Services; Homeland Security; Housing and Urban Development; Interior; Justice; Labor; Transportation; Treasury; and Veterans Affairs.

estimates produced larger backlogs. In fact, the State Department's number of backlogged requests have nearly doubled since the plan was implemented. This report presents an alternative backlog reduction plan for the years 2020-2027 based on the same historical data set the State Department relied upon in creating its 2020 Backlog Plan. The report also presents a forward-looking backlog reduction plan.

It bears noting that concerns about the State Department's ability to process FOIA requests in compliance with statutory expectations have long persisted and even been a subject of congressional interest. Senator Patrick Leahy, in a 1992 hearing on FOIA amendments, singled out the State Department for maintaining "a terrible backlog of requests. Some requesters have waited an eternity for information."[2]

My analysis affirms that Senator Leahy's observation from thirty-two years ago is still true today. There is unequivocal evidence documenting the State Department's long history of failing to comply with statutory expectations, and analysis demonstrates they are significantly out-of-line with peer departments in several delay-related datapoints.

## III.    Professional Qualifications

I hold a doctorate in mass communication from The Media School at Indiana University, a master's degree of journalism from DePaul University, and a bachelor's degree in marketing from the University of Dayton. I worked professionally as a journalist for several years before pursuing my doctorate. My dissertation collected and analyzed forty years' worth of annual FOIA reports.

I have published more than a dozen academic articles on access to government information in peer-reviewed journals and law reviews (e.g., *Government Information Quarterly, Administration & Society, Journalism, Journal of Civic Information, University of Florida Journal of Law & Public Policy, Quinnipiac Law Review*). My scholarship has won several awards in my field of research. I regularly present my access to government information research to national and international scholarly audiences.

Through my research and career as a professional journalist, I have personally submitted thousands of FOI requests, across federal, state, and local governments. I teach a range of journalism skills courses, along with government information classes, to undergraduate and graduate students. I have lectured hundreds of students on FOI laws and overseen thousands of student requests. I have discussed my research with law school seminars. I have participated in community training and panels on FOI and government transparency. I frequently consult with journalists on requesting strategies, responses to agencies, and evaluating government records.

I served a two-year term on the NARA-sponsored Federal FOIA Advisory Committee, as the representative of the scholarly community, and I recently participated in a Government

---

[2] *Hearing on S. 1940 Before the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary,* 102d Cong. 2 (1992) (statement of Sen. Patrick Leahy).

Accountability Office focus group for a report on reducing agency FOIA backlogs, in which I was one of nine FOIA experts asked to assess FOIA processing issues and suggest solutions.[3]

A copy of my curriculum vita is attached as Appendix I.

I am not being compensated for my opinions and testimony.

## IV. Methodology

### A. Annual FOIA Reports

Since the 1974 amendments[4] to the FOIA, all departments and agencies subject to the statute have been required to submit an annual report documenting the prior year's administration of the FOIA. All departments and agencies must submit the report, by February 1 of each year, to the Attorney General of the United States and to the Director of the Office of Government Information Services (OGIS).[5] The Attorney General is then responsible for transmitting these annual reports to members of the House Committee on Oversight and Government Reform, the Senate Judiciary Committee, and the Senate Committee on Homeland Security and Governmental Affairs.[6] The report is to include a broad collection of data on FOIA use and administration, including requests received and processed, request disposition (i.e., grant, partial grant, or denial), request classification (i.e., simple, complex, or expedited), fees collected, and FOIA costs.[7] The reports were created to provide simple and easy-to-decipher data on FOIA activity. New categories have been added over time as concerns over FOIA implementation have materialized—most notable among them, a number of temporal markers have been added to the annual report in an effort to better understand intransigent concerns over delay.

### B. Sample, Cabinet-Level Departments

The sample is comprised of the fifteen cabinet-level departments, chosen because they are the primary administrators of the FOIA. They receive and process the bulk of FOIA requests annually. In 2023, the cabinet-level departments received 88.58% of all FOIA requests and processed 87.78% of the requests.[8] The analysis focuses on the federal departments to the exclusion of smaller agencies, which have different request loads and FOIA processes. The cabinet-level departments form the State Department's general FOIA cohort. Though there is variation in the volume and types of records in custody among the fifteen departments, these

---

[3] U.S. Gov't Accountability Off., GAO-24-106535, *Freedom of Information Act: Additional Guidance and Reliable Data Can Help Address Agency Backlogs* (2024), https://www.gao.gov/products/gao-24-106535.
[4] Pub. L. 93-502, § 3, 88 Stat. 1561, 1564 (1974).

[5] 5 U.S.C. § 552(e)(1).

[6] 5 U.S.C. § 552(e)(4).

[7] 5 U.S.C. § 552(e)(1)(A)-(Q).

[8] *See* Appendix III Part A.

large federal departments have significantly similar characteristics compared to the remaining 106 agencies subject to the FOIA.[9]

A subset of the fifteen cabinet-level departments was used in some analyses. In these instances, the subset was comprised of two "volume" peers, here the Department of the Interior and the Department of the Treasury, as they receive a similar number of requests annually. I have chosen the Department of Defense and the Department of Homeland Security as "type" peers, as they process requests more likely to be sensitive to intelligence, military, and diplomacy concerns and exemptions. Type comparisons are valuable, because the intelligence, military, and diplomacy-related documents may require heightened scrutiny in review or more onerous processing, which are factors when considering timing and delay. The Department of Defense also has offices (and records repositories) distributed around the globe in a way that is similar to the State Department's organizational composition.

### C. Analysis

This report predominantly relies upon the descriptive statistics of the fifteen cabinet-level departments from fiscal years 2008-2023, as they comprise the preponderance of yearly FOIA activity. Certain analyses also rely on statistics of cabinet-level departments from fiscal years 1998-2023. The quantitative measures, and the figures drawn from them, are simple and direct, the annual FOIA reports and their many individual categories of data were created precisely for these types of analyses and oversight. Analysis relies on data categories supplied directly by the reports as well as documents produced in discovery. In a few instances, composite, aggregate, or other simple mathematical functions were used to derive new statistics.

**Definitions of common terms**

| Term | Definition |
| --- | --- |
| Processed requests | Requests for which "an agency has taken final action in all respects"[10] |
| Unprocessed requests | The difference between the number of requests received during the year and the number of requests processed during the year |

---

[9] The size and character of an agency's FOIA office is largely contingent on the volume of requests received and processed each year, and there is wide variance among the 121 U.S. agencies subject to the law. For instance, the U.S. African Development Foundation received zero requests in 2023. *See* Appendix II, Part A. Six other agencies received a dozen or fewer requests, and a total of sixty-two received fewer than one hundred. Whereas the Department of Homeland Security received 674,856; while the Department of Justice received 110,934. There are characteristics of each agency's work (in particular, the distribution of offices) that can influence the processing of requests, but no factor is more important than the volume received each year, because each new request is additional work, which requires incrementally more time, personnel, and resources to complete. The cohort of fifteen departments comprise fifteen of the twenty-four highest receivers of requests annually.

[10] *Handbook for Agency Annual Freedom of Information Act Reports: Guidance for FOIA Professionals on Proper Tracking and Detailed Instructions for Preparing the Annual Report*, DEP'T OF JUSTICE 24 (Sept. 27, 2023), https://www.justice.gov/d9/2023-09/DOJ%20Handbook%20for%20Agency%20Annual%20FOIA%20Reports%20%282023%20final%29.pdf (hereinafter *DOJ FOIA Guidance*).

| Pending requests | The total number of requests for which "an agency has not taken final action in all respects"[11] |
| Backlog | The total number of requests that are "pending beyond the statutory time period for a response at the end of the fiscal year"[12] |

## V.  Evaluation

What follows is an analysis of government data presented using charts and graphs. The analysis documents the State Department's track record of processing FOIA requests at a rate that is not only noncompliant with statutory requirements but is also an outlier among peer departments. Several metrics in the annual FOIA reports exhibit the State Department to be considerably slower than their fellow cabinet-level departments, while other datapoints demonstrate other anomalous factors in the State Department's FOIA administration.

### A.  Unprocessed Requests

The annual FOIA reports provide statistics on the number of requests received and processed each year. A processed request, as defined by the Department of Justice in their annual guide on preparing FOIA annual reports, means "an agency has taken final action in all respects" on a request during the relevant fiscal year (also commonly referred to as a closed request).[13] Over the course of the past five years, the State Department has received approximately one-fifth the total number of requests of the average of other cabinet-level departments. *See* Appendix III, Part B. This expert report also refers to the number of unprocessed requests each year, which is the difference between the number of requests received during the year and the number of requests processed during the year. The yearly unprocessed requests add to the cumulative total number of pending[14] requests at the end of the relevant year. It is a metric reflecting whether an agency is able to keep apace of the requests they are receiving.

The State Department has consistently had far higher rates of unprocessed requests than other cabinet-level departments. While these other departments' number of unprocessed requests has grown over time, their unprocessed requests, as a percentage of the total requests received each year, is still substantially lower than that of State Department. For example, in the past five years that percentage has ranged between 11% and 34%.[15] The high-water-mark for the average non-State department in that range of time is 7% unprocessed.[16] My analysis concludes that the State Department has historically and consistently been an outlier in their inability to keep apace of the volume of requests they receive each year. Figure 1 compares the number of requests received by

---

[11] *Id.* at 23.

[12] *Id.* at 22.

[13] *Id.* at 24 (defining a processed request as "a request . . . for which an agency has taken final action in all respects").

[14] A pending request is a request for which "an agency has not taken final action in all respects," and includes backlogged requests. *Id.* at 23.

[15] *See* Appendix III Part B.

[16] *Id.*

the State Department to the number of requests it processed each year from 2019 to 2023. Figure 2 compares the average number of requests received by the 14 other cabinet-level departments to the number of requests those departments processed each year from 2019 to 2023. The space between the red area graphs and green area graphs represents the yearly increase in pending requests.



Figure 1: Area graph comparing number of requests received by the Department of State and the number of requests processed each year. *See* Appendix III, Part B.



Figure 2: Area graph comparing the average number of requests received by the cabinet-level departments (excluding the Department of State) and the average number of requests processed each year. *See* Appendix III, Part B.

## B. Backlogged Requests

Backlog is another method of calculating requests that are not being promptly processed.[17] The Department of Justice, in their annual guide to preparing FOIA annual reports, defines backlogged requests as "pending beyond the statutory time period for a response at the end of the fiscal year."[18] The statutory time period is twenty working days from receipt of a perfected request[19] or appeal[20] but can be extended ten additional working days when "unusual circumstances" appear. Over the past two FOIA amendments, Congress has expanded the categories of data required on backlogged requests and appeals—adding more categories on the duration of processing (e.g., 0-20 days, 20-40 days, etc.) and breaking out processing duration according to different processing tracks (i.e., simple, complex, and expedited) as they continue to refine their focus on factors that best document delay issues.

Figure 3 shows backlogged requests both by volume and as a percentage of requests and appeals received. Again, the data document the State Department's inability to process requests in a timely manner. Backlog is a cumulative statistic (rather than year-to-year) and documents requests that are not compliant with FOIA's timing requirements. The State Department is a particularly flagrant and repeated outlier with regard to backlog.

The volume and percentages fluctuate over time, but the State Department is consistently backlogging considerably more requests than their peer departments. The average backlog for the other cabinet-level departments rises and falls as well, but never exceeds 25% of requests received, whereas the State Department's backlog of requests routinely exceeds the number of requests they receive annually, peaking at 169% of the requests received in 2017 (meaning they effectively had a backlog that is one and two-thirds of the year's worth of requests). *See* Appendix III, Part C. Although it decreased to 123% in 2018, it has hovered around 140% the last three years. *See id.* Even among peer departments—those that face similar volumes of requests and similar types of requests—the State Department's backlog as a percentage of

---

[17] Backlogged requests and unprocessed requests track a similar phenomenon. Unprocessed requests offer a snapshot of requests that are not processed each year, whereas backlogged requests represent all requests that remain unprocessed beyond the statutory time period for a response. In other words, backlogged requests are cumulative and include unprocessed requests from years past, which carryover year-to-year.

[18] *DOJ FOIA Guidance,* at 64.

[19] *Id.* at 23 (a perfected request is "a request for records which reasonably describes such records and is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed"). An unperfected request is one that cannot yet be processed due to uncertainty with the request. For instance, if the FOIA Office has requested further clarification, they will not act upon the request until the clarification is satisfactory. Once a request is perfected the clock begins tolling on the request, particularly notable for meeting statutory deadlines.

[20] *Id.* at 12 ("The FOIA provides requesters with the right to administratively appeal any adverse determination made by an agency on their initial request.").

received requests far outpaces peer agencies. *See* Figure 4. The administrative appeals[21] figure demonstrates very similar patterns, but with an entirely separate set of data, suggesting requests are not a standalone issue and instead there are fundamental processing issues in State's FOIA office. *See* Figure 3.





Figure 3: The graphs have two axes, one documenting the total number of backlogged requests/appeals and another documenting backlogged requests/appeals over requests/appeals received. Appendix III, Part C.

---

[21] In the event of an adverse determination, the FOIA statute provides requesters with the right to appeal the agency's determination to the head of the agency. The appeal is processed in a manner similar to original requests. *See* 5 U.S.C. § 552 (a)(6)(A)(III)(aa).





Figure 4: The total backlog was divided by the number of received requests and plotted by year. The top graph measures the State Department and volume peers, and the bottom graph measures the type peers. *See* Appendix III, Part D.

## C. Disposition & Response Times

There are other contextual factors that highlight the State Department's slow processing of requests. The general response times for State Department requests are high but relatively similar to its cohort's response times. However, when considering a history of unusually high denials (*see* Figure 5), along with annual report data on response times for requests where information is granted,[22] the data is a bit more revealing.

First, the State Department issues significantly more full denials[23] than any of their peer departments, and the data dating back to 2008 document that they have issued full denials at rates regularly three-to-five times higher than peer departments and, in 2016, ten-times higher. *See* Appendix III, Part E. This bears mentioning in a study of FOIA delay, as full denials are among the quickest ways to process or close a request. By issuing a swift, full denial, a department can avoid or shortcut the time-consuming search, review, and duplication tasks necessary for granting requests and releasing records. Full denials, generally, reduce response times.

As a method for removing requests that receive a full denial and better depicting public expectations for successful FOIA requests, Congress has required departments and agencies to report response times on requests where information is granted (thus removing full denials from the response time calculation). In isolation, a higher percentage of full denials does not indicate anything in particular. It does suggest exploring response times for requests where information is granted. And in the case of the State Department, the large number of full denials does drive down the general response times in the reports. Figure 5 documents that when reviewing response times for requests where information is granted, the State Department has consistently taken longer (typically, twice as long) to complete simple requests. So, not only does the State Department deny a great deal of requests, they take significantly longer than other cabinet-level departments when they do grant requests. And when considered in concert with State Department's issues with unprocessed and backlogged requests, it is another piece of evidence underscoring the State Department's anomalously slow FOIA processing.

---

[22] *DOJ FOIA Guidelines*, at 51 (requiring "response times for those requests identified as either 'Full Grants' or 'Partial Grants/Partial Denials'").

[23] *Id*. at 9. (explaining a full denial is when an "agency withholds all of the requested information pursuant to an exemption listed at 5 U.S.C. § 552 (b)").



Figure 5: Comparison of Department of State's request dispositions by type and dispositions by the other cabinet-level departments.[24] *See* Appendix III, Part E.

---

[24] The disposition on processed requests does not include closure for "other" (typically administrative) justifications, but it does show that, again, the State Department is an outlier among fellow cabinet-level departments.



Figure 6: Response times for requests where information was granted, comparing the Department of State to its volume & type peers. *See* Appendix III, Part F. This is a useful statistic as it demonstrates how response times are affected by quick denials and other rapid request closures.

### D. Request Tracks

Departments process requests along three different tracks, each connoting a different amount of work required by the department and/or a different expected speed to the processing. Expedited processing is a "fast lane,"[25] which requesters have to explicitly seek (and which the department is expected to make a determination on in ten days). Simple requests[26] are basic requests not requiring anything extraordinary, and complex[27] is reserved for requests that require laborious search or consultation with other entities. The department makes the determination on whether a request is tracked as simple or complex.

---

[25] *DOJ FOIA Guidelines*, at 23 ("[A]n agency will process a FOIA request on an expedited basis when a requester satisfies the requirements for expedited processing as set forth in the statute and in agency regulations.").

[26] *Id.* ("[A] FOIA request that an agency using multi-track processing places in its fastest (non-expedited) track based on the low volume and/or simplicity of the records requested.").

[27] *Id.* ("[A] FOIA request that an agency using multi-track processing places in a slower track based on the high volume and/or complexity of the records requested.").

As Figure 7 demonstrates, the State Department is an outlier when it comes to the percentage of requests that are tracked as complex. There is a sensible rationale for a department with many offices dispersed around the globe to deem more of their requests to be complex (though one would think digital records and the internet would diminish such a rationale). Shifting more requests to complex tracking does grant an agency more leeway in processing. Ostensibly, requests are moved to the complex track because they will take more time to process. Notably, a review of complex response times for requests where information is granted (see Figure 3) documents the State Department processes its complex requests faster than their simple requests. They also happen to be among the fastest processors among peers of complex requests. The State Department's multi-track processing is curious. The State Department is among the very slowest processers of simple-tracked requests and the fastest of complex requests.



Figure 7: Comparison of the Department of State's request tracks and other cabinet-level departments. *See* Appendix III, Part G. Departments assign each request to one of three processing tracks. The above figure documents the ratio of tracks for the State Department and the other fourteen cabinet-level departments.

### E. An Evaluation of State's 2020 FOIA Backlog Reduction Plan

In February 2020, the Department of State finalized a FOIA Backlog Reduction Plan (the "2020 Backlog Plan").[28] The plan's stated objective was "identif[ying] challenges to the Department's FOIA program, actions completed over the past few years to improve the FOIA program, and target milestones to reduce the FOIA backlog."[29] Evaluation of the 2020 Backlog Plan reveals State's perplexing inability to estimate future workload and numerous missed targets.

The 2020 Backlog Plan begins by cataloging the challenges of State's FOIA Office with particular concern for resources needed to handle growing litigation requirements. The 2020

---

[28] SCO_00000674.

[29] *Id.* at 1.

Backlog Plan focuses on two primary principles: 1) maintaining distinct resources for general processing and FOIA litigation; and 2) "establishing monthly closure rate targets that stretch the program annually until it reaches a monthly case closure rate of 1,000 cases per month."[30] The stated goal of the plan was to "eliminat[e] [State's] backlog so that it can keep up with new, incoming FOIA requests."[31]

The target closure rate was based on an estimate of future FOIA requests received and projecting the number of backlogged requests (*see* Table 1). The 2020 Backlog Plan sought to process significantly more requests annually than the number of requests received each year, driving down the existing backlog. The requests received estimate is a crucial datapoint on which the 2020 Backlog Plan depends, and hiring objectives and backlog reduction efforts are contingent on these estimates being accurate. E. Stein Dep. Tr. 354:03-12 ("The [2020 Backlog Plan] was finished in February 2020 and pulled from three previous fiscal years, the data . . . . And if you look at the average of those fiscal years, I believe they would be approximately 8,100 cases. And we set this plan in motion without the intention of having moving targets.").

In projecting the number of requests received for the years 2020 to 2027, the State Department used the static number 8,100, a number of received requests well below historic trends. In fact, State received 8,448 requests in 2018 and received 8,589 requests in 2019. While annual requests received fluctuate over time (request volumes respond to socio-political events like former Secretary of State Hillary Clinton's email controversy), they historically trend upwards.[32] *See* Figure 8.



Figure 8 – Total FOIA Requests Received by the Department of State from 1998-2023. *See* Appendix III, Part H.

[30] *Id.* at 2.

[31] *Id.* at 3.

[32] *See* A.Jay Wagner, A Most Essential Principle: Use and Implementation of the Freedom of Information Act, 1975-2014, at 6 (2016) (Ph.D. dissertation, Indiana University).

Table 1 documents that the 2020 Backlog Plan was destined to be a failure. In year one, the actual number of requests received in 2020 already exceeded the estimated number of requests received by 11%. By the second year of the report, the actual number of requests received were outpacing the estimated number received by 32%, and by year three the estimated requests received were 71% higher than estimated. And in the most recent year of annual report data, 2023, the number of requests received (15,713) was nearly double (94% greater) the 8,100 estimated. As a result, the State Department's number of backlogged requests has grown, rather than shrunk. As of fiscal year 2023, the number of backlogged requests is nearly double what it was when the State Department announced the backlog plan.[33]

| | 2020 Backlog Plan Expected Received | Actual Received | 2020 Backlog Plan Expected Processed | Actual Processed | 2020 Backlog Plan Expected Backlog | Actual Backlog |
|---|---|---|---|---|---|---|
| 2008 | | 5,909 | | 5,577 | | 4,327 |
| 2009 | | 10,717 | | 6,024 | | 8,784 |
| 2010 | | 30,206 | | 18,386 | | 20,519 |
| 2011 | | 14,298 | | 26,836 | | 8,078 |
| 2012 | | 18,521 | | 15,343 | | 10,464 |
| 2013 | | 18,753 | | 21,097 | | 8,669 |
| 2014 | | 19,696 | | 18,094 | | 10,045 |
| 2015 | | 24,837 | | 14,002 | | 20,626 |
| 2016 | | 27,961 | | 15,482 | | 22,664 |
| 2017 | | 7,688 | | 21,736 | | 13,021 |
| 2018 | | 8,448 | | 10,928 | | 10,400 |
| 2019 | | 8,589 | | 6,545 | 13,200 | 11,106 |
| 2020 | 8,100 | 9,019 | 3,900 | 7,041 | 17,400 | 13,798 |
| 2021 | 8,100 | 10,683 | 7,200 | 9,505 | 18,300 | 14,941 |
| 2022 | 8,100 | 13,864 | 9,600 | 9,167 | 16,800 | 18,765 |
| 2023 | 8,100 | 15,713 | 10,800 | 12,576 | 14,100 | 21,619 |
| 2024 | 8,100 | | 12,000 | | 10,200 | |
| 2025 | 8,100 | | 12,000 | | 6,300 | |
| 2026 | 8,100 | | 12,000 | | 2,400 | |
| 2027 | 8,100 | | 12,000 | | (1,500) | |

Table 1: Backlog Plan figures are target numbers drawn from the State Department's 2020 FOIA Backlog Reduction Plan. SCO_00000674. Actual figures are drawn from 2008-2023 FOIA Annual Reports.

In reviewing materials produced in discovery, internal emails demonstrate that officials in the State Department knew the estimates used in the backlog plan were unlikely to be accurate. The internal emails also illuminate the State Department officials' approach to developing the backlog plan. Months after implementing the backlog plan, internal emails document that the

---

[33] *Freedom of Information Act Annual Report: Fiscal Year 2023*, U.S. Dep't of State, https://foia.state.gov/Learn/Reports/Annual/2023.pdf.

State Department's Assistant Secretary for Global Information Services (the office responsible for the backlog plan) noted that they had significantly underestimated the number of new requests received for the year.[34] The email confirmed that the State Department had been receiving "about 8,400 or so cases a year for the past few years." Even with this knowledge, the backlog plan predicted 8,100 requests for the next eight years, and no adjustments were made. Again, in May 2022, the State Department circulated emails with tables showing that they significantly underestimated the number of new requests received over the first two years of the backlog plan.[35]

Below is a revised backlog plan that relies on the same data the State Department considered in devising the 2020 Backlog Plan—i.e., the number of requests received for fiscal years 2017, 2018, 2019.[36] processing goals. The new projections for requests received are based on growth trends in new requests from the three years preceding the 2020 backlog plan. From 2017 to 2019, the number of new requests for State grew at about 3.8% a year. The revised backlog plan uses a growth rate of 4%. Even adopting the State Department's limited consideration of three years of historical data only, that data shows the number of requests received does not remain static and grows at rate which will double the requests received in under 18 years. In the revised backlog plan, the Backlog Plan Processed projections are rounded numbers that are tied to these growth estimates and reflect the processing capacity necessary to eliminate the backlog by 2027. Successful backlog reduction plans should be based on sound projections for incoming requests, set a goal by when the backlog will be eliminated, and then work backwards from that goal (i.e. zero backlogged requests). The plan should take into account personnel and resources, but the processing goals must be calibrated to achieve the goal.

**Revised 2020 Backlog Plan**

|  | Backlog Plan Received | Actual Received | Backlog Plan Processed | Actual Processed | Backlog Plan Backlogged | Actual Backlogged |
|---|---|---|---|---|---|---|
| 2017 |  | 7,688 |  | 21,736 |  | 13,021 |
| 2018 |  | 8,448 |  | 10,928 |  | 10,400 |
| 2019 |  | 8,589 |  | 6,545 | 13,200 | 11,106 |
| 2020 | 8,933 |  | 3,900 |  | 18,233 |  |
| 2021 | 9,290 |  | 7,200 |  | 20,323 |  |
| 2022 | 9,661 |  | 9,600 |  | 20,384 |  |
| 2023 | 10,048 |  | 10,800 |  | 19,632 |  |
| 2024 | 10,450 |  | 12,000 |  | 18,082 |  |
| 2025 | 10,868 |  | 15,000 |  | 13,950 |  |
| 2026 | 11,303 |  | 17,500 |  | 7,753 |  |
| 2027 | 11,755 |  | 20,000 |  | (492) |  |

Table 2: Backlog Plan figures are target numbers projected based on the assumption to number of new requests received each year will increase by 4%. Actual figures are drawn from 2017-2019 FOIA Annual Reports.

---

[34] SCO_00032153.

[35] SCO_00031102.

[36] *See* E. Stein Dep. Tr. at 354:03-12.

The original State Department backlog plan pinned its processing efforts on an increased number of FOIA personnel, as well as technological improvements. The backlog plan noted a September 2019 contract for the FOIA office "that will allow for the hiring of dozens of new, full-time FOIA employees . . . [and] in FY 2019, the Department started to deploy its new FOIA technology that is cloud-based and interoperable with other Department records systems."[37] Elsewhere in the backlog plan, it was suggested that the new staffing contract may allow for the hiring of up to 60 full-time FOIA personnel. Review of annual report data documents that this increase in staffing never materialized (*see* Table 3).

| | Personnel Full-time | "Equivalent Full-Time" | Total |
|---|---|---|---|
| 2008 | 86 | 47 | 133 |
| 2009 | 78 | 61 | 139 |
| 2010 | 86 | 45 | 131 |
| 2011 | 87 | 63 | 151 |
| 2012 | 84 | 71 | 155 |
| 2013 | 83 | 74 | 157 |
| 2014 | 65 | 63 | 127 |
| 2015 | 82 | 88 | 170 |
| 2016 | 76 | 54 | 130 |
| 2017 | 207 | 60 | 267 |
| 2018 | 213 | 62 | 276 |
| 2019 | 141 | 67 | 208 |
| 2020 | 110 | 96 | 206 |
| 2021 | 112 | 71 | 183 |
| 2022 | 67 | 59 | 126 |
| 2023 | 181 | 87 | 268 |

Table 3: FOIA personnel figures (rounded to the nearest whole number) drawn from State Department FOIA annual reports. "Equivalent full-time" personnel are the adjusted total count of part-time personnel.

Despite the State Department's variance in FOIA personnel, many of the processing targets have been met (*see* Table 1). But, again, the backlog plan was flawed from the moment the State Department tethered its backlog reduction efforts to the incorrect assumption that it would receive 8,100 requests each year for the better part of a decade. A better, more plausible plan sets the target in line with historical trends, which would have resulted in more accurate and attainable processing, personnel, and backlog reduction objectives. While the actual number of requests received has well exceeded the 2020 Backlog Plan's projections, the actual volume of received requests conforms with reasonable expectations drawn from historical data (both in the State Department, *see* Figure 8, and FOIA requests across the federal government, *see* Figure 9) and in no way represents an irregular or uncharacteristic volume. And, as a result, the State

---

[37] SCO_00000674, at 5.

Department's long-standing issues with slow processing and backlogged requests have only grown.



Figure 9: Total FOIA Requests received by the 14 cabinet-level departments, excluding the Department of State. *See* Appendix III, Part I.

**Future Backlog Plan**

I have developed a Future Backlog Plan as a forward-looking exercise in eliminating the State Department's FOIA backlog. The Future Backlog Plan provides projections for 2024 to 2030, and the plan is based on growth trends from 2017 to 2023, as State Department's have stabilized in this seven-year period and show clear growth trends. During the period, the State Department experienced an average of 10.8% annual growth in requests received, *see* Appendix III, Part H, and other cabinet-level federal departments had 7.1% growth, *see* Appendix III, Part I. The Future Backlog Plan uses an annual growth rate of 10% in the number of requests received annually. The requests-processed projections, after an initial surge, follows suit at a 10% annual increase and are tied to these growth estimates and reflect the processing capacity necessary to eliminate the backlog by 2030.

| | Backlog Plan Received | Actual Received | Backlog Plan Processed | Actual Processed | Backlog Plan Backlogged | Actual Backlogged |
|---|---|---|---|---|---|---|
| 2019 | | 8,589 | | 6,545 | | 11,106 |
| 2020 | | 9,019 | | 7,041 | | 13,798 |
| 2021 | | 10,683 | | 9,505 | | 14,941 |
| 2022 | | 13,864 | | 9,167 | | 18,765 |
| 2023 | | 15,713 | | 12,576 | | 21,619 |
| 2024 | 17,284 | | 20,000 | | 18,903 | |
| 2025 | 19,012 | | 22,000 | | 15,915 | |
| 2026 | 20,913 | | 24,200 | | 12,628 | |
| 2027 | 23,005 | | 26,620 | | 9,013 | |
| 2028 | 25,305 | | 29,282 | | 5,036 | |
| 2029 | 27,835 | | 32,210 | | 661 | |
| 2030 | 30,619 | | 35,431 | | (4,151) | |

Table 4: Proposed Future Backlog Plan based on conservative projection of annual growth rate in requests received calculated by considering growth trends from 2018-2023.

Dated: October 4, 2024                          Respectfully submitted,

*A. Jay Wagner*
_____
A.Jay Wagner, Ph.D.

# A.Jay Wagner

| | | |
|---|---|---|
| <small>CONTACT INFORMATION</small> | Marquette University<br>P.O. Box 1881<br>Johnston Hall, Room 339<br>Milwaukee, WI 53201-1881 | ajay.wagner@marquette.edu<br>ajaywagner.com<br>937-726-7493 (cell)<br>Last updated: August 2024 |

<small>ACADEMIC EMPLOYMENT</small>

Marquette University
    Associate Professor of Journalism and Media Studies, 2023-present
    Interim Nieman Chair of Journalism, 2023-2024
    Assistant Professor of Journalism and Media Studies, 2018-2023

Bradley University
    Assistant Professor of Journalism, 2016-2018

Butler University
    Teaching Fellow, 2015-2016

<small>EDUCATION</small>

Ph.D., Indiana University, Mass Communication, 2016

M.A., DePaul University, Journalism, 2010

B.S., University of Dayton, Marketing, 2006

<small>ARTICLES (PEER-REVIEWED & LAW ARTICLES)</small>

Wagner, A. & Cuillier, D. (2024). Tale of two requesters: How public records law experiences differ by requester type. *Journalism*.

Wagner, A. (2023). Owning the police: Crime data, copyright, and public information. *Journal of Civic Information, 5*(3), 1-16.

Wagner, A. & Cuillier, D. (2023). To fee or not to fee: Requester attitudes toward freedom of information charges. *Government Information Quarterly, 40*(4), 101879.

Wagner, A. (2023). Whose public virtue? Exploring freedom of information efficacy and support. *Administration & Society*, *55(*1), 93-121.

Wagner, A. (2022). Popular information: An analysis of FOI use and behavior. *Government Information Quarterly, 39*(2), 1-9.

Wagner, A. (2021). Inherent frictions and deliberate frustrations: Examining the legal variables of state FOI law administration. *Journal of Civic Information, 3*(2), 29-49.

Wagner, A. (2021). Piercing the veil: Examining demographic and political variables in state FOI law administration. *Government Information Quarterly, 38*(1), 1-10.

Wagner, A. (2021). Pandering, priority or political weapon: Presidencies, political parties and the Freedom of Information Act. *Communication Law and Policy, 26*(1), 53-102.

Wagner, A. (2020). A structural imperative: Freedom of information, the First Amendment and the accountability function of expression. *Quinnipiac Law Review, 38*(2), 205-258.

Wagner, A. (2019). 'Longstanding, systemic weaknesses': Hillary Clinton's emails, FOIA's defects and affirmative disclosure. *University of Florida Journal of Law & Public Policy, 29*(3), 359-412.

Wagner, A. (2018). A secret police: The lasting impact of the 1986 FOIA amendments. *Communication Law and Policy, 23*(4), 387-426.

Wagner, A. (2017). Essential or extravagant: Considering FOIA budgets, costs and fees. *Government Information Quarterly, 34*(3), 388-395.

Wagner, A. (2016). Controlling discourse, foreclosing recourse: The creep of the Glomar response. *Communication Law and Policy, 21*(4), 539-567.

---

OTHER ACADEMIC PUBLICATIONS

Wagner, A. (2023). Review of Caitlin Ring Carlson, *Hate Speech* (Cambridge, MA: MIT Press). *Journalism & Mass Communication Quarterly*, *100*(2), 453-455.

Wagner, A. (2021). Review of Cass R. Sunstein, *Too Much Information: Understanding What You Don't Want to Know* (Cambridge, MA: MIT Press). *Journalism & Mass Communication Quarterly, 98*(2), 593-595.

Wagner, A. (2019). Probing the people's right to know: A 10-state audit of freedom of information laws. Published as an independent review of state FOI compliance.

Wagner, A. (2019) A socialist newspaper, the First Amendment, and the Espionage Act. *Journalism History First Amendment Essay Series*.

Wagner, A. (2019). Courts coverage. In T. P. Vos & F. Hanusch (Eds.), *International Encyclopedia of Journalism Studies*. Wiley.

Wagner, A. & Honeyman, S. (2017). Illinois FOIA audit. Published as an independent review of state FOIA compliance.

Wagner, A. (2016). Evaluating FOIA's annual reports. *Access Reports*.

Wagner, A. & Fargo, A. (2012). Vanishing before our eyes: Criminal libel in the United States. Report published as part of the International Press Institute's 2012 criminal libel initiative.

---

GRANTS & AWARDS

Diederich College of Communication Teacher of the Year, 2024

Second Place, National Freedom of Information Coalition Research Competition, 2023

Summer Research Institute, Marquette University, 2023

Diederich College of Communication Scholar of the Year, 2022

Faculty Development Award, Office of Research and Innovation, Marquette University, 2022

Honors Program Course Development Grant, Marquette University, 2021

Third Place, National Freedom of Information Coalition Research Competition, 2021

Federal FOIA Advisory Committee, 2020-2022

First Place, National Freedom of Information Coalition Research Competition, 2020

Diederich Faculty Research Grant, Marquette University, 2020, 2021 & 2024

NFOIC & Knight Foundation Freedom of Information Legal Fund, 2019

SPJ Legal Defense Fund Grant, 2019

Regular Research Grant, Marquette University, 2019

Journal Foundation Damm Fund Grant, 2019

Robert M. O'Neil Top Paper Award, National Comm. Assoc., Freedom of Expression Division, 2017

Misiewicz Research Grant, Bradley University, 2017

Top Debut Faculty Paper, AEJMC, Law & Policy Division, 2017

Top Paper, National Communications Association, Comm. & Law Division, 2016

Future Faculty Teaching Fellowship, Indiana University, 2015-2016

Dissertation Grant-in-Aid Funding, Indiana University, 2015

School of Journalism Travel Grant, Indiana University 2012

Graduate Fellowship, Indiana University, 2011-2014

Excellence in Journalism Scholarship, DePaul University, 2010

---

INVITED TALKS & PANELS

Fresh Thinking on Government Transparency. Invited panelist for event arranged by AEJMC Law and Policy Division and the University of North Carolina Center for Media Law & Policy. March 16, 2022.

Administrative & Advisory Enforcement of FOI laws. Invited virtual discussion with UMass law professor Richard Peltz-Steele's FOI seminar, Oct. 15, 2021.

The State of FOI: From Sheriff's Offices to Glomar Responses. Invited virtual discussion with CUNY law professor Sarah Lamdan's FOI seminar, Feb. 9, 2021.

A Guide to Indiana's Access Laws. Invited talk for *The Collegian*, Butler University's student newspaper, Aug. 16, 2017.

Public Records Reporting. A panel held as part of the Associated Press Sports Editors Great Lakes Region Meeting, Indianapolis Star offices, April 18, 2016.

Transparency in Government and Access to Information. Panel sponsored by the Indiana Coalition for Open Government, Monroe County Public Library, April 29, 2015.

---

| | |
|---|---|
| CONFERENCE PRESENTATIONS | Cuillier, D. & Wagner, A. The Document Divide: Public Record Requester Demographics, Efficacy, and Those Left Behind. Presented at the 2024 Association for the Education of Journalism & Mass Communications National Conference (Philadelphia, PA) |

Wagner, A. & Stewart, D. Opening the Floodgates: Assessing and Implementing Affirmative Disclosure. Presented at the 2023 National Freedom of Information Coalition Annual Summit (Online)

Wagner, A. & Cuillier, D. Tale of Two Requesters: How Public Records Law Experiences Differ by Requester Type. Presented at the 2023 Association for the Education of Journalism & Mass Communications National Conference (Washington DC)

Wagner, A. & Cuillier, D. To Fee or Not to Fee: Requester Attitudes Toward Government Record Copy Charges. Presented at the 2022 Global Conference on Transparency Research (Copenhagen, DK)

Anderson, J., Wagner, A. & Sanders, A. K. Who's Behind the Bench: The Case for Judicial Transparency. To be presented at the 2022 Global Conference on Transparency Research (Copenhagen, DK)

Wagner, A. Owning the Police: Crime, Copyright and Public Information. Presented at the 2022 National Freedom of Information Coalition Annual Summit (Online)

Wagner, A. Whose Public Virtue?: Exploring Freedom of Information Efficacy and Support. Presented at the 2021 National Freedom of Information Coalition Annual Summit (Online)

Wagner, A. Curiously Engaged: An Evaluation of FOI Use and Behavior. Presented at the 2021 Association for the Education of Journalism & Mass Communications Southeast Colloquium (Online)

Wagner, A. Inherent Frictions and Deliberate Frustrations: Examining the Legal Variables of State FOI Law Administration. Presented at the 2020 National Freedom of Information Coalition Annual Summit (Online)

Wagner, A. Piercing the Veil: Examining the Demographic and Political Variables of State FOI Law Administration. Presented at the 2020 Association for the Education of Journalism & Mass Communications National Conference (Online)

Wagner, A. Pandering, Priority or Political Weapon: Presidencies, Political Parties & the Freedom of Information Act. Presented at the 2020 Association for the Education of Journalism & Mass Communications National Conference (Online)

Wagner, A. A Structural Imperative: Freedom of Information, the First Amendment and the Accountability Function of Expression. Presented at the 2019 Association for the Education of Journalism & Mass Communications National Conference (Toronto, ON)

Wagner, A. Badgers' Right to Know: Assessing the Wisconsin Public Records Law. Presented at the 2019 National Freedom of Information Council FOI Summit (Dallas, TX)

Wagner, A. Requester's Paradox: Acknowledging FOIA's Defects, Moving toward Proactive Disclosure. Presented at the 2018 Association for the Education of Journalism & Mass Communications National Conference (Washington D.C.)

Wagner, A. The Janus Movement: The Limits of the FOIA and a Move toward Public-Facing Records. Presented at 2018 Union for Democratic Communications Conference (Chicago, IL)

Wagner, A. Essential or Wagner, A. The Curious Legacy and On-Going Tribulations of Criminal Libel. Presented at 2018 Union for Democratic Communications Conference (Chicago, IL)

Wagner, A. Informing the Public, Watching the Rascals. Presented at 2017 National Communication Association Annual Convention (Dallas, TX)

Wagner, A. A Secret Police: The Lasting Impact of the 1986 FOIA Amendments. Presented at 2017 Association for the Education of Journalism & Mass Communication National Conference (Chicago, IL)

Extravagant: Considering FOIA Budgets, Costs and Fees. Presented at 2017 Association for the Education of Journalism & Mass Communication National Conference (Chicago, IL)

Wagner, A. Illusion of Control: How Financial Failures Have Undermined the Freedom of Information Act. Presented at 2017 Global Conference on Transparency Research (Limerick, Ireland)

Wagner, A. Controlling Discourse, Foreclosing Recourse: The Creep of the Glomar Response. Presented at 2016 National Communication Association Annual Convention (Philadelphia, PA)

Wagner, A. Access as an Asset: Obama's Open Government. Presented at 2014 National Communication Association Annual Convention (Chicago, IL)

Wagner, A. Who's Policing Law Enforcement? Use of FOIA Exemption 7 Relative Occupy and WikiLeaks. Presented at 2014 Midwest Popular Culture Association Annual Conference (Indianapolis, IN)

Wagner, A. Melted: Iceland's Failed Experiment with Radical Transparency. Presented at 2014 Association for Education in Journalism & Mass Communication National Conference (Montreal, QC)

Wagner, A. Digital Libertarianism: From Haight-Ashbury to Reykjavik. Presented at 2013 InfoSocial Conference (Evanston, IL) & 2014 School of Journalism Research Colloquium (Bloomington, IN)

Wagner, A. & Martin, S. Tell It to Me Straight: Opinion on Public Notice. Presented at 2013 Midwest Association for Public Opinion Research (Chicago, IL) & 2013 School of Journalism Research Colloquium (Bloomington, IN)

Wagner, A. Hope in Iceland: Information Sharing, Neoliberlism and Bakhtin. Presented at 2013 Association for Education in Journalism & Mass Communication National Conference (Washington, D.C.)

Wagner, A. The Ambivalent Martyr: Eugene V. Debs & the Espionage Act of 1918. Presented at 2013 Media & Civil Rights Symposium (Columbia, SC)

Wagner, A. & Fargo, A. Vanishing Before Our Eyes: Criminal Libel in the United States. Presented at 2012 International Press Institute World Congress (Port of Spain, Trinidad)

Wagner, A. Free Speech Prohibitions and Other Rights Denied to Mario Savio and the 1964 Free Speech Movement. Presented at 2012 Joint Journalism and Communication History Conference (New York City, NY

| MEDIA APPEARANCES | |

Ex-cop facing 'unusual,' possibly unconstitutional criminal charge. *Law Vegas Review-Journal*. July 3, 2024.

Wisconsin Voices: The Importance of Government Transparency. *Spectrum News 1*, Aug. 5, 2023.

What is FOIA? Primary source for segment on freedom of information laws for WUWM's Lake Effect, Dec. 9, 2021.

Kyle Rittenhouse Trial: MSNBC Banned, Media Professors Weigh In. On-air source for story produced by the *FOX6 News Milwaukee*, Nov. 19, 2021.

Judge: Public Records Requests Don't Have to Be Emailed. Story produced by the *Associated Press*, May 9, 2021.

Sheriff's Refusal to Email Public Records Upheld by Appeals Court. Story in *The Oklahoman*, May 9, 2021.

'Tilting at Windmills': What Happens When the Public Fights for Open Records. Primary source for an *Oklahoma Watch*, a state public interest outlet, article exploring the Oklahoma Open Records Act, March 19, 2021.

Update Needed to Oklahoma Open Records Law. Editorial from *The Oklahoman* editorial board responding to my lawsuit in Oklahoma, Oct. 4, 2020.

'Broader Principle" at Stake in Public Records Case. Story in *The Oklahoman* covering my lawsuit against Custer County (Oklahoma) Sheriff, Sept. 25, 2020.

Citizens Not Entitled to Receive Public Records by Email, Judge Rules. Story in *The Oklahoman* covering my lawsuit against Custer County (Oklahoma) Sheriff, Sept. 23, 2020.

Wisconsin Counties Pass Open Records Audit from Marquette University Team. Story produced by the Wisconsin Radio Network covering the professional report for Probing the Public's Right to Know, April 14, 2020.

Openness Remains a Challenge for Some Oklahoma Bodies. Editorial in *The Oklahoman* covering the professional report for Probing the Public's Right to Know, April 1, 2020.

Officials Found to be Hostile to Records Requests. Story in *The Oklahoman* covering the professional report for Probing the Public's Right to Know, March 20, 2020.

Not as Open as We Could Be. Story in *The Isthmus,* a Wisconsin alterative paper, covering the professional report for Probing the Public's Right to Know, March 5, 2020.

Study: Scott, Clinton Counties 'Exemplary" About Answering Public Information Requests. Story in the *Quad-City Times* covering the professional report for Probing the Public's Right to Know, Feb. 28, 2020.

How Well Do Local Officials Respond to FOI Requests. Primary source for segment on NPR Illinois, July 3, 2018.

Fact-Checking & Misinformation. Panel at the 2018 Illinois News Broadcasters Association Spring Convention, April 21, 2018.

The Illinois FOIA Is Failing the Public. Opinion piece for *State Journal-Register,* Oct. 14, 2017.

Are Facebook Users Tired of Politics on Social Media. Short news segment on local CBS affiliate, WMBD, Jan. 30, 2017.

Identifying False Information on Social Media. Short news segment on local CBS affiliate, WMBD, Dec. 6, 2016.

---

TEACHING
EXPERIENCE

**Marquette University**
JOUR 4997 Capstone in Journalism
JOUR 4932 Opinion Writing
JOUR 4600 Journalism History
JOUR 4150 Investigative Reporting
JOUR 1550 Writing for News
COMM 6954 The 21st Century First Amendment (graduate course)
COMM 6825 Government Information (graduate course)
COMM 6250 Communication as Ethical Practice (graduate course)
COMM 4750 Media, Technology & Culture
COMM 3800 Media Law

**Bradley University**
COM 330 Communication Law and Ethics
COM 425 Advanced Reporting
COM 201 Journalistic Writing
COM 215 Basic Reporting
HON 100 Theories and Events in Government Transparency (honors course)

**Butler University**
JR 112 News Writing
SW 266 Media Literacy
JR 427 Government in the Age of WikiLeaks

**Indiana University**
J 300 Communications Law
J 110 Reporting, Writing & Editing

---

**Marquette University**
  University Curriculum Committee, 2022-
  University Academic Senate, 2019-2022
  Academic Program Review Committee, 2020-2022
  Ideation Review Council, 2020-2021
  Honors Mentor, 2020
  Technology Committee, 2018-present
  Axthelm Lecture Committee, chair, 2020-present
  Journalism Assessment Coordinator, 2021-present

**Bradley University**
  University Senate, 2017-2018
  Scholarship Committee, 2016-2018

**Butler University**
  CCOM Symposium Planning Committee, 2015-2016

Associate Editor, Journal of Civic Information, 2024-

Federal Freedom of Information Act Advisory Committee, 2020-2022

Focus Group, Government Accountability Office report, "Freedom of Information Act: Additional Guidance and Reliable Data Can Help Address Agency Backlogs," 2024

Expert Witness, Scoville v. U.S. Department of State, 2024

**Reviewing**
  Government Information Quarterly, Governance, Communication Law and Policy, Administration & Society, Regulation & Governance, Public Finance Journal, Newspaper Research Journal, AEJMC Annual Conference, ICA Annual Conference, IAMCR Annual Conference, MLPSC, AEJMC Southeast Colloquium

**<u>Appendix II</u>**
Sources consulted in making the report
(In addition to those directly cited in footnotes to the report)

**Part A**

Publicly available documents

Annual FOIA Reports for Fiscal Years 2008-2023, for the following agencies:
Department of Agriculture,
Department of Commerce;
Department of Defense;
Department of Education;
Department of Energy;
Department of Health and Human Services;
Department of Homeland Security;
Department of Housing and Urban Development;
Department of the Interior;
Department of Justice;
Department of Labor;
Department of State;
Department of Transportation;
Department of the Treasury;
Department of Veterans Affairs

2023: https://www.justice.gov/oip/annual-foia-reports-fy-23
2022: https://www.justice.gov/oip/annual-foia-reports-fy-2022
2021: https://www.justice.gov/oip/annual-foia-reports-fy-2021
2020: https://www.justice.gov/oip/annual-foia-reports-fy-2020
2019: https://www.justice.gov/oip/annual-foia-reports-fy-2019
2018: https://www.justice.gov/oip/annual-foia-reports-fy-2018
2017: https://www.justice.gov/oip/annual-foia-reports-fy-2017
2016: https://www.justice.gov/oip/annual-foia-reports-fy-2016
2015: https://www.justice.gov/node/149836
2014: https://www.justice.gov/archives/oip/annual-foia-reports-fy-2014
2013: https://www.justice.gov/oip/fy13.html
2012: https://www.justice.gov/oip/fy12.html
2011: https://www.justice.gov/oip/fy11.html
2010: https://www.justice.gov/oip/fy10.html
2009: https://www.justice.gov/oip/fy09.html
2008: https://www.justice.gov/archives/oip/annual-foia-reports-fy08

Annual FOIA Reports for Fiscal Years 1998-2007, for the Department of State
2007: https://foia.state.gov/Learn/Reports/Annual/2007.pdf
2006: https://foia.state.gov/Learn/Reports/Annual/2006.pdf
2005: https://foia.state.gov/Learn/Reports/Annual/2005.pdf

1

2004: https://foia.state.gov/Learn/Reports/Annual/2004.pdf
2003: https://foia.state.gov/Learn/Reports/Annual/2003.pdf
2002: https://foia.state.gov/Learn/Reports/Annual/2002.pdf
2001: https://foia.state.gov/Learn/Reports/Annual/2001.pdf
2000: https://foia.state.gov/Learn/Reports/Annual/2000.pdf
1999: https://foia.state.gov/Learn/Reports/Annual/1999.pdf
1998: https://foia.state.gov/Learn/Reports/Annual/1998.pdf

US African Development Agency, Annual FOIA Report Fiscal Year 2023,
https://www.usadf.gov/sites/default/files/inline-files/USADF%20FY23%20%28Final%29.docx

**Part B**

Documents produced in discovery in *Scoville v. U.S. Dep't of State*, Case No. 2:22-cv-00091-NJ:

| Bates Number | Description |
|---|---|
| SCO_00001004 | FOIAXpress overview presentation |
| SCO_00002230 | FOIAXpress report for request received March 10, 2016 |
| SCO_00002277 | FOIAXpress report for request received March 10, 2016 |
| SCO_00002298 | FOIAXpress report for request received March 21, 2016 |
| SCO_00002321 | FOIAXpress report for request received March 21, 2016 |
| SCO_00002332 | FOIAXpress report for request received February 20, 2018 |
| SCO_00002339 | FOIAXpress report for request received February 20, 2018 |
| SCO_00002350 | FOIAXpress report for request received March 4, 2020 |
| SCO_00002416 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002425 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002435 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002442 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002453 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002460 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002469 | FOIAXpress report for request received April 3, 2020 |
| SCO_00002548 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002557 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002563 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002569 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002575 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002581 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002587 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002593 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002599 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002605 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002611 | FOIAXpress report for request received May 3, 2019 |
| SCO_00002620 | FOIAXpress report for request received May 3, 2019 |
| SCO_00013677 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013684 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013691 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013698 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013704 | FOIAXpress report for request received May 5, 2021 |

| Bates Number | Description |
| --- | --- |
| SCO_00013713 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013723 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013730 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013736 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013743 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013749 | FOIAXpress report for request received May 5, 2021 |
| SCO_00013760 | FOIAXpress report for request received May 5, 2021 |
| SCO_00014001 | 2017 request migrated from Freedom2 |
| SCO_00014007 | 2017 request migrated from Freedom2 |
| SCO_00014013 | 2017 request migrated from Freedom2 |
| SCO_00014019 | 2017 request migrated from Freedom2 |
| SCO_00014025 | 2017 request migrated from Freedom2 |
| SCO_00014031 | 2017 request migrated from Freedom2 |
| SCO_00014037 | 2017 request migrated from Freedom2 |
| SCO_00014044 | 2018 request migrated from Freedom2 |
| SCO_00014050 | 2018 request migrated from Freedom2 |
| SCO_00014056 | 2018 request migrated from Freedom2 |
| SCO_00014062 | 2018 request migrated from Freedom2 |
| SCO_00014068 | 2018 request migrated from Freedom2 |
| SCO_00014077 | 2018 request migrated from Freedom2 |
| SCO_00014083 | 2018 request migrated from Freedom2 |
| SCO_00014089 | 2018 request migrated from Freedom2 |
| SCO_00014095 | 2018 request migrated from Freedom2 |
| SCO_00014101 | 2018 request migrated from Freedom2 |
| SCO_00014107 | 2018 request migrated from Freedom2 |
| SCO_00014116 | 2018 request migrated from Freedom2 |
| SCO_00014122 | 2018 request migrated from Freedom2 |
| SCO_00014128 | 2018 request migrated from Freedom2 |
| SCO_00014134 | 2016 request migrated from Freedom2 |
| SCO_00014140 | 2016 request migrated from Freedom2 |
| SCO_00014146 | 2016 request migrated from Freedom2 |
| SCO_00014203 | 2016 request migrated from Freedom2 |
| SCO_00014209 | 2016 request migrated from Freedom2 |
| SCO_00014215 | 2017 request migrated from Freedom2 |
| SCO_00014221 | 2017 request migrated from Freedom2 |
| SCO_00014227 | 2016 request migrated from Freedom2 |
| SCO_00000674 | February 2020 Backlog Reduction Plan |

| Bates Number | Description |
|---|---|
| SCO_00030339 | May 19, 2023 email chain weekly FOIA report |
| SCO_00031102 | May 17, 2022 email chain containing annotated 2019 FOIA backlog reduction plan |
| SCO_00031305 | February 28, 2020 email chain regarding weekly FOIA stats |
| SCO_00031839 | May 23, 2022 email chain backlog reduction plan |
| SCO_00032153 | October 2, 2020 email chain regarding weekly FOIA report |
| SCO_00032640 | March 23, 2020 email chain regarding FOIA intake backlog reduction report |
| SCO_00032642 | August 10, 2020 email regarding goal to manage 10,000 new cases by December 2024 |
|  | Transcript for Deposition of Eric Stein (April 12, 2024) |

## Appendix III

Data underlying graphs, tables, and other calculations

**Part A**

| 2023 | Received | Processed |
|------|----------|-----------|
| All | 1,199,699 | 1,122,211 |
| 15 Departments | 1,062,744 | 985,075 |
| 15 Departments Percentage | 88.58% | 87.78% |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Year 2023
*Summary of Annual FOIA Reports for Fiscal Year 2023*, Dᴇᴘ'ᴛ ᴏғ Jᴜsᴛɪᴄᴇ 4, 6 (June 7, 2024),
https://www.justice.gov/oip/media/1354721/dl?inline.

**Part B**

Figure 1 -State Department - Number of Requests Received and Requests Processed (2019-2023)
Figure 2 - 14 Cabinet-Level Departments - Average Number of Requests Received and Requests Processed (2019 -2023)

| | | Received | Processed | Unprocessed | Unprocessed as % of requests |
|---|---|---|---|---|---|
| 2019 | Dept. of State | 8,589 | 6,545 | 2,044 | 23.8% |
| | Average (14) | 49,746 | 51,045 | -1,299 | -2.6% |
| | | | | | |
| 2020 | Dept. of State | 9,019 | 7,041 | 1,978 | 21.9% |
| | Average (14) | 48,096 | 47,236 | 860 | 1.8% |
| | | | | | |
| 2021 | Dept. of State | 10,683 | 9,505 | 1,178 | 11.0% |
| | Average (14) | 52,064 | 52,275 | -211 | -0.4% |
| | | | | | |
| 2022 | Dept. of State | 13,864 | 9,167 | 4,697 | 33.9% |
| | Average (14) | 58,912 | 55,468 | 3,444 | 5.8% |
| | | | | | |
| 2023 | Dept. of State | 15,713 | 12,576 | 3,137 | 20.0% |
| | Average (14) | 74,788 | 69,464 | 5,324 | 7.1% |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Years 2019-2023

Total number of received requests

| 2019-2023 | Received requests |
|---|---|
| Dept. of State | 57,868 |
| Average of (14) of Departments | 283,606 |
| Ratio | 0.20 |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Years 2019-2023

**Part C**

Figure 3 – Backlogged Requests and Percentage of Backlogged Requests of Received Requests for Fiscal Years 2008-2023

|  | Backlogged Requests | | Received Requests | | % Backlogged / Received | |
|---|---|---|---|---|---|---|
|  | State | Other 14 (avg.) | State | Other 14 (avg.) | State | Other 14 (avg.) |
| 2008 | 4,327 | 8,498 | 5,909 | 33,955 | 73% | 25% |
| 2009 | 8,784 | 4,144 | 10,717 | 30,205 | 82% | 14% |
| 2010 | 20,519 | 2,784 | 30,206 | 31,498 | 68% | 9% |
| 2011 | 8,078 | 4,614 | 14,298 | 35,245 | 56% | 13% |
| 2012 | 10,464 | 3,616 | 18,521 | 35,891 | 56% | 10% |
| 2013 | 8,669 | 5,436 | 18,753 | 38,889 | 46% | 14% |
| 2014 | 10,045 | 9,664 | 19,696 | 40,403 | 51% | 24% |
| 2015 | 20,626 | 4,813 | 24,837 | 39,953 | 83% | 12% |
| 2016 | 22,664 | 5,930 | 27,961 | 43,041 | 81% | 14% |
| 2017 | 13,021 | 6,149 | 7,688 | 46,356 | 169% | 13% |
| 2018 | 10,400 | 7,645 | 8,448 | 49,761 | 123% | 15% |
| 2019 | 11,106 | 6,896 | 8,589 | 49,746 | 129% | 14% |
| 2020 | 13,798 | 8,029 | 9,019 | 48,096 | 153% | 17% |
| 2021 | 14,941 | 8,096 | 10,683 | 52,064 | 140% | 16% |
| 2022 | 18,765 | 11,985 | 13,864 | 58,912 | 135% | 20% |
| 2023 | 21,619 | 11,454 | 15,713 | 74,788 | 138% | 15% |

Figure 3 – Backlogged Appeals and Percentage of Backlogged Appeals of Received Appeals for Fiscal Years 2008-2023

|  | Backlogged Appeals | | Received Appeals | | % Backlogged / Received | |
|---|---|---|---|---|---|---|
|  | State | Other 14 (avg.) | State | Other 14 (avg.) | State | Other 14 (avg.) |
| 2008 | 480 | 377 | 179 | 518 | 268% | 73% |
| 2009 | 458 | 416 | 215 | 560 | 213% | 74% |
| 2010 | 346 | 346 | 148 | 650 | 234% | 53% |
| 2011 | 294 | 167 | 342 | 597 | 86% | 28% |
| 2012 | 352 | 169 | 212 | 652 | 166% | 26% |
| 2013 | 272 | 170 | 282 | 684 | 96% | 25% |
| 2014 | 235 | 210 | 356 | 714 | 66% | 29% |
| 2015 | 376 | 233 | 243 | 859 | 155% | 27% |
| 2016 | 469 | 244 | 148 | 880 | 317% | 28% |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2017 | 422 | 236 | 270 | | 837 | 156% | 28% |
| 2018 | 367 | 267 | 195 | | 903 | 188% | 30% |
| 2019 | 223 | 312 | 235 | | 906 | 95% | 34% |
| 2020 | 254 | 307 | 258 | | 892 | 98% | 34% |
| 2021 | 358 | 263 | 476 | | 740 | 75% | 36% |
| 2022 | 387 | 259 | 419 | | 893 | 92% | 29% |
| 2023 | 272 | 261 | 416 | | 791 | 65% | 33% |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Years 2008-2023

**Part D**

Figure 4: Backlogged Requests per Received Request (Volume Peers)

|  | State | Interior | Treasury |
|---|---|---|---|
| 2008 | 73% | 14% | 3% |
| 2009 | 82% | 15% | 0% |
| 2010 | 68% | 11% | 2% |
| 2011 | 56% | 9% | 2% |
| 2012 | 56% | 7% | 2% |
| 2013 | 46% | 7% | 3% |
| 2014 | 51% | 10% | 4% |
| 2015 | 83% | 8% | 6% |
| 2016 | 81% | 11% | 7% |
| 2017 | 169% | 20% | 9% |
| 2018 | 123% | 38% | 57% |
| 2019 | 129% | 52% | 13% |
| 2020 | 153% | 71% | 18% |
| 2021 | 140% | 71% | 21% |
| 2022 | 135% | 76% | 22% |
| 2023 | 138% | 61% | 23% |

Data source: FOIA Annual reports for Department of State, Department of Interior, and Department of the Treasury from 2008 to 2023.

Figure 4: Backlogged Requests per Received Request (Type Peers)

|  | State | Defense | Homeland Security |
|---|---|---|---|
| 2008 | 73% | 16% | 69% |
| 2009 | 82% | 17% | 18% |
| 2010 | 68% | 10% | 9% |
| 2011 | 56% | 10% | 24% |
| 2012 | 56% | 10% | 15% |
| 2013 | 46% | 10% | 22% |
| 2014 | 51% | 14% | 36% |
| 2015 | 83% | 17% | 13% |
| 2016 | 81% | 17% | 14% |
| 2017 | 169% | 19% | 12% |
| 2018 | 123% | 20% | 14% |
| 2019 | 129% | 23% | 8% |
| 2020 | 153% | 30% | 9% |

5

| | | | |
|---|---|---|---|
| 2021 | 140% | 33% | 6% |
| 2022 | 135% | 34% | 10% |
| 2023 | 138% | 33% | 9% |

Data source: FOIA Annual reports for Department of State, Department of Defense, and Department of Homeland Security from 2008 to 2023.

**Part E**

Figure 5: Comparison of Department of State's request dispositions by type and dispositions by the other cabinet-level departments.

| 2023 | Disposition | | |
|---|---|---|---|
| | Full Grant | Partial Grant | Full Denial |
| State | 372 | 5,676 | 1,767 |
| Other 14 (avg.) | 11,614 | 25,098 | 2,361 |

| 2008-2023 | Disposition | | |
|---|---|---|---|
| | Full Grant | Partial Grant | Full Denial |
| State | 30,033 | 58,877 | 56,824 |
| Other 14 (avg.) | 168,235 | 254,561 | 29,091 |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Years 2008-2023

7

**Part F**

Figure 6: Response times for requests where information was granted (comparison to volume & type peers).

|      |                     | State | Defense | Homeland Security | Interior | Treasury |
|------|---------------------|-------|---------|-------------------|----------|----------|
| 2016 | Simple (median)     | 106   | 18.78   | 9                 | 3        | 7        |
|      | Complex (median)    | 437   | 140.72  | 86                | 19       | 21       |
| 2017 | Simple (median)     | 396   | 14.22   | 30.83             | 3        | 5        |
|      | Complex (median)    | 485   | 111.56  | 121.25            | 20       | 20       |
| 2018 | Simple (median)     | 405   | 13.8    | 13                | 2        | 6        |
|      | Complex (median)    | 341   | 154.9   | 106               | 26       | 23       |
| 2019 | Simple (median)     | 38    | 9       | 9                 | 5        | 5        |
|      | Complex (median)    | 125   | 80      | 15                | 29       | 25       |
| 2020 | Simple (median)     | 186   | 9       | 16                | 26       | 2        |
|      | Complex (median)    | 117   | 92      | 51                | 107      | 20       |
| 2021 | Simple (median)     | 167   | 12      | 19                | 30       | 2        |
|      | Complex (median)    | 41    | 70      | 28                | 91       | 58       |
| 2022 | Simple (median)     | 172.5 | 12      | 8                 | 23       | 1        |
|      | Complex (median)    | 30    | 77      | 64                | 100      | 31       |
| 2023 | Simple (median)     | 180   | 11      | 10                | 24       | 1        |
|      | Complex (median)    | 45    | 90      | 75                | 86       | 89       |

Data source: FOIA Annual reports for Department of State, Department of Defense, Department of Homeland Security, Department of Interior, and Department of the Treasury from 2016 to 2023.

**Part G**

Figure 7: Comparison of the Department of State's request tracks and other cabinet-level departments, FY 2021 and 2022.

|          | Simple | Complex | Expedited |
|----------|--------|---------|-----------|
| State    | 2142   | 14543   | 91        |
|          | Simple | Complex | Expedited |
| Other 14 | 699020 | 814530  | 4732      |

Data source: Annual FOIA Reports for the 15 cabinet-level Departments for Fiscal Years 2021 and 2022

**Part H**

Figure 8 – Total FOIA Requests Received by the Department of State from 1998-2023

| Year | Dep't of State - Requests Received (1998-2023) |
|------|-----------------------------------------------|
| 1998 | 3355 |
| 1999 | 3716 |
| 2000 | 3611 |
| 2001 | 3761 |
| 2002 | 3134 |
| 2003 | 3352 |
| 2004 | 3951 |
| 2005 | 4602 |
| 2006 | 4937 |
| 2007 | 5078 |
| 2008 | 5,909 |
| 2009 | 10,717 |
| 2010 | 30,206 |
| 2011 | 14,298 |
| 2012 | 18,521 |
| 2013 | 18,753 |
| 2014 | 19,696 |
| 2015 | 24,837 |
| 2016 | 27,961 |
| 2017 | 7,688 |
| 2018 | 8,448 |
| 2019 | 8,589 |
| 2020 | 9,019 |
| 2021 | 10,683 |
| 2022 | 13,864 |
| 2023 | 15,713 |

Data source: Annual FOIA Reports for the Department of State for Fiscal Years 1998-2023.

**Part I**

Figure 9: Total FOIA Requests received by the 14 cabinet-level departments, excluding the Department of State.

| 14-Cabinet Level Departments | |
|---|---|
| Year | Requests Received |
| 2008 | 475373 |
| 2009 | 422875 |
| 2010 | 440971 |
| 2011 | 493434 |
| 2012 | 502476 |
| 2013 | 544440 |
| 2014 | 565646 |
| 2015 | 559345 |
| 2016 | 602570 |
| 2017 | 648988 |
| 2018 | 696653 |
| 2019 | 696444 |
| 2020 | 673348 |
| 2021 | 728894 |
| 2022 | 824767 |
| 2023 | 1047031 |

Data source: Annual FOIA Reports for the 14 cabinet-level Departments (excluding Department of State) for Fiscal Years 2008-2023