# EXHIBIT 9

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RYAN SCOVILLE,

                Plaintiff,

    v.                                    Civil Action No. 2:22-cv-91-NJ

U.S. DEPARTMENT OF STATE,

                Defendant.

## DECLARATION OF ANNA DIAKUN

I, Anna Diakun, declare under penalty of perjury that the following is true and correct:

1. I am currently employed as a Staff Attorney and Managing Attorney, Fellowship Program, at the Knight First Amendment Institute at Columbia University. The statements in this declaration are based on my personal knowledge.

2. I submit this declaration in support of Plaintiff's motion for summary judgment.

3. I have worked at the Knight Institute since September of 2019.

4. The Knight Institute's mission is to defend the freedoms of speech and the press in the digital age through strategic litigation, research, policy advocacy, and public education. Its aim is to promote a system of free expression that is open and inclusive, that broadens and elevates public discourse, and that fosters creativity, accountability, and effective self-government.

5. In my role, I litigate cases related to government surveillance and suppression of speech and government transparency.

6. I regularly handle tasks related to Freedom of Information Act ("FOIA") requests, such as drafting requests, filing suit to enforce requests, challenging delays in the processing of

requests, challenging the withholding of responsive records, and using records obtained through those requests in advocacy and litigation efforts.

7. The Knight Institute's work relies significantly on timely access to information obtained through FOIA. This access is essential for supporting both the Knight Institute's litigation and its advocacy efforts. Delays in processing FOIA requests directly hinder the Knight Institute's ability to craft effective and timely advocacy strategies, to ensure accountability for government actions, and to advance public awareness of government policies and programmatic decisions. These government policies and decisions often implicate core civil rights and liberties of the public, including the freedoms of speech and association.

8. The Knight Institute has submitted at least 9 FOIA requests to the U.S. Department of State ("State") since 2017. The Knight Institute expects to continue to submit FOIA requests to State in the future.

9. These FOIA requests generally pertain to government policy decisions and actions that affect the free speech environment. Topics of previous requests include the Biden administration's review of the use of social media identifiers in visa vetting; the U.S. government's compliance with its duty to warn journalist Jamal Khashoggi of any known and impending threats to his safety; State's system of prepublication review; foreign government requests to suppress or promote content on U.S.-based social media companies' platforms; and other topics.

10. The information requested is not available from other sources. Many of the Knight Institute's FOIA requests to State seek State's internal, non-public communications, policies, guidance documents, or other records that are uniquely held by State and would shed light on State's actions or programs. Even when certain topics have been reported about in the news second-hand, the Knight Institute has found that primary source documents obtained directly from

State are more effective and persuasive in advocacy efforts than information derived from second-hand reporting.

11. Because of long delays in FOIA processing, the Knight Institute usually finds it necessary to sue to compel the agency to process the request. To date, the Knight Institute has filed suit to enforce 7 of the 9 FOIA requests it has submitted to State. For those cases, it has taken between 5.5 months and 18 months for State to even begin producing records responsive to the Knight Institute's FOIA requests and sometimes over two years to complete production. Though these cases require significant time and Knight Institute resources, the Knight Institute has found it necessary to seek court intervention to compel responses from State.

12. Communication from State regarding pending requests is often delayed, with infrequent updates on the status of processing and anticipated timelines, unless ordered by the court.

13. Produced records are frequently heavily redacted, sometimes necessitating follow-up questions regarding the withheld records and the scope of the search.

14. The delays in receiving the requested documents have had a significant impact on the Knight Institute's work. Specifically, prolonged wait times have delayed and hindered Knight Institute advocacy campaigns and planned litigation.

15. Several of the Knight Institute's FOIA requests to State demonstrate State's consistent failure to respond to FOIA requests within the statutory time limits and prolonged delay in producing records responsive to FOIA requests.

16. For example, on February 15, 2022, the Knight Institute submitted a FOIA request for records relating to the Biden administration's review of the use of social media identifiers by State and the Department of Homeland Security. The Knight Institute requested these records to

support its advocacy efforts and ongoing litigation challenging State's requirement that nearly all visa applicants disclose social media handles used in the last five years, including those handles the applicants use pseudonymously.

17. On February 23, 2022, State acknowledged receipt of the request and asked the Knight Institute whether it would like the agency to consolidate this request with a previous similar request Knight submitted on June 3, 2022. On March 3, 2022, the Knight Institute responded that it would like State to treat the new submission as a separate case.

18. On March 3, 2022, State assigned the request reference number F-2022-04927, placed the request in the "complex processing track," and denied the Institute's request for expedited processing. It also explained that State "will not be able to respond within the 20 days provided by the statute due to 'unusual circumstances,'" citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii). It further explained that "[i]n this instance, the unusual circumstances include the need to search for and collect requested records from other Department offices or Foreign Service posts."

19. After no further communication from State, the Knight Institute sued to enforce the request against State and other relevant agencies in the Southern District of New York on April 12, 2022. The lawsuit was assigned case number 1:22-cv-03003. On May 18, 2022, the government filed an answer to the complaint, in which it averred that "State's search for and review of records potentially responsive to Plaintiff's FOIA Request are ongoing."

20. Following negotiations between the parties, State agreed to review initial sets of records and provide a response by August 15, 2022, 6 months after the Knight Institute filed the request. On that date, State informed the Knight Institute that it had located and processed 5 responsive records, which the agency withheld in full. On September 15, 2022, State released 1 additional document in part and withheld 2 documents in full.

21. Following a status conference on September 28, 2022, the district court ordered State to review and produce no fewer than 300 pages per month.

22. State subsequently issued several additional productions consistent with the court order. Between October 14, 2022, and June 14, 2023, State released 1 record in full, released 66 records in part, and withheld 12 records in full.

23. In total, in the 16 months after the Knight Institute filed the request, State released 1 record in full, released 67 records in part, and withheld 19 records in full. The PDF productions contained approximately 253 pages of records withheld in full, released in part, or released in full, though not all records withheld in full were accounted for in those productions.

24. Given the extent of the redactions, the Knight Institute emailed counsel for State a short list of clarification questions, inquiring whether final versions of 7 draft documents had been produced, and if so, where in the productions the final versions were located. The Knight Institute also asked for more information about the documents and pages withheld in full, and the reasons that the agency withheld them, to enable the Knight Institute to evaluate whether these withholdings were proper. The Knight Institute asked for similar information for a small number of documents withheld in part. It took State over 7 months to respond to those questions.

25. State's delay in producing records and the extent of the redactions present in its productions have hampered the ability of the Knight Institute to advocate for changes in policy. Approximately 15 million people each year are required to disclose their social media handles on their visa applications, threatening free speech and association online. Despite this, State still has not disclosed its assessment of the efficacy of this policy. Without this information, it is more difficult for the Knight Institute and others to push for reform.

26.     As another example, on December 9, 2022, the Knight Institute filed a request for correspondence between State and U.S.-based social media companies regarding foreign government requests to suppress or promote content on the companies' platforms. The request followed news reports that authoritarian governments had used coercive tactics to demand that platforms suppress political speech and prioritize state-endorsed narratives on their services. Given the grave threat to freedom of expression around the world posed by such tactics, the Institute sought information about whether and how State advises and supports platforms as they respond to foreign state actors' efforts to influence online speech.

27.     State's Office of Information Programs and Services acknowledged the request in an email dated December 13, 2022. State assigned the request reference number F-2023-02663 and informed the Knight Institute that it had placed the request in the complex processing track. The email denied the Knight Institute's request for expedited processing and indicated that the Office would not be able to respond to the request within the 20 days provided by the statute due to "unusual circumstances," including "the need to search for and collect requested records from other Department offices or Foreign Service posts."

28.     On January 4, 2023, the Institute sent an email to State seeking the agency's estimated date of completion for the request. On January 5, 2023, State responded that its estimated date of completion was June 30, 2025, explaining that "the Department currently has a backlog of FOIA requests and is working through it as quickly as possible."

29.     On January 23, 2023, the Knight Institute sent an email to State inquiring whether it could arrange an alternative time frame for processing the request and offering to discuss the processing timeline over the phone. On January 24, 2023, State responded that it processes requests on a "first-in, first-out basis," and clarified that its estimated date of completion of June 30, 2025

was based on the Department's backlog of FOIA requests, and not the contents of the Institute's request.

30. Because of State's failure to provide a substantive response within the time frame mandated by FOIA, the Institute filed a lawsuit to enforce its request in the Southern District of New York on March 24, 2023. On May 3, 2023, State filed its answer to the complaint, in which it stated that "the State Department's search for the requested documents is ongoing."

31. On May 31, 2023, the court ordered State to make its first production of responsive records on July 21, 2023, with additional productions to be made on a rolling basis every 6 weeks. State failed to make its initial production on July 21, claiming that additional processing time was needed to conduct internal clearances and/or submitter review. In letters dated August 4, 2023, September 15, 2023, and October 20, 2023, State informed the Knight Institute that it had processed "potentially responsive" records, but that none of them were deemed to be responsive to the request. In a letter dated December 8, 2023, State informed the Knight Institute that it had identified the first batch of responsive pages, but advised that those pages required external consultation before a release determination could be made.

32. The Knight Institute did not receive its first production from State until January 19, 2024, nearly 6 months after the deadline for its initial production and more than a year after the Knight Institute submitted its FOIA request. State made its final production of responsive records on December 20, 2024. In its final production letter, State indicated that it had referred 15 pages to another agency for a direct response to the Institute. To date, the Knight Institute has not received a response from any federal agency regarding these 15 pages. In total, State produced 249 responsive pages to the Institute over a 2-year period.

7

Case 2:22-cv-00091-NJ    Filed 02/18/25    Page 8 of 10    Document 63-9

33. At times, State's productions were incomplete or redundant. On one occasion, for example, the Knight Institute had to request that State undertake supplemental searches to ensure its production was complete. After conducting the additional searches, State identified more than 5,000 potentially responsive records, and ultimately determined that nearly 200 pages were subject to FOIA. In addition, some of State's productions contained duplicate records.

34. State's prolonged delay negatively affected the Institute's ability to timely report on interactions between State and online platforms regarding efforts by foreign state actors to influence online discourse. The Knight Institute's request was prompted by reporting from several outlets regarding the pressure online platforms had received from foreign state actors to suppress lawful speech. Shortly after the Knight Institute filed suit, there were additional reports of censorship requests to U.S.-based platforms made by authoritarian governments. The Knight Institute was unable to weigh in about State's potential role in helping platforms resist these requests due to the delay in State's productions.

35. When the Knight Institute has not sued to enforce its requests, it faces even lengthier delays. For example, the Knight Institute filed a FOIA request on January 31, 2017, seeking records concerning directives reportedly restricting the speech of federal agency employees with the public, with the press, and with Congress. On February 1, 2017, State acknowledged receipt of the request and denied expedited processing. The Knight Institute did not receive any further correspondence from State about the FOIA request until March 29, 2024— over 7 years later—when the agency wrote to inquire whether the Knight Institute was still interested in pursuing the request given the length of time that had elapsed and given that the Knight Institute had not followed up in the interim.

36. Given the length of time that had passed, the Knight Institute was not still interested in pursuing the request because its advocacy efforts had shifted to more timely topics.

37. Because of the extensive delays involved when the Knight Institute does not sue to enforce its requests, the Knight Institute often makes the determination that it is not worth submitting a FOIA request to State unless the Knight Institute is prepared to spend the time and resources litigating that request. This decreases the number of requests the Knight Institute submits and hinders its goal of bringing transparency to State's actions and practices.

38. Given the persistent nature of State's delays, I anticipate future harm to the Knight Institute's advocacy efforts, as new requests to State will likely face similar processing issues.

39. The recurring delays and challenges in obtaining records from State through FOIA undermine the Knight Institute's ability to ensure transparency and advocate for policy change when appropriate. Addressing State's failure to satisfy FOIA's timing requirements is essential for preserving FOIA's purpose of promoting accountability and access to information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 6, 2025.

New York, NY

/s/ *Anna Diakun*
Anna Diakun