# EXHIBIT 12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN SCOVILLE,

    Plaintiff,

v.

U.S. DEPARTMENT OF STATE,

    Defendant.

Civil Action No. 2:22-cv-91-NJ
ECF Case

## DECLARATION OF DAVID MCCRAW

I, David McCraw, declare under penalty of perjury that the following is true and correct:

1. I am Senior Vice President and Deputy General Counsel of The New York Times Company ("The Times"), publisher of *The New York Times* newspaper and nytimes.com. I make this declaration upon my personal knowledge and a review of public records.

2. In my role, among other things, I advise The Times's journalists on submitting Freedom of Information Act ("FOIA") requests, communicate with agency FOIA officers in an effort to facilitate the timely release of records requested by *Times* journalists, and draft administrative appeals when an agency denies a FOIA request. I also litigate FOIA actions on behalf of The Times against federal agencies that we believe have violated FOIA's requirements.

3. *Times* reporters regularly submit FOIA requests to the State Department, and The Times has brought multiple FOIA lawsuits against the agency. That is because the agency has repeatedly failed to comply with FOIA's statutory deadlines. Some of these lawsuits are ongoing.

4. Congress's core purpose in enacting FOIA, as the Supreme Court put it, was "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check

1

Case 2:22-cv-00091-NJ   Filed 02/18/25   Page 2 of 13   Document 63-12

against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Times uses FOIA in ways consistent with, and in furtherance of, this congressional intent.

5. Timely obtaining information about the government's activities is essential to *The New York Times*'s ability to inform the public about newsworthy information. When reporters are forced to wait months or years to receive such information, their stories can lose relevance and immediacy for the public, which relies on the work of journalists to hold government officials and agencies accountable. The State Department's repeated, months- and years-long delays in responding to FOIA requests therefore poses a significant obstacle to news reporting by *Times* journalists and, in turn, to Congress's intent and to the public's ability to learn about government activities.

6. Agency records can provide the spark behind an investigative news story. Sometimes, journalists use agency data to identify patterns of misconduct. Other times, journalists pore over agency communications to uncover newsworthy exchanges and interactions.

7. In addition, agency records are often the best source of detailed, contemporaneous, and original information about government activities. Although *Times* journalists utilize a variety of sources, including interviews with former and current government officials, those sources are often no substitute for records obtained through FOIA requests. Even if a current or former government official is willing to speak to a journalist, written documentation can be more reliable than an interviewee's oral statements; interviewees may forget details, mix up timelines, or even provide misleading information. Because reporters often

also use agency records to guide their interview questions, memories only continue to fade when reporters must wait months or years to receive those records.

8. On the other hand, agency documents can memorialize conversations, attribute them to particular officials, and provide irrefutable evidence of the process of government decision-making. So, even when it might be possible to report the gist of a story without access to the documents of an agency like the State Department, that story may lack the detail, nuance, and attribution gleaned through agency records.

9. Numerous *Times* reporters cover the State Department and the issues under the agency's purview. Because State Department activities significantly impact American citizens and businesses, as well as those around the world, they are often at the heart of *Times* stories—including stories on foreign policy and relations; war, espionage, and military activities; immigration; and national politics. Naturally, then, *Times* reporters routinely submit FOIA requests to the State Department to learn about these activities. To ensure that these reporters' stories timely reach the public, The Times has a strong interest in ensuring that the State Department responds to FOIA requests within the statutory timeframe.

10. Several of The Times's FOIA lawsuits aptly illustrate the egregious extent and deleterious effects of the State Department's delays. For example, in *The New York Times Co. v. U.S. Department of Defense*, No. 22-cv-09448 (S.D.N.Y.), The Times sued the State Department (among other agencies) for failing to make a determination on a FOIA request for nearly nine years.

11. In that case, a *Times* journalist submitted a FOIA request to the Department of State on January 2, 2014, seeking documents related to allegations of war crimes and other

illegal or improper conduct by members of U.S. special operations forces between 2012 and 2013.

12. In an acknowledgment letter dated January 24, 2014, the State Department asserted: "Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request." The State Department did not provide an estimated date by which it would complete the request.

13. When the journalist, having received no records, followed up on May 26, 2017—more than three years after submitting the request—the State Department responded that it anticipated completing the request by August 31, 2017. Still having received no records, The Times followed up with the State Department again on January 31, 2021. The State Department replied on February 2, 2021, indicating that it would follow up with a response. But The Times still did not receive the requested records. As a result, The Times filed its lawsuit on November 4, 2022.

14. On January 23, 2023, as part of the litigation, The Times agreed to combine the processing of this FOIA request with another request seeking similar records from the State Department. The State Department did not finish producing records responsive to the combined requests until November 27, 2024—almost eleven years after the initial request was submitted.

15. The State Department's failure to complete production for more than a decade has contributed to delays in *Times* reporting on alleged war crimes. The State Department's delay stretched across three presidential administrations and extended so long that the U.S. military withdrew from Afghanistan in the meantime. By depriving *Times* readers of critical information

about military activities, this delay prevented the public from exercising democratic oversight of American involvement in Afghanistan for the entire period of that involvement.

16. In a second case, *The New York Times Co. v. U.S. Department of State*, No. 19-cv-00645 (S.D.N.Y.), The Times sued the State Department on January 23, 2019, for failing to make a determination on a FOIA request for more than fourteen months.

17. In that case, *Times* reporter Eric Lipton submitted a request to the State Department on November 15, 2017, seeking documents related to Secretary of Transportation Elaine Chao's planned trip to China in October 2017. On February 7, 2018, after Mr. Lipton inquired about the status of the request, the State Department told him that the request was being processed and that the delay was caused by a backlog of approximately 10,600 cases.

18. In April 2019, after The Times commenced its litigation, Mr. Lipton began to receive records responsive to his request. The State Department located and produced eight email chains, totaling 30 pages. The litigation ultimately ended in September 2019.

19. Soon after Mr. Lipton began receiving records during the case, he and several *Times* colleagues were able to complete an in-depth article on ethical issues raised by Secretary Chao's family business interests in China. The Times published that story, relying on communications obtained through the FOIA request, in June 2019. *See* Michael Forsythe, Eric Lipton, Keith Bradsher & Sui-Lee Wee, *A 'Bridge' to China, and Her Family's Business, in the Trump Cabinet*, N.Y. Times (June 2, 2019), https://www.nytimes.com/2019/06/02/us/politics/elaine-chao-china.html. The Times's reporting led the Department of Transportation's inspector general to investigate whether Secretary Chao had used her public office for private gain—an investigation that did not conclude until after Secretary Chao resigned in January 2021. *See* Eric Lipton & Michael Forsythe, *Inspector*

*General's Report Cites Elaine Chao for Using Office to Help Family*, N.Y. Times (Mar. 3, 2021), https://www.nytimes.com/2021/03/03/us/politics/elaine-chao-inspector-general-report.html. Had the State Department fulfilled Mr. Lipton's request sooner, The Times would have been able to inform the public of the ethical concerns around a Cabinet member much earlier in that administration.

20. As a third example, in *The New York Times Co. v. U.S. Department of State*, No. 22-cv-00791 (S.D.N.Y.), The Times sued the State Department for failing to make a determination on a FOIA request for more than six months.

21. In that case, *Times* reporter Kenneth Vogel submitted a request to the State Department on June 7, 2021, seeking correspondence sent or received over a certain period by a list of officials in the U.S. Embassy in Romania and mentioning certain keywords. Yet when The Times asked the State Department on December 17, 2021, to give an estimated date of completion for this request, the State Department replied that it expected to complete the request on April 15, 2023—nearly two years after the request was submitted.

22. Mr. Vogel sought these documents as part of ongoing reporting into efforts by various politically connected Americans—including Hunter Biden (son of then-President Joe Biden), Rudy Giuliani (former New York City mayor), and Louis Freeh (former FBI director)— to advocate for a Romanian businessman facing corruption charges. Although The Times had previously reported on these efforts in 2019, *see* Kenneth P. Vogel, *Hunter Biden's Work in Romania. But There's a Problem.*, N.Y. Times (Oct. 25, 2019), https://www.nytimes.com/2019/10/25/us/politics/giuliani-hunter-biden-romania.html, Mr. Vogel's reporting gained new salience after Joe Biden became president and after Hunter Biden announced he was being investigated by federal prosecutors. Given the potential newsworthiness

of the correspondence sought by Mr. Vogel, The Times had a keen interest in the State Department's timely production of those records.

23. In an attempt to ensure that it would receive these records while the information was still relevant to the public, The Times filed suit on January 31, 2022, to compel the State Department to respond to this request and a second, similar request.

24. Although the State Department purported to have produced all responsive records by August 30, 2023, The Times challenged the thoroughness of the agency's search, pointing to responsive emails obtained from Hunter Biden's laptop and published elsewhere online but not produced by the agency. As a result, the State Department began conducting additional searches and producing additional records.

25. As of January 28, 2025, the State Department has not completed producing responsive records in this litigation.

26. Although The Times continues to report on this topic, *see* Kenneth P. Vogel, *Hunter Biden Sought State Department Help for Ukrainian Company*, N.Y. Times (Aug. 13, 2024), https://www.nytimes.com/2024/08/13/us/politics/hunter-biden-ukrainian-company.html, the State Department's failure to complete Mr. Vogel's request after more than three years hindered the timeliness of that reporting. When Mr. Vogel published a story on Hunter Biden's work for foreign clients in August 2024, Mr. Biden had already been indicted on federal tax charges and convicted on firearm-related charges, and his father, President Biden, had already withdrawn his candidacy for a second presidential term. Since then, Hunter Biden has been pardoned after pleading guilty to the tax charges, and the American people have elected a new president. Thus, while future *Times* reporting may seek to shed more light on Hunter Biden's

foreign activities, the State Department's delay effectively allowed the agency to evade scrutiny of these activities when they were subject to the greatest public interest.

27. As a fourth example, in *The New York Times Co. v. U.S. Department of State*, No. 15-cv-08807 (S.D.N.Y.), The Times sued the State Department on November 9, 2015, for failing to make a determination on a FOIA request for more than fifteen months.

28. In that case, Mr. Lipton submitted a FOIA request to the State Department on June 5, 2014, seeking certain correspondence between specific State Department officials and specific third-party email addresses. On July 30, 2015, having waited more than a year without receiving records, Mr. Lipton asked the State Department about the status of his request. The State Department informed him that it estimated responding to the request in October 2015. After Mr. Lipton followed up on October 28, 2015, the State Department told him that it did not expect to complete the request until February 2016. As a result, The Times filed its lawsuit on November 9, 2015.

29. That litigation ultimately ended in March 2016, after the State Department produced responsive records to The Times.

30. Those documents provided crucial information for an in-depth *Times* article by Mr. Lipton and a colleague on relationships between the government, influential think tanks, and industry officials. *See* Eric Lipton & Brooke Williams, *How Think Tanks Amplify Corporate America's Influence*, N.Y. Times (Aug. 7, 2016), https://www.nytimes.com/2016/08/08/us/politics/think-tanks-research-and-corporate-lobbying.html. In finding that "think tanks are pushing agendas important to corporate donors, at times blurring the line between researchers and lobbyists," this article noted that corporate donations to think tanks "may amount to improper subsidies by taxpayers if think tanks are

providing specific services." *Id.* Yet the article was not published until August 2016—more than two years after Mr. Lipton submitted his FOIA request. The State Department's delay in producing responsive records slowed down The Times's ability to report and publish these findings, again frustrating FOIA's basic purpose of increasing government transparency.

31. Finally, as a fifth example, in *The New York Times Co. v. CIA*, No. 23-cv-01854 (S.D.N.Y.), The Times sued the State Department (among other agencies) for failing to make a determination on a FOIA request for more than five months.

32. There, *Times* reporter Charlie Savage submitted a FOIA request to the State Department on September 27, 2022, seeking records related to requests for briefings by former presidents since 1953. The State Department acknowledged the request on September 28, 2022, but stated it would not be able to respond within the statutory deadline of twenty business days due to "unusual circumstances," namely, "the need to search for and collect requested records from other Department offices or Foreign Service posts." Having heard nothing further from the State Department for more than five months, The Times filed its lawsuit on March 3, 2023.

33. The State Department did not begin producing responsive records until November 9, 2023, and did not complete producing responsive records until October 10, 2024—more than two years after Mr. Savage submitted the request. The litigation ended soon thereafter.

34. Each time the State Department fails to respond to a reporter's FOIA request by the statutory deadline, The Times must decide whether to expend litigation resources to compel the State Department to comply with FOIA's obligations. Many news organizations do not have such resources and cannot pursue FOIA litigation, meaning the information they requested may never timely reach the public. Still, even though The Times litigates FOIA requests more frequently than most other news outlets do, such litigation is not always possible or practical. As

a result, *Times* journalism is impeded each time the State Department fails to respond to a reporter's FOIA request by the statutory deadline. In some instances, the records responsive to these requests would serve as useful background information for *Times* reporters. In other instances, The Times opts to go forward with publishing a pressing story knowing it will not have the benefit of agency records. And other times, records that might have led to an important news story are never produced, and the story is never published.

35. In addition, the State Department has proven unwilling to reduce its response time for FOIA requests. For example, on September 3, 2024, The Times administratively appealed the State Department's constructive denial of a series of FOIA requests submitted in April, May, June, and August 2024. When the State Department responded, it asserted that The Times could not administratively appeal the agency's failure to respond by the statutory deadline. Instead, the State Department informed The Times that it "receives thousands of FOIA and Privacy Act requests each year and yours will be processed in turn." The agency also stated that if it failed to respond within the statutory timeframe, The Times "would not be required to appeal administratively before instituting suit in federal court."

36. This response indicated that the only way for The Times timely to receive records responsive to these FOIA requests was to file yet another federal lawsuit against the State Department. So, The Times did just that.

37. On November 18, 2024, The Times filed *The New York Times Co. v. U.S. Department of State*, No. 24-cv-08747 (S.D.N.Y.). This lawsuit seeks records related to the State Department's Exchange Visitor Program, which provides visas for foreign students and workers to participate in vocational and educational opportunities in America. For five of the requests at issue, the State Department asserted in acknowledgment letters that "unusual circumstances"

10

prevented it from responding within FOIA's twenty-day timeframe, but it never specified the date by which it expected to make a determination on those requests. On February 3, 2025, the State Department averred in a status report that "its searches for responsive records are still being conducted." To date, The Times has yet not received any documents for the requests in this suit.

38. The Exchange Visitor Program has long been, and continues to be, the subject of significant public concern. *See, e.g.*, *Julia Preston, Pleas Unheeded as Students' U.S. Jobs Soured*, N.Y. Times (Oct. 16, 2011), https://www.nytimes.com/2011/10/17/us/hershey-foreign-exchange-students-pleas-were-ignored.html; Patricia Cohen & Sydney Ember, *Lack of Foreign Workers Has Seasonal Businesses Scrambling*, N.Y. Times (Aug. 2, 2021), https://www.nytimes.com/2021/08/02/business/economy/seasonal-foreign-guest-workers.html. The State Department's delays in processing these requests, some of which were submitted more than seven months ago, are impeding public understanding of the State Department's administration and oversight of this program.

39. While The Times, unlike many other news organizations and most private individuals, has the financial resources to litigate FOIA actions on a regular basis, the need to institute suit to compel the disclosure of records imposes a significant drain on The Times's resources. My colleagues and I must devote time to draft pleadings, confer with agency counsel, and monitor the agency's productions to ensure that The Times and its reporters can vindicate their statutory rights under FOIA and produce valuable accountability journalism.

40. Because State Department activities are newsworthy and affect the public, The Times expects to submit additional FOIA requests to the agency as part of its newsgathering efforts. And as shown by the experiences above, these newsgathering efforts will be hampered

when The Times is forced to wait months or years for the State Department to process its FOIA requests: the public loses the benefit of critical information, and information goes stale.

Dated: New York, New York  /s/ David McCraw
       February 12, 2025  David McCraw