# EXHIBIT 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN SCOVILLE,

    Plaintiff,

v.

U.S. DEPARTMENT OF STATE,

    Defendant.

Civil Action No. 2:22-cv-91-NJ

# DECLARATION OF MICHAEL MORISY

I, Michael Morisy, declare under penalty of perjury that the following is true and correct:

1. I am a journalist and the Chief Executive Officer of MuckRock, a United States-based 501(c)(3) non-profit organization dedicated to promoting government transparency and accountability. I founded MuckRock in February 2010 as a platform to simplify public records requests and to foster informed public discourse by publishing the information obtained through the Freedom of Information Act ("FOIA") and other public records laws.

2. Previously, I worked as an editor at The Boston Globe, where I launched its technology vertical, BetaBoston. I have also been honored to serve as a Nonresidential Fellow at the Reynolds Journalism Institute at the University of Missouri (2018-19), a John S. Knight Journalism Fellow at Stanford University (2014-15), and an Edmond J. Safra Center for Ethics Network Fellow at Harvard University (2012-13).

3. I submit this declaration in support of Plaintiff's motion for summary judgment. The statements in the foregoing declaration are based on my personal knowledge.

4. As Chief Executive Officer, I oversee MuckRock's operations, strategy, and core activities.

5. MuckRock's mission is to make government more transparent and accountable by providing tools for the public to request, track, and share government records. MuckRock serves as an intermediary for public records requests, ensuring that they are filed, tracked, and published efficiently. When a user submits a request through our platform, MuckRock processes it, timestamps the submission, and publishes any responses received, making the information freely accessible to the public.

6. MuckRock uses these records—and encourages others to use them as well—to support journalism, advocacy, and public understanding. It publishes news articles based on investigations conducted by its users or employees. Recent reporting by MuckRock, informed by FOIA requests to the U.S. Department of State ("State") and other agencies, includes coverage of the 2024 presidential transition and police disciplinary files.

7. MuckRock's work depends on timely access to information through FOIA. This access is crucial for conducting investigations, producing reports, and informing the public on matters of public interest. Delays in FOIA processing hinder our ability to meet these objectives and impede the public's right to know.

8. MuckRock's efforts have led to significant outcomes. For example, a MuckRock request to State prompted subsequent reporting on State's repeated use of spokesperson Joseph Reap for less-than-flattering statements, despite the fact the spokesperson in question had been deceased for decades. Other reporting building on documents from State has looked at the agency's use of non-profit "cutouts" to drive foreign policy goals.

9. Despite its successes, MuckRock and the public face ongoing challenges, particularly with delays in FOIA responses from State. According to data from MuckRock as of January 31, 2025, the public has filed 1,051 FOIA requests with State through the platform since 2010.[1] However, State's performance in responding to these requests has been subpar. Of the requests submitted, only 129 have been completed, 106 have been rejected (i.e., the agency claimed that all records were subject to various FOIA exemptions), 81 have been found to have no responsive documents, and 409 are still awaiting a response from State.

10. According to MuckRock's data, State's response time averages 512 days, which is 78% slower than the average for all other federal agencies. Additionally, State's success rate (i.e., the agency provides responsive materials) is only 12.27%, fulfilling 53% fewer requests than the average for all other federal agencies. The data also shows 8 appeals awaiting a response, further demonstrating delays and inefficiencies. This data from MuckRock highlights serious issues with State's responsiveness and timeliness in processing FOIA requests, with slower response times, fewer fulfilled requests, and significant backlogs compared to other federal agencies.

11. Using MuckRock's services, I also personally submit FOIA requests, analyze the responses, pursue investigations, and publish the results.

12. My experiences with FOIA requests to State mirror those of the public using MuckRock's services. Through MuckRock's platform, I have submitted approximately 1,514 total FOIA requests on my own behalf since 2010, with the most recent being in 2024. I have filed 17 FOIA requests to State since 2011, the most recent of which was in 2017.

---

[1] https://www.muckrock.com/agency/united-states-of-america-10/department-of-state-14 [https://perma.cc/ZKW7-NRZM].

13. I expect to continue submitting FOIA requests to State in the future, such as to obtain information on America's changing support for global civil society efforts and partnerships on surveillance and national security.

14. I regularly file FOIA requests to promote transparency and hold the government accountable. The requests outlined below are representative of my typical submissions, focusing on government communications related to specific events, payments, agreements, and audits of government officials, all aimed at fostering transparency and accountability.

15. My FOIA requests are often targeted, focusing on more specific documents or aspects of an issue, such as communications related to the Sony film *The Interview*. These requests allow for uncovering smaller but impactful pieces of information, such as specific communications between government officials about the film's release.

16. Access to records requested from State is essential to my work in advancing public awareness, conducting oversight, and engaging in informed advocacy because the information requested is generally unavailable from other sources or, if partially available, lacks the completeness and reliability of the records held by State. State is in the best position to provide complete records, including emails, internal memos, and other communications that detail government operations.

17. Timely access to records requested from State is essential because it enables timely analysis of important government activities and decisions. For example, obtaining records related to Hillary Clinton's email security audits was crucial for understanding potential threats to government communications during her tenure as Secretary of State. Requests such as this, if fulfilled, not only contribute to public understanding but also provide critical data for legal and policy discussions that may be influenced by these records.

18. State has taken months to provide estimated dates of completion for my FOIA requests, and years to even begin producing records responsive to my FOIA requests, let alone to complete production.

19. Communication from State regarding pending requests is often inconsistent, with updates on processing timelines or scope revisions being infrequent and sometimes unhelpful. I rarely receive timely updates on the status of my requests, and when I do, the information provided is often vague or contradictory, which adds to the uncertainty and difficulty in managing my work. For instance, a request regarding the U.S. lease payments to Cuba for Guantanamo Bay saw delays in providing basic information about the status of the request, requiring multiple follow-ups.

20. Produced records from State are frequently heavily redacted or incomplete, often necessitating appeals or follow-up requests.

21. When delays are extreme for newsworthy requests, MuckRock has had to pursue litigation to compel responses, resulting in compliance but only at additional expense and additional significant delay.

22. Several of my FOIA requests to State demonstrate State's consistent failure to respond within statutory time limits and the prolonged delays in producing records responsive to these requests. As illustrated in the examples below, the delays in receiving the requested documents have had a significant impact on my work, as well as the public's right to transparency and accountability from their government.

23. I submitted a FOIA request (F-2014-23068) to State on December 17, 2014, seeking copies of communications and internal reports related to the Sony film *The Interview*, particularly any communications involving Robert King, the U.S. special envoy for North

Korean human-rights issues. The records I requested were of significant interest to the public and of particular news value, given concerns about retribution and international relations upon the movie's release.

24. State acknowledged my request on January 5, 2015, but from there, the process was characterized by repeated delays and vague responses. Initially, State provided an estimated completion date of September 2015, but as time went on, that estimate was pushed back several times. By the end of 2015, the estimate was revised to December 1, 2015. However, as the months passed, I continued to follow up with State, and each time I was met with responses indicating that they were still asking around for updates. In April 2016, the estimated completion date was revised once again to November 30, 2016, but that date came and went without any production of records. By 2017, I was told that State's backlog had grown to approximately 13,000 cases and that my request might not be processed until September 2019.

25. Despite following up multiple times over the course of a few years, State never provided any substantive responses beyond their ever-changing estimated dates of completion. In fact, State never produced any records, and the request has remained unresolved for over ten years.

26. While I did not file a lawsuit in this instance, the delays and lack of meaningful progress on this request severely hampered my work. The records I requested were important to share with the public because they would have shed light on the U.S. government's involvement in the controversy surrounding *The Interview* and the broader implications for free speech and international diplomacy. The delay in receiving these documents prevented me from informing the public about the government's communications on this issue, depriving the public of essential information that could have contributed to a better understanding of the complexities

involved, including the potential impact on freedom of expression and diplomatic relations. Without access to these records, I was unable to fully investigate and report on this matter, which ultimately undermined the transparency that is crucial for a functioning democracy.

27. I submitted a FOIA request (F-2013-05729) to State on April 2, 2013, seeking copies of the check and cover letter paying rent to the Government of Cuba for the use of the Guantanamo Bay Naval Base, in accordance with the 1903 Lease Agreement between the U.S. and Cuba, for each year from 2000 to the present. Additionally, I requested any written response to these payments from the Cuban Government.

28. State acknowledged the request on April 25, 2013, but the process was marred by repeated delays and vague responses. Initially, State provided an estimated completion date of May 2014, but that estimate was pushed back multiple times. By the end of 2013, the estimated completion date shifted to November 2014, and later to November 2015. As I continued to follow up throughout the years, the estimated dates continued to change, with no records being released. By 2019, I was told the estimated completion date was set for September 2020. State repeatedly identified its backlog of requests as a reason that it was postponing the estimated completion date for my request.

29. Despite numerous follow-up inquiries, State failed to provide any documents or meaningful updates. State never released any records, and my request has remained unresolved for eleven years and counting.

30. While I did not file a lawsuit in this case, the prolonged delays significantly hindered my work. The records I requested were important to share with the public because they would have provided insight into the diplomatic relationship between the U.S. and Cuba concerning the Guantanamo Bay Naval Base. These records would have contributed to a better

understanding of the U.S. government's ongoing dealings with Cuba, especially in the context of the post-Cold War era. Moreover, the documents would have enriched public discussions about the future of the facility—discussions that have continued to resurface, notably in 2015, 2022, and 2025, while my request has been pending. The delay in receiving these documents prevented me from informing the public, depriving them of crucial information regarding this issue. Without access to the records, I was unable to fully investigate or report on the matter, thus undermining the transparency that is vital for maintaining accountability in government actions.

31. I filed a request (F-2015-05027) for information security audits related to Hillary Clinton's email account on March 4, 2015. The request sought records pertaining to any information security audits conducted for Clinton's email account during her tenure as Secretary of State, as well as information about any detected or reported information security threats involving electronic communications used by Clinton and her office.

32. State acknowledged receipt of the request on April 3, 2015. In subsequent communications, State provided multiple revised estimated dates for the completion of the request, all of which were extended well beyond the initial expectations. I followed up with State on several occasions, starting on May 11, 2015, and continuing through the next several years. The responses from State consistently indicated delays and provided revised completion dates, first pushing the estimated date to January 29, 2016, then extending it to May 2016, then to November 2016, and finally to December 31, 2016, before pushing it to April 30, 2017. Despite these numerous delays, I continued to follow up with State, receiving no final resolution until some responsive documents were provided on November 14, 2016.

33. However, the documents State produced were incomplete, and the production is still ongoing. While State's response included a partial set of responsive records, they were not

fully responsive to the original request. State produced no further documents after November 14, 2016.

34. I followed up with State again on November 28 and 30, 2016 for a resolution. After November 30, 2016, I did not hear from State again until February 15, 2024, when they reached out to ask whether I was still interested in receiving the requested records, even though the full extent of the documents was never delivered.

35. While I did not initiate formal litigation due to State's failure to process the request in a timely manner, the persistent delays were frustrating. I was left without the complete set of requested records for several years, which severely impacted my ability to carry out MuckRock's public service mission. As a result, the public was deprived of critical information related to Hillary Clinton's email security audits. The ongoing uncertainty surrounding the request meant I had to deal with an unresolved issue for an extended period, which ultimately affected my ability to provide the requested information to the public.

36. State's delays continue to disrupt my ability to effectively carry out MuckRock's mission of providing timely, accurate, and complete public records to the public. These ongoing delays create uncertainty, hinder my ability to meet project deadlines, and diminish the overall effectiveness of our work. The failure to process FOIA requests in a reasonable time frame increases costs, as it requires additional follow-up and resources to keep track of pending records, which further delays our efforts.

37. Given the persistent nature of these delays, I anticipate future harm as well. New requests to State will likely face similar processing issues, further hindering MuckRock's ability to ensure transparency and fulfill its commitment to public service.

38. Addressing State's failure to meet FOIA's timing requirements is essential not only to preserve MuckRock's operations but also to ensure that FOIA remains an effective tool for promoting accountability and public access to information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 12, 2025

Philadelphia, Pennsylvania.

Michael Morisy